IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., Plaintiff, | |
| vs. | Civil Action, Case No. _____ |
| | JURY DEMAND |
| VANDERBILT UNIVERSITY MEDICAL CENTER, and VANDERBILT UNIVERSITY Defendants. | JUDGE: _____ |
| | MAGISTRATE:_____ |

**COMPLAINT**

The plaintiff, Gobind Singh, M.D., Ph.D. (hereafter, "Plaintiff" or "Dr. Singh"), through counsel, and for his Complaint states as follows:

I.
NATURE OF THE COMPLAINT

1. This is a civil action brought pursuant to the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. 12101 *et seq*. ("ADA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-5 *et seq*., ("Title VII") and the common law of Tennessee.

II.
PARTIES AND JURISDICTION

2. Plaintiff is currently a resident of New York, New York, and, at the time of Defendant's unlawful acts complained of, was a resident of Davidson County, Tennessee and an employee of co-employers Vanderbilt University Medical Center and Vanderbilt University (hereafter collectively, the "Defendant"). Plaintiff is of Indian origin and ethnicity and a member of the religion Sikhism.

1

3. Defendant, Vanderbilt University Medical Center is a Tennessee Corporation located in Nashville, Davidson County, Tennessee. Its agent for service of process is National Registered Agents, Inc., which may be served at 800 S Gay Street, Ste. 2021, Knoxville, TN 37929-9710. Defendant, Vanderbilt University, is a Tennessee Corporation located in Nashville, Davidson County, Tennessee. Its agent for service of process is "General Counsel," which may be served at 305 Kirkland Hall, Nashville, TN 37240-0001. Upon information and belief, Vanderbilt University Medical Center and Vanderbilt University were co-employers of Plaintiff for purposes of this action and will be referred to herein collectively as "Defendant."

4. This Court has jurisdiction over the federal claims in this dispute pursuant to 28 U.S.C. § 1331 in that this case arises under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq*. and Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5 *et seq*.,

5. This Court has supplemental jurisdiction over the Tennessee claims in this dispute and should exercise such jurisdiction pursuant to 28 U.S.C. § 1367 for the following reasons:

    A.    The action for violation of the ADA is an action under federal statutes, and jurisdiction of that action is conferred on the Court by 28 U.S.C. § 1331.

    B.    The actions arising under Tennessee common law are so related to the claims in the federal ADA and Title VII causes of action that the claims form part of the same case or controversy under Article III of the United States Constitution.

    C.    The state causes of action neither raises a novel or complex issue of state law nor substantially predominates over the federal claims.

    D.    There are no other compelling reasons for the Court to decline jurisdiction

over the state law claims.

6. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, because all pertinent acts took place in this judicial district and Defendant conducts business and employed Plaintiff in Davidson County, Tennessee, which is located in this judicial district.

7. Plaintiff filed a timely charge of disability discrimination (attached as <u>Exhibit 1</u>) and a supplemental charge (Attached as <u>Exhibit 2</u>) with the Equal Employment Opportunity Commission ("the Commission") satisfying the requirements of 42 U.S.C. § 2000e-5, and on November 30, 2016, less than 90 days prior to the filing of this Complaint, the Commission issued to Plaintiff a Notice of Right to Sue with respect to the charges set forth below. A copy of Plaintiff's Notice of Right to Sue Letter is attached hereto as <u>Exhibit 3</u>.

## III.
## FACTUAL BACKGROUND

8. Plaintiff was hired by the Defendant on or about July 1, 2014 as an ophthalmology resident.

9. Plaintiff was qualified for the position and performed well enough to earn a promotion from PGY Level 2 to PGY Level 3 in 2015.

10. Subsequent to his hire date, Plaintiff began to suffer symptoms of hypothyroidism, including but not limited to severe fatigue, concentration issues, cold intolerance, and motor control issues. By late 2014, Plaintiff became aware that the symptoms were progressively worsening, making a reasonable accommodation for those medical issues necessary.

11. Plaintiff notified several of his supervising physicians of his medical issues. In December of 2014, he met with the Defendant's Residency Program Director, Dr. Laura Wayman, and Chairman of the Ophthalmology Department, Paul Sternberg. In that meeting, Plaintiff discussed his

medical issues and the symptoms from which he was suffering, and he requested a reasonable accommodation for his medical condition. Plaintiff specifically suggested a modified schedule, shorter on-call shifts, and reasonable breaks as a possible reasonable accommodation.

