**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| GOBIND SINGH, M.D., PH.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-cv-00400 |
| | ) | Judge Waverly D. Crenshaw |
| VANDERBILT UNIVERSITY MEDICAL | ) | Magistrate Barbara D. Holmes |
| CENTER AND VANDERBILT | ) | |
| UNIVERSITY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO
DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, Vanderbilt University Medical Center (hereinafter "VUMC") and Vanderbilt

University (hereinafter "VU"), by and through Counsel, submit this Memorandum in Support of

Defendants' Motion to Dismiss, or in the alternative, for Summary Judgment.

## I.     SUMMARY OF THE RELEVANT FACTS

### A.  *Plaintiff's Residency with VUMC*

Plaintiff, Gobind Singh, M.D., PH.D. ("Plaintiff") began an Ophthalmology residency at

VUMC on July 1, 2014.  *Statement of Undisputed Facts ("SUF") at ¶ 1.*  Plaintiff began his

residency as a postgraduate year two (PGY-2) resident who had completed a PGY-1 year in Internal

Medicine at Highland Hospital in California prior to joining VUMC. *Id.*  Plaintiff did not advance

to a PGY-3 year in 2015 as scheduled due to performance issues that resulted in him being placed

on probation.  *Id.*  Instead, he remained as a PGY-2 throughout the remainder of his residency, which

ended on February 25, 2016 when he was dismissed from the program.  *Id.*

Plaintiff rotated through several different disciplines from July 1, 2014 through June 30, 2015. *Id. at ¶ 2.* On May 26, 2015, Plaintiff was placed on probation for a continued pattern of concerns including poor clinical judgment, inadequate medical knowledge, poor clinical skills, and unprofessional behavior. He was also informed that he would not be advancing to the PGY-3 year. *Id.* He was placed on the Corrective Action step of Summary Suspension on June 15, 2015 after another performance related issue occurred. *Id.*

On June 30, 2015, a decision was made to extend his Probation status through December 31, 2015 and to not promote him to PGY-3 for the 2015-2016 academic years because of continued concerns regarding his behavior, clinical skills and medical knowledge being below his expected level of training. *Id. at ¶ 3.* He appealed the decisions of Summary Suspension and Non-Promotion, but these decisions were upheld after review through the appeal process. *Id.*

On July 29, 2015, Plaintiff was again placed on the Corrective Action of Summary Suspension after another performance issue occurred. *Id. at ¶ 4.* In correspondence related to his Summary Suspension, he was specifically advised that immediate dismissal was a potential next course of action. *Id.* A final decision was made on or around February 25, 2016 to move to the Corrective Action of Immediate Dismissal. *Id.* Plaintiff appealed the decision of Immediate Dismissal, but this decision was upheld after review through the appeal process. *Id.*

**B. Plaintiff's Report of Discrimination to the Equal Employment, Affirmative Action and Disability Services (EAD).**

On July 27, 2015, Plaintiff alleged that he was experiencing a "hostile work environment" after he had been suspended for the second time. *Id. at ¶ 5.* His allegations were referred to Vanderbilt University's Equal Employment, Affirmative Action and Disability Services (EAD) for review. *Id.* On September 4, 2015, Plaintiff e-mailed EAD and indicated *for the first time* that he suffered from an alleged disability and was seeking an accommodation. *Id.* EAD responded to

Plaintiff and advised him that he needed to provide a Medical Information Request Form to initiate the accommodation process. *Id. at ¶ 6.* Plaintiff provided the request form wherein his healthcare provider indicated that he needed no accommodations on a going forward basis. *Id.* Because no accommodations were recommended by Plaintiff's healthcare provider, Plaintiff's request for an accommodation was denied. *Id.* Plaintiff submitted a subsequent request for an accommodation. *Id. at ¶ 7.* However, Plaintiff never returned to work after his second suspension and was dismissed from the program before these or any other accommodations would have been implemented. *Id.* EAD ultimately concluded, after investigating the concerns raised by Dr. Singh, insufficient evidence to determine that he had been retaliated against or discriminated against on the basis of disability or any other basis. *Id. at ¶ 8*