12. Doctors Wayman and Sternberg rejected Plaintiff's request for a reasonable accommodation. Regarding Plaintiff's suggestion of shorter on-call shifts, Doctors Wayman and Sternberg stated that this generation of residents was simply "getting weak", and that since they had worked thirty-six (36) hour shifts, then this generation of residents "should be able to do it, too". Doctors Wayman and Sternberg went on to opine about how they were already being too easy on the residents. Ignoring Plaintiff's medical needs, Doctors Wayman and Sternberg attributed Plaintiff's request for a reasonable accommodation to unhappiness, laziness, or weakness.

13. Defendant failed or refused to provide a reasonable accommodation for Plaintiff's medical condition and failed or refused to engage in good faith in an interactive dialogue regarding potential reasonable accommodations.

14. From December of 2014 to the date of termination of his employment, the Plaintiff continued to request reasonable accommodations for his medical condition.

15. During Plaintiff's employment tenure, Defendant regularly caused its residents to work hours in excess of the standards set by the Accreditation Council for Graduate Medical Education (ACGME). Residents were forced to underreport hours worked, such as by reducing the number of hours reported or by reporting breaks that were not actually taken.

16. Defendant continued to fail or refuse to provide Plaintiff with a reasonable accommodation for his medical condition.

17. Defendant continued to refuse to engage in a genuine interactive process or discussion

4

Case 3:17-cv-00400   Document 1   Filed 03/01/17   Page 4 of 12 PageID #: 4

with Plaintiff to find a reasonable accommodation that would allow him to continue to perform his job.

18. Instead of providing a reasonable accommodation for Plaintiff's medical condition, Defendant instead disciplined Plaintiff for suffering the symptoms of his medical condition and, in fact, caused his symptoms to be worse than they otherwise would have been.

19. As a direct and proximate result of the Defendant's failure to provide a reasonable accommodation for Plaintiff's medical condition, Plaintiff's concentration, memory, cold tolerance, mood, and motor control suffered unnecessarily.

20. From May 2015 to July 2015, Plaintiff was written up, placed on probation, and even suspended. Plaintiff appealed the suspension, and it was lifted, but he was later put back on suspension. Defendant has asserted that these actions were taken due to a series of clinical or professional errors.

21. However, several of the alleged errors were not errors by the Plaintiff. Some were merely miscommunications. Some were errors by other persons. Some were system failures which occurred even though all of the appropriate procedures were followed. To the extent some of the errors were, in fact, errors by Plaintiff, they were well within the normal parameters for residents in Plaintiff's position. Further, to the extent some of the errors were, in fact, errors by Plaintiff, those errors were contributed to by the extreme fatigue and loss of concentration and motor control Plaintiff suffered due to Defendant's failure or refusal to provide a reasonable accommodation for his medical condition. Accordingly, the errors, and by extension the termination that purportedly was based on the errors, were the direct and proximate result of the Defendant's failure or refusal to provide a reasonable accommodation for Plaintiff's medical condition.

22. Moreover, Plaintiff's similarly situated colleagues, who were neither Indian nor Sikh, committed errors that were equally serious or more serious than the errors allegedly committed by Plaintiff, yet they were not disciplined or were not disciplined to the degree that plaintiff was. Plaintiff was held to a higher standard than his similarly situated colleagues, who were either not Indian or not Sikh.

23. In August of 2015, Plaintiff filed a complaint of discrimination for failure to accommodate with Defendant's Equal Opportunity, Affirmative Action and Disability Office. Despite this complaint, Defendant continued to refuse to offer a reasonable accommodation for Plaintiff's medical condition.

24. After his suspension, Plaintiff continued to request that he be reinstated with accommodations for his medical condition that would permit him to perform the essential functions of his job. Defendant continued to refuse to provide such an accommodation.

25. Plaintiff was never returned to work after the second suspension. Instead, on or about February 25, 2016, the Defendant terminated Plaintiff's employment. Defendant has asserted that the termination was due to the series of clinical or professional errors discussed above.

26. Plaintiff filed a Charge of Discrimination with the EEOC on March 4, 2016, asserting discrimination on the basis of race, religion, national origin, and disability, retaliation, and failure to accommodate his disability.

27. On or about April 1, 2016, Plaintiff was offered employment as an ophthalmology resident at New York Medical College.