### C. *Plaintiff's Application to New York Medical Center*

After his dismissal from VUMC, Plaintiff applied for a residency position with New York Medical Center. *Id. at ¶ 9.* Plaintiff, who was represented by counsel, executed a "Consent and Authorization for Release of Information and Waiver of Liability" agreement (the "Release") on June 6, 2016. *Id.* The Release expressly authorized VUMC to "consult with a representative of prospective employers, other hospitals, medical staffs, sponsoring institutions, educational institutions . . . with which I am associated." *Id. at ¶ 9.* The Release further authorized VUMC to have "contact with any of the entities described above and any others who may have a need for information bearing on my professional competence, character and ethical qualifications" and gave "consent for Vanderbilt to release information, including but not limited to my performance, including any disciplinary actions." *Id.* Plaintiff also released the Defendants from liability associated with information provided in good faith, and, in his own handwriting, expressly limited the Release to New York Medical Center/Westchester Medical Center." *Id.*

### D. *Plaintiff's Failure to Respond to Discovery and Appear for His Noticed Deposition.*

Defendants served discovery on Plaintiff on January 22, 2018 and originally noticed his deposition for March 30, 2018. *Id. at ¶ 11.* On June 12, 2018, Magistrate Holmes ordered Plaintiff to respond to all outstanding discovery by June 18, 2018 and to submit to a noticed deposition between June 22, 2018 and July 3, 2018. *Id.* Magistrate Holmes' Order made it clear that a failure to provide discovery or submit to a deposition as ordered would result in a Report and Recommendation recommending dismissal of this matter. *Id.* Plaintiff failed to provide responses to discovery by June 18, 2018 and failed to appear at his noticed deposition on June 29, 2018. *Id.*

## II. LAW AND ARGUMENT

### A. *The Legal Standard*

#### 1. *Dismissal for Failure to Participate in Discovery and Follow Court Orders*

Fed. R. Civ. Pro. 41(b) grants a court the power to dismiss an action "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order." In *Link v. Wabash R. Co*., 370 U.S. 626, reh'g denied, 371 U.S. 873 (1962), the U.S. Supreme Court recognized the authority of a district court to dismiss a plaintiff's action with prejudice for failure to prosecute. According to the Supreme Court, "[t]he power to invoke this sanction is necessary in order to prevent *undue delays* in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id*. at 629-30. [emphasis added]. Similarly, Rule 37 provides that a court may dismiss the action if "a party, after being properly served with interrogatories under Rule 33 or a request for inspection under Rule 34, fails to serve its answers, objections, or written response." Fed. R. Civ. P. 37(b)(2)(A)(v), 37(d)(1)(A)(ii), 37(d)(3).

Whether a court dismisses an action pursuant to Rule 41 or 37, the Sixth Circuit considers the same four factors. *Coleman v. American Red Cross*, 23 F.3d 1091, 1094 (6th Cir.1994). The four factors to be considered are (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's failure to cooperate in discovery; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered. *Harmon v. CSX Transportation*, *Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (quoting *Regional Refuse Sys., Inc. v. Inland Reclamation, Inc.*, 842 F.2d 150, 153-55(6th Cir. 1988).