28. Subsequent to Plaintiff receiving the offer of employment from New York Medical College, on or about June 17, 2016, Defendant communicated to New York Medical College

information that was false, misleading, and deceptive regarding Plaintiff's work history and character. Defendant deliberately omitted information, including but not limited to information regarding Plaintiff's medical conditions, approved medical leaves, and promotion, so as to create a deliberately deceptive negative impression of Plaintiff. Defendant communicated this information to New York Medical College both in writing and verbally.

29. As a direct and proximate result of Defendant providing New York Medical College with misleading communications regarding Plaintiff, on or about June 24, 2016, New York Medical College rescinded its offer to Plaintiff.

30. Upon information and belief, Defendant has continued to provide false, misleading, and deceptive negative information to subsequent potential employers, thus continuing to interfere with Plaintiff's ability to obtain employment with other ophthalmology programs.

31. As a direct, foreseeable and proximate result of the Defendant's wrongful actions, Plaintiff has suffered pecuniary losses in the form of lost income and lost employment benefits, reputational damage, as well as emotional distress, emotional pain, suffering, inconvenience, mental anguish and other non-pecuniary losses, all in an amount to be determined at trial.

32. Some of the damages which Plaintiff has suffered and continues to suffer, such as the reputational damage and long-term career damage, are irreparable in nature, in that it will be unduly difficult, if not impossible, to remedy such harm through a monetary award, without immediate and permanent injunctive relief.

33. The wrongful actions of Defendant complained of herein were committed maliciously, intentionally, knowingly, with knowledge that they violated Plaintiff's state and federal rights, and/or with reckless indifference to the Plaintiff's federally protected rights in the face of a perceived risk

7

Case 3:17-cv-00400   Document 1   Filed 03/01/17   Page 7 of 12 PageID #: 7

that its action would violate federal law.

## IV.
## VIOLATION OF AMERICANS WITH DISABILITIES ACT (ADA): FAILURE TO PROVIDE REASONABLE ACCOMMODATION; FAILURE TO ENGAGE IN AN INTERACTIVE DIALOGUE REGARDING ACCOMMODATION; DISCRIMINATION; AND RETALIATION

34. The allegations contained in paragraphs 1 - 33 are hereby incorporated by reference as if set forth fully in this section.

35. Plaintiff's medical condition discussed above constitutes a "disability," as defined in § 3 of the ADA (42 U.S.C. § 12102), in that he has a physical or mental impairment that substantially limits a major life activity or a past record of such an impairment, and/or he is perceived or regarded as having such an impairment.

36. Plaintiff satisfies the requisite skill, experience, educational and other job related requirements of his former position with Defendant and with or without reasonable accommodation can perform the essential functions of this position. At all times relevant to this lawsuit, he was, and he continues to be, a "qualified individual with a disability" within the meaning of § 101 of the ADA (42 U.S.C. § 12111).

37. Prior to his termination, Plaintiff was an employee of Defendant under § 101(4) of the ADA (42 U.S.C. § 12111(4)).

38. Defendant is a "covered entity" and an "employer" as defined in § 101 of the ADA. (42 U.S.C. § 12111).

39. Defendant's intentionally discriminatory acts toward Plaintiff due to his disability, failure to provide Plaintiff with a reasonable accommodation, failure to engage in a genuine interactive process or discussion with Plaintiff regarding a reasonable accommodation, and retaliation against Plaintiff for asserting his rights under the ADA violate the ADA, 42 U.S.C. §§ 12101 *et seq*.

40. The clinical and professional incidents on which the Defendant claims to have based its actions against Plaintiff are a pretext for illegal discrimination and retaliation under the ADA.

41. Plaintiff is entitled to reinstatement of his position with Defendant or of some other equivalent position, back pay, attorneys' fees for the prosecution of this action and for his damages and costs, pursuant to 42 U.S.C. § 2000e-5(g) and 42 U.S.C. § 12117(a). However, in light of the past abuse by the Defendant and potentially irreparable damages to the employment relationship, Plaintiff seeks front pay in lieu of reinstatement.

V.
VIOLATION OF TITLE VII OF THE 1965 CIVIL RIGHTS ACT: DISCRIMINATION AND RETALIATION

42. The allegations contained in paragraphs 1 - 33 are hereby incorporated by reference as if set forth fully in this section.