### 2. *The Summary Judgment Standard*

Summary judgment is appropriate where the pleadings, the discovery, disclosure materials and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To survive summary judgment, any disputed facts must be material and must be facts that, under the substantive law governing the issue, could affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). "There must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict." *Id.*

Once a defendant moves for summary judgment, the plaintiff may not rest on conclusory allegations or denials in the pleadings or rumors and subjective beliefs. Fed. R. Civ. P. 56(e); *Mitchell v. Toledo Hospital*, 964 F.3d 577, 585 (6th Cir. 1992). Neither the mere existence of some alleged factual dispute nor the existence of "some metaphysical doubt as to the material

facts" is sufficient to avoid summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Similarly, the plaintiff cannot rely on speculation in order to defeat a summary judgment motion. *Celotex*, 477 U.S. at 324. Rather, a plaintiff must tender cold, hard facts that establish a necessary and genuine issue for trial. *Id.*

### B. Plaintiff's Complaint should be dismissed for his failure to participate in discovery and comply with Magistrate Holmes' June 12, 2018 and June 28, 2018 orders.

#### 1. Plaintiff has willfully failed to comply with the Federal Rules of Civil Procedure and the Court's Scheduling Order.

On January 12, 2018, Defendants served Plaintiff with its First Interrogatories and Requests for Production of Documents. *See* [Docket Entry # 21]. Despite Defendant's good faith attempts to procure Plaintiff's responses, Plaintiff failed to respond to these discovery requests in a timely fashion. Rule 33(b)(3) of the Fed. R. Civ. Pro. requires that a party respond to interrogatories within 30 days after service of the request. Likewise, Fed. R. Civ. Pro. 34 requires that a party respond to requests for production within 30 days after service of the request. Thus, Plaintiff's failure to respond to Defendant's discovery requests constitutes a clear failure to comply with the Federal Rules of Civil Procedure.

More significantly, Plaintiff failed to comply with Magistrate Holmes's June 12, 2018 Order and June 28, 2018 Order [Docket Entries # 22, 24] requiring that he provide responses to all outstanding discovery responses by June 18, 2018 and appear for his deposition noticed for June 29, 2018. [Docket Entries # 23, 26]. Both Orders included clear language that Plaintiff's failure to comply would result in a Report and Recommendation to dismiss the Complaint. Plaintiff's failure to respond to discovery requests and appear for his noticed deposition demonstrate c that Plaintiff is willfully failed to comply with the Federal Rules and the Court's Orders. Because he

has willfully refused to participate in discovery and comply with the Court's Orders, he has failed to prosecute his case. Accordingly, this Court should dismiss Plaintiff's lawsuit with prejudice.

> 2. *Defendants have been prejudiced by Plaintiff's failure to participate in discovery and prosecute his lawsuit.*

Defendants have been unable to timely secure any information from Plaintiff concerning the allegations contained in his Complaint. Because Plaintiff has failed to respond to Defendants' discovery requests, Defendants do not know what facts, documents or witnesses Plaintiff alleges support his claims. Plaintiff's failure to participate in discovery has severely limited the defense in this matter. Accordingly, Defendants have been clearly prejudiced by Plaintiff's willful failure to participate in discovery. See *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 737 (6th Cir. 2008).

> 3. *Plaintiff has been warned that a failure to comply with discovery rules and prosecute his lawsuit can result in dismissal.*

Magistrate Holmes' Orders in this matter, as noted earlier, expressly warn of the consequences of continued noncompliance with discovery rules or Court Orders. Additionally, Federal Rules of Civil Procedure 37 and 41 plainly warn all parties that an action may be dismissed where a party fails to comply with the Federal Rules of Civil Procedure. Thus, Plaintiff has been warned that his actions could result in the sanction of dismissal. Moreover, the Sixth Circuit has found that the filing of a motion to dismiss provides a party with notice that the court is contemplating dismissal of the action. *Harmon*, 110 F.3d at 368. As a result, Plaintiff has been warned that his failure to comply with discovery rules could lead to dismissal of his lawsuit, and he is now on notice that the Court is contemplating dismissal of his lawsuit.