43. The Defendant is an "employer" as defined in Title VII, 42 U.S.C. § 2000e.

44. Plaintiff is an "individual" and "employee" as contemplated by Title VII, 42 U.S.C. § 2000e-2(a) & (d), who was employed by the Defendant from on or about July 1, 2014 until on or about February 25, 2016.

45. The Defendant discriminated against Plaintiff on the basis of his race, national origin, and/or religion, held Plaintiff to a higher standard than similarly situated employees who were not of the same race, national origin, and/or religion, and took adverse employment and disciplinary actions against Plaintiff that were not taken against similarly situated employees who were not of the same race, national origin, and/or religion, all in violation of Title VII, 42 U.S.C. § 2000e-2(a) & (d). Further, the Defendant retaliated against Plaintiff for asserting his Title VII rights, in violation of Title VII, 42 U.S.C. § 2000e-3(a).

46. The clinical and professional incidents on which the Defendant claims to have based its actions against Plaintiff are a pretext for illegal discrimination and retaliation under Title VII.

47. Plaintiff is entitled to reinstatement of his position with Defendant or of some other equivalent position, back pay, attorneys' fees for the prosecution of this action and for his damages and costs, pursuant to 42 U.S.C. § 2000e-5(g). However, in light of the past abuse by the Defendant and potentially irreparable damage to the employment relationship, Plaintiff seeks front pay in lieu of reinstatement.

## VI.
## CAUSES OF ACTION UNDER TENNESSEE COMMON LAW: DEFAMATION AND TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

48. The allegations contained in paragraphs 1 through 33 are hereby incorporated by reference as if set forth fully in this section.

49. Prior to providing information to New York Medical College, the Defendant was notified of the employment offer made by New York Medical College to Plaintiff.

50. The information the Defendant provided to New York Medical College was substantially false, misleading, deceptive, incomplete, and was deliberately manipulated by the Defendant to omit relevant facts for the purpose of reflecting negatively on Plaintiff, damaging Plaintiff's professional reputation, and interfering with Plaintiff's employment relationship with New York Medical College. Moreover, the information provided by the Defendant had this effect.

51. Upon information and belief, the Defendant continues to provide Plaintiff's potential employers with deceptive and misleading information designed to harm Plaintiff.

52. The Defendant's wrongful actions constitute defamation and tortious interference with business relationships (employment) under the common law of Tennessee.

53. The actions of Defendant and of the Defendants' agent(s) complained of above were done intentionally, recklessly, knowingly, or maliciously. In the alternative, in the event the Defendant's transmission of this misleading information was merely negligent, the Defendant's actions still constitute defamation under the law of Tennessee, as a reasonable person in Defendant's position would have known or should have known that the information being provided was deceptive, incomplete, and misleading, and Plaintiff is not a public figure.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays as follow:

1. That process issue and that the Defendant be required to answer this Complaint within the time established by law;

2. For immediate emergency injunctive relief enjoining Defendant from engaging in any of the actions complained of herein;

3. For a permanent injunction enjoining the Defendant from engaging in any of the actions complained of herein;

4. For an award of all out of pocket damages, including but not limited to back pay and lost benefits, in an amount to be determined at trial, but in no event less than Seventy-Five Thousand Dollars and No Cents ($75,000.00) as of the time of this filing;

5. For a recovery of front pay, in an amount to be determined at trial, or in the alternative, if the Court finds it to be feasible and appropriate, for reinstatement to his former or equivalent position;

6. For recovery of compensatory damages for emotional damages from the Defendant;

7. For a recovery of punitive damages in an amount to be determined at trial;

8. For recovery of all costs, discretionary costs, and attorney fees;

9. For pre-judgment and post-judgment interest;

10. That a jury of six try this matter.

11. For such other and further relief as the Court may deem just, fit and proper.

                                            Respectfully submitted:

By: /s/ Bryan E. Pieper
Bryan E. Pieper (#016852)
THE LAW OFFICE OF BRYAN E. PIEPER, PLLC
P.O. Box 60507
1312 Stratton Ave.
Nashville, TN 37206
Tel.: (615)730-9819
Fax: (615) 514-9635
bryan@bep.legal


By: /s/ Tracey A. Kinslow
Tracey A. Kinslow (#017098)
Kinslow Law Group
810 Dominican Drive
Nashville, TN 37228
Tel.: (615) 256-3353
Fax.: (615) 256-3331
Tracey@kinslowlawgroup.com