### 4. No less drastic sanctions are appropriate.

Plaintiff's actions demonstrate that no less drastic sanctions than dismissal are appropriate. Plaintiff's lack of participation in this lawsuit indicates an unwillingness on his part to timely prosecute this lawsuit. The Sixth Circuit has recognized that a court may properly dismiss a complaint "as the first and only sanction" and need not expressly articulate its consideration of lesser sanctions. *Harmon*, 110 F.3d at 368. Additionally, any sanction imposed on Plaintiff less than dismissal with prejudice will allow Plaintiff to evade the rules of procedure and congest the calendar of this Court with an unwanted action, which would be at odds with the Supreme Court's opinion in *Link*. The only appropriate sanction for Plaintiff's disregard of the Federal Rules of Civil Procedure and the Court's prior Orders is dismissal of this lawsuit.

### C. The Academic Decision Being Challenged by Plaintiff is Not Covered by Title VII or the Americans with Disabilities Act ("ADA").

The events and decision that Plaintiff challenges in this case relate only to the educational issues Plaintiff was experiencing in the Residency Program, not his activities as an employee. Notably, Plaintiff functioned in a dual capacity as a resident, one being an employee of Defendants and the other being a student in the Residency Program. The record in this matter makes it clear that Plaintiff's dismissal was due solely to his academic failures. See *Mohammed v. Mathog*, 635 F. Supp. 748, 751 (E.D. Mich. 1986) ("[a]s a resident, plaintiff was undeniably a student, subject to the academic requirements of the . . . program").

Courts have consistently held that assessing a student's academic performance must be left to the sound judgment of the individual academic institution. *See University of Pennsylvania v. EEOC*, 493 U.S. 182, 110 S. Ct. 577, 587 (1990); *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 255, 106 S. Ct. 507 (1985). The process of rendering an academic decision frequently involves a subjective assessment of a student's ability to meet curriculum standards. Those

8

evaluations should be conducted in an academic, rather than a legal, environment because such decisions do not lend themselves to the traditional fact-finding process of civil litigation. *See Hubbard v. John Tyler Cmty. Coll.*, 455 F. Supp. 753 (E.D. Va. 1978); *Jane v. Bowman Gray Sch. Med. - N.C. Baptist Hosp.*, 211 F. Supp. 2d 678 (M.D.N.C. July 2, 2002). Plaintiff's claim, therefore, should be dismissed because the performance issues are academic and not employment-related issues. Thus, Title VII and the employment provisions of the ADA do not apply.

### D.  Plaintiff's Title VII and ADA Discrimination Claims Fail as a Matter of Law.

Should the Court decide to entertain Plaintiff's action as an employment claim, Defendants are still entitled to summary judgment. Plaintiff alleges his dismissal from the Residency Program was an act of discrimination on the basis of his race, national origin, religion and disability status. He has no direct evidence of discrimination on any basis, so his claim must be analyzed through the burden shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817 (1973), *aff'd* 528 F.2d 1102 (8th Cir. 1976) and *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089 (1981). Under *McDonnell Douglas*, Plaintiff must first establish a *prima facie* case of unlawful discrimination. *Burdine*, 450 U.S. at 252-253. If Plaintiff establishes a *prima facie* case, the burden of production shifts to Defendants to articulate legitimate, nondiscriminatory reasons for Plaintiff's termination from the residency program. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). Once Defendants set forth a legitimate, non-discriminatory reasons for Plaintiff's termination, the burden shifts back to Plaintiff to show that such reasons are pretextual or unworthy of credence. *Id.*

> ### 1.  Plaintiff cannot establish a prima facie case of discrimination under Title VII or the ADA.

To establish a *prima facie* case of discrimination, Plaintiff must establish that: (1) he is a member of a protected group; (2) he was qualified for his position and his performance was

satisfactory; (3) despite his qualifications and performance he was terminated; and (4) individuals outside his protected class were treated more favorably than he was treated. *Wright,* 455 F.3d 702 at 707. Plaintiff cannot establish a *prima facie* case because he was not qualified for his position as the result of his unsatisfactory performance. Additionally, he cannot demonstrate that individuals outside of his protected class were treated more favorably than he was treated.

The record in this matter provides specific performance issues that were required to be addressed. It is well established that the employer's perception regarding an employee's performance is the relevant focus. An employee's own statement and assessments of his job performance are insufficient to establish a *prima facie* case. *See McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1160 (6th Cir. 1990) ("[i]f the plaintiff was not doing what his employer wanted him to do, he was not doing his job. . . [and the plaintiff] d[id] not raise a material issue of fact on the question of the quality of his work merely by challenging the judgment of his supervisors."); *Smith v. University of N. Carolina,* 632 F.2d 316, 345-46 (4th Cir. 1980) (an employer's business decision should be given deference, especially when the decision is made within the complex world of academia). Thus, Plaintiff cannot show that he was qualified to continue in the Residency Program.

Plaintiff also cannot show that other residents were treated more favorably than he was. Plaintiff's generic claims that other residents were treated more favorably than he are not proof. More importantly, Plaintiff can point to no resident who had a series of deficiencies such as those he demonstrated in his performance. Finally, Plaintiff can point to no resident who was on probation and continued to make the errors that he made. For all of these reasons, Plaintiff cannot establish a *prima facie* case of discrimination under Title VII or the ADA.

2. *Defendants had a Legitimate, Nondiscriminatory Reason for Plaintiff's Dismissal.*

If the Court finds that Plaintiff has established a *prima facie* case, the burden shifts to Defendants to articulate legitimate, nondiscriminatory reasons for his termination. *Wright v. Murray Guard, Inc.*, 455 F.3d 702, 707 (6th Cir. 2006). As set forth in detail in the Statement of Facts and throughout this Memorandum, Defendants had legitimate, nondiscriminatory reasons for Plaintiff's dismissal from the Residency Program. Issues with Plaintiff's performance were noted throughout Plaintiff's residency. Moreover, there is *no evidence* that evaluations, recommendations, or decisions regarding Plaintiff were based on any discriminatory motive. In fact, Plaintiff has provided no evidence that any decisions made by Defendants were based on any protected class status.

3. *Plaintiff cannot establish pretext*

Because Defendants articulated legitimate, nondiscriminatory reasons for Plaintiff's dismissal, the burden shifts back to Plaintiff to show that the stated reasons are "pretextual" for unlawful discrimination. To establish pretext, Plaintiff must produce evidence that the reason for his dismissal was fault, and was actually based on his race, national origin, religion or disability status. *Burdine,* 450 U.S. 248; Plaintiff has no evidence of pretext and, thus, Defendants are entitled to summary judgment

In *Sreeram v. Louisiana State Univ. Med. Ctr. Shreveport*, 188 F.3d 314, 319 (5th Cir. 1999), the plaintiff, a fourth-year medical student, alleged she was discharged because of her sex and national origin in violation of Title VII. *Id.* at 316, 319. Affirming the district court's opinion, the Fifth Circuit Court of Appeals noted that the plaintiff failed to establish that she was qualified to remain in the defendant's program because she could not refute the numerous bad reviews given by faculty members and she offered no evidence of a discriminatory motive. *Id.* at 319 (emphasis

added).  As in *Sreeram*, Plaintiff cannot refute the issues with his performance.  Plaintiff's unsupported opinion that he should not have been dismissed and that other residents may have received more favorable treatment is not evidence of pretext and discrimination. *See Gustovich v. AT&T Commc'ns., Inc.*, 972 F.2d 845, 848 (7th Cir. 1992) (stating that an employee's self-serving statements about his ability . . . are insufficient to contradict an employer's negative assessment of that ability)

### E.  Plaintiff Was Not Subjected to Retaliation

Plaintiff's retaliation claims are also analyzed under the *McDonnell Douglas* framework. *Kinamore v. EPB Elec. Util.,* 92 Fed. Appx. 197, 207-08 (6th Cir. 2004).  To establish a retaliation claim under the ADA or Title VII, Plaintiff must show that: (1) he engaged in protected activity; (2) the exercise of his protected rights was known to Defendant; (3) Defendant thereafter took a materially adverse action against him; and (4) there was a causal connection between the protected activity and the materially adverse action.  *See Dixon v. Gonzales*, 481 F.3d 324, 334 (6th Cir. 2007).

Plaintiff cannot establish a *prima facie* case of retaliation under the ADA or Title VII because he has not offered any evidence demonstrating a causal connection between his dismissal and alleged protected actively.  *See Mehr v. Starwood Hotels & Resorts Worldwide, Inc*., 72 Fed. Appx. 276, 284 (6th Cir. 2003).  To establish a causal connection, Plaintiff must produce sufficient evidence from which one could draw an inference that Defendants would not have dismissed him had he not engaged in protected activity.  *See Abbott v. Crown Motor Co. Inc.*, 358 F.3d 537, 543 (6th Cir. 2003).  Here, Plaintiff has advanced no credible evidence of causation. This is primarily true because Plaintiff's complaints of discrimination occurred *well after* the performance issues that led to his dismissal.  Thus, Plaintiff cannot demonstrate a *prima facie* case because he cannot show that there is a causal link between the alleged protected activity, his academic probation, suspension and later dismissal.

### E. Plaintiff's ADA Failure to Accommodate Claim also Fails as a Matter of Law.

The record makes it clear that Plaintiff advised Defendants of an alleged disability *only after* he had been suspended twice and placed on probation. Plaintiff appears to claim now that his performance issues were, at least in part, caused by his disability and that Defendants should have retroactively accommodated him by excusing his prior poor performance or somehow determined that he was disabled. Plaintiff's request runs contrary to the well-established case law.

The law is clear that a request for a reasonable accommodation is forward looking and prospective; thus, an employee is not entitled to a retroactive accommodation. *See Leschinskey v. Rectors & Visitors of Radford Univ.*, 7:11-CV-00189, 2011 WL 5029813 (W.D. Va. Oct. 24, 2011) ("A request for a reasonable accommodation is forward-looking. It is prospective. An employee is not entitled to a retroactive accommodation."). The EEOC's Enforcement Guidance elaborates: "Since reasonable accommodation is always prospective, an employer is not required to excuse past misconduct even if it is the result of the individual's disability." U.S. Equal Opportunity Employment Commission, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans With Disabilities Act* at 24, question number 35.

Additionally, the undisputed facts show that there was no failure in the interactive process or failure to accommodate. By the time Plaintiff requested a reasonable accommodation, his medical provider indicated that he needed no accommodation on a going forward basis. *See SUF, ¶ 6.* His second healthcare provider merely indicated that Plaintiff needed an accommodation (breaks every eight hours), but Plaintiff never returned to work after his second suspension. *Id. at ¶ 7.* Thus, there is no evidence of a failure to accommodate or failure to engage in the interactive process. Plaintiff received all the process that he was due.

13

### F. Plaintiff's Defamation and Tortious Interference Claims are Without Merit.

Plaintiff has also asserted a tortious interference claim and a defamation claim related to information shared with New York Medical Center and purportedly other institutions that interfered with his ability to become affiliated with another Residency Program. *Compl. at ¶¶ 48-53*. These claims fail as a matter of law for several reasons.

First, Plaintiff expressly authorized the release of information to New York Medical Center and expressly released Defendants related to good faith disclosures. *See SUF at ¶¶ 9-10*. The law is clear that such "Releases" are types of contracts "subject to principles of state contract law." *In re Southern Ohio Correctional Facility*, 1999 WL 775830 (6th Cir. 1999) (citing *Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992). Under Tennessee law, the interpretation of a written contract is a matter of law. *NSA DBA Benefit Plan v. Connecticut Gen. Life Ins. Co.*, 968 S.W.2d 791 (Tenn. Ct. App. 1997). If the contract is plain and unambiguous, the meaning thereof is a question of law, and it is the court's function to interpret the contract as written according to its plain terms. *Petty v. Sloan*, 277 S.W.2d 355 (Tenn. 1955).

The clear intent of the language in the Release was for VUMC to provide information to New York Medical Center and to be released from liability for doing so in good faith. Accordingly, Plaintiff cannot allege that Defendants engaged in any inappropriate activity by providing information as specifically contemplated by the Release. Moreover, there is no proof that Defendants failed to act in good faith in disclosing information to New York Medical Center (as authorized) and no proof that disclosures were made to any other entities. Plaintiff's defamation and tortious interference claims fail for these reasons alone.

Second, Plaintiff has not provided proof that any statement published by the Defendants was published with knowledge that such statement was false and defaming to Plaintiff or with

reckless disregard for the truth of the statement or with negligence in failing to ascertain the truth of the statement. The record reveals that Plaintiff was evaluated fairly during his residency, had an opportunity to appeal the actions taken against him and also had his concerns thoroughly investigated. Further, the record makes it clear that Plaintiff was well aware of the issues in his residency and should have reasonably expected that those issues would be disclosed in response to inquiries about his residency performance. Accordingly, Plaintiff cannot establish a claim for defamation. *Sullivan v. Baptist Mem. Hosp.*, 995 S.W.2d 569, 571 (Tenn. 1999); *Naylor Med. Sales & Rentals, Inc. v. Invacare Continuing Care, Inc.*, 2011 U.S. Dist. LEXIS 263, *40 (W.D. Tenn. Jan. 3, 2011).

Finally, Plaintiff cannot sustain a tortious inference claim. Such a claim requires a plaintiff to demonstrate the following:

> (1)  An existing business relationship with specific third parties or a prospective relationship with an identifiable class of third persons;
> (2)  The defendant's knowledge of that relationship and not a mere awareness of the Plaintiff's dealings with others in general;
> (3)  The defendant's ***intent to cause the breach or termination of the business relationship***;
> (4)  The defendant's ***improper motive or improper means***; and
> (5)  Damages resulting from the tortious interference.

*Trau-Med of America, Inc. v. Allstate Ins., Co.*, 71 S.W.3d 691, 701 (Tenn. 2002) (emphasis added). Plaintiff has not provided any proof on two essential elements of an intentional interference with a business relationship claim – intent to cause the breach and improper motive or means. Consequently, this claim should be dismissed. *See Overnite Transportation Co. v. Teamsters Local Union No. 480*, 2004 WL 383313 (Tenn. Ct. App. 2004).

### G. Plaintiff is not Entitled to Damages in this matter.

Plaintiff has not provided any discovery regarding damages in this matter. He has not produced any documents or testimony regarding any alleged compensatory or emotional damages. Additionally, he is failed to provide any basis for back pay or punitive damages.

#### 1.      Plaintiff failed to mitigate his damages.

An employment discrimination plaintiff suing for back pay or front pay has a duty to avoid or minimize damages by using "reasonable diligence" to obtain "substantially equivalent" employment. *Patterson v. P.H.P. Healthcare Corp.*, 90 F.3d 927, 936 (5th Cir. 1996) (quoting Ford Motor Co. v. EEOC, 458 U.S. 219, 232 (1982)); *see also, Smith v. JPMorgan Chase*, 2011 WL 841439, *11 (W.D. La. March 8, 2011) (citing *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1045 (5th Cir. 1998). *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 624 (6th Cir. 1983) (holding a plaintiff in an employment case must show that she attempted to mitigate her damages or face a reduction or forfeiture of the damage award.). "Substantially equivalent employment" would be a position providing the same promotional opportunities, compensation, job responsibilities, working conditions, and status. *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S. Ct. 3057, 3065 (1982).

Where a plaintiff expressly admits that she has done nothing to seek comparable employment, the mitigation inquiry ends there, and the employer need not demonstrate the availability of substantially equivalent jobs. *See Weaver v. Casa Gallardo, Inc.,* 922 F.2d 1515, 1527 (11th Cir. 1991) (superseded by statute on other grounds) (where "an employer proves that the employee has not made reasonable efforts to obtain work, the employer does not also have to establish the availability of substantially comparable employment"); *Quint v. A.E. Staley Mfg. Co.,* 172 F.3d 1, 16 (1st Cir. 1999) (same); *Martin v. Mecklenburg County,* 151 Fed. Appx. 275, 282-

83 (4th Cir. 2005) (same); *Greenway v. Buffalo Hilton Hotel,* 143 F.3d 47, 54 (2nd Cir. 1998) (same).   Moreover, "[a] plaintiff may not simply abandon his job search and continue to recover back pay." *Rasimas* 714 F.2d at 624.

Defendants contend that by not responding to discovery in this matter regarding his mitigation efforts, Plaintiff should be deemed to have admitted to doing nothing to seek comparable employment besides submitting one residency application.  That limited job search is simply not enough to satisfy his duty to mitigate.  *See e.g., Voyles v. Louisville Trans. Co*., 136 F. App'x 836, 837 (6th Cir. 2005) (holding that going on "a couple of interviews" in a ten-month period is not reasonable); *Rodriguez-Torres v. Caribbean Forms Mfr., Inc*., 399 F.3d 52, 67 (1st Cir. 2005) (finding insufficient mitigation where plaintiff applied for "a few" jobs after her termination and thus affirming district court's denial of front pay award); *Fleming v. County of Kane, State of Ill.*, 898 F.2d 553, 561 (7th Cir. 1990) (plaintiff failed to exercise reasonable diligence in looking for a new job when plaintiff contacted two head hunters during the first two years he was unemployed then stopped looking for a new job); *Sellers v. Delgado College*, 902 F.2d 1189, 1195 (5th Cir. 1990) (plaintiff failed to use reasonable diligence to look for a new job when she only sent out one resume per month and had only a "minimal response" to "the large number of advertisements for substantially equivalent jobs that appeared during this time").  Accordingly, Defendants are entitled to summary judgment on any claim for back pay or front pay based on Plaintiff's failure to mitigate.

### 2.     *Plaintiff cannot demonstrate an entitlement to Punitive Damages*

As this Court is aware, a plaintiff is not entitled to punitive damages as a matter of right. *See generally Kolstad v. American Dental Association,* 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999).  Punitive damages may be awarded only where a defendant has acted willfully and

maliciously, for the purpose of causing injury to the plaintiff, or with reckless indifference to the rights of the plaintiff. *Id.* Plaintiff cannot produce and has not produced evidence sufficient to justify an award of punitive damages in this case. There was nothing reprehensible about the decision to dismiss Plaintiff from the Residency Program. Accordingly, Defendants are entitled to Summary Judgment on this basis as well.

### III.  CONCLUSION

For all the reasons stated herein, Defendants respectfully move the Court for Dismissal of this lawsuit, or in the alternative, that the Court grant Defendants summary judgment on all claims.

Respectfully submitted,


/s/ Luther Wright, Jr.
Luther Wright, Jr., TN #17626
Casey M. Parker, TN #033081
OGLETREE, DEAKINS, NASH, SMOAK &
STEWART, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615.254.1900
Facsimile: 615.254.1908

Attorneys for Defendants

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2018, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Bryan E. Pieper
The Law Office of Bryan E. Pieper, PLLC
P.O. Box 60507
1312 Stratton Ave.
Nashville, TN 372016
bryan@bep.legal

Tracey A. Kinslow
Kinslow Law Group
810 Dominican Drive
Nashville, TN 37228
Tracey@kinslowlawgroup.com

**s/Luther Wright, Jr.**
Luther Wright, Jr.

12841496.1