IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 3:17-cv-00400 |
| v. ) | |
| ) | Chief Judge Waverly D. Crenshaw |
| VANDERBILT UNIVERSITY ) | Magistrate Judge Barbara D. Holmes |
| MEDICAL CENTER and ) | |
| VANDERBILT UNIVERSITY, ) | JURY DEMANDED |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS**

Plaintiff Gobind Singh, by and through counsel, files this brief regarding Defendants' Motion to Dismiss. Dr. Singh requests that Defendants' motion be denied. As detailed by Dr. Singh his Objections and Declaration (Doc. No. 38-40), filed *pro se*, he has diligently attempted to pursue this matter since it was filed in March 2017. However, Plaintiff's previous counsel failed to act diligently on his behalf or communicate with Dr. Singh, resulting in the lack of prosecution noted by Defendants and Magistrate Judge Holmes. Dr. Singh, like the Court, was unaware that his lead counsel, Bryan Pieper, was suspended from the practice of law in August 2017. Dr. Singh asks that he not be punished for his previous counsel's mistakes, and Defendants' motion to dismiss be denied.

1

## I. STATEMENT OF RELEVANT FACTS & PROCEDURAL HISTORY

### A. Dr. Singh's Employment at Vanderbilt

Plaintiff Dr. Gobind Singh, M.D, Ph.D., began his second year of residency in Ophthalmology at Vanderbilt University on July 1, 2014. He was accepted to Vanderbilt after successfully completing his first year of residency in internal medicine at Highland Hospital, an affiliate of the University of California San Francisco. According to a glowing letter of recommendation from his supervising physician, while at Highland Hospital, he was an "engaged" resident, "epitomiz[ing] holistic care" for his economically and socially disadvantaged patients, and "propp[ing] up a support system that sometimes didn't even exist," all while competently performing medicine "exactly as I'd want him to perform if that patient had been my family." (Coll. Ex. A, Letters of Recommendation, pp. 1-2.) This was just one of a number of glowing letters of recommendation, including from his superiors at Vanderbilt. (*Id*. at p. 7.) More than just form letters from former employers, these letters showed Dr. Singh's genuine skill and personal caring.

While at Vanderbilt, Dr. Singh at first excelled. He received equally glowing letters from patients, who credited him with saving the lives of their loved one and stated he was "an asset for Vanderbilt Medical Center." (Ex. B, Patient Letter.) At the end of his second year of residency (his first year at Vanderbilt), he had received no disciplinary actions. He was promoted to third-year residency in the ophthalmology program on April 6, 2015. (Ex. C, Apr. 6, 2015 Appointment Letter.)

However, at the same time he was excelling, Dr. Singh was experiencing medical problems. He was plagued with relentless fatigue, breathing difficulties, and trouble concentrating. He saw an ENT for the first time on October 13, 2014, and was diagnosed with

near-complete nasal vestibular stenosis, also known as nasal collapse, with accompanying breathing problems. (Coll. Ex. D, Physician Notes, p. 1.) His doctor recommended surgery, which took place on December 3, 2014. (*Id.*) Crucially, Defendants were well aware of Dr. Singh's health condition: on November 26, 2014, he was approved for medical leave December 3-6, 2014, to have his surgery. (Ex. E, Nov. 26, 2014 Email.)

Dr. Singh also verbally informed his superiors of his health problems and surgery. In order to continue doing his job despite his medical condition, Dr. Singh requested the reasonable accommodations of being assigned fewer on-call shifts and allowed rest breaks between long shifts. On December 1, 2014, Dr. Singh had a meeting with two of his superiors, Dr. Wayman and Dr. Sternberg, where he informed them of his medical condition and upcoming surgery and again requested these reasonable accommodations. They disbelieved Dr. Singh and rejected his requests for accommodation out of hand, telling him that when they were residents they too had to work long shifts, and if they were able to do it, so should he.

Following surgery, Dr. Singh's health problems persisted. On December 9, 2014, the day Dr. Singh returned to work, he informed Dr. Wayman that his symptoms had not resolved and his ENT surgeons had told him he would need a few months to recovery fully and see symptom improvement in energy and concentration. Dr. Singh reiterated his accommodation requests. These were again denied. Four days later, on December 16, 2014, Dr. Wayman forced Dr. Singh to attend Vanderbilt's Employee Assistance Program, still apparently believing that his problems were caused by a lack of mental toughness and not "true" medical conditions. (Ex. F, Dec. 16, 2014 Email.)

3

On March 24, 2015, Dr. Singh saw an endocrinologist for his continuing symptoms, who diagnosed him with hypothyroidism. In a September 2015 letter, the endocrinologist stated, "In retrospect, in the months before his diagnosis, [Dr. Singh] may have suffered from decreased energy and decreased concentration which could have interfered with job performance." (Coll. Ex. D, Physician Notes, p. 2.) In late April 2015, Dr. Singh shared his hypothyroidism diagnosis with Dr. Wayman and requested another reasonable accommodation: that he be allowed to wear extra layers of surgical attire to prevent his body from shivering (cold and chills are common symptoms of hypothyroidism). Dr. Wayman denied this request too.

While Defendants promoted Dr. Singh in April 2015, they began retaliating against him in May 2015, when he was placed on probation. (Doc. No. 27-1, Feb. 25, 2016 Letter, p. 2.) Prior to May 2015, Dr. Singh had never had a disciplinary action. The accusations against Dr. Singh arose from incidents that predated his April 2015 promotion, raising the inference that they were not the true reason for corrective action to be taken now. Perhaps sensing this problem, Defendants revoked his promotion on June 30, 2015, extending Dr. Singh's probation through December 2015 instead. (*Id.*) On July 27, 2015, Dr. Singh made an official complaint that he was being subjected to a hostile work environment. Within days, on or about July 29, 2015, he was given another disciplinary action and removed from the clinical setting. (*Id.*)

On September 4, 2015, as part of the investigation of his harassment complaint, Dr. Singh reported his health issues and requests for accommodation, all of which has been denied. This was certainly not the first time he requested an accommodation; indeed, he was complaining about his continued *lack* of accommodation. As part of the investigation, Dr. Singh was, for the first time, given paperwork to make a formal request for accommodation, which he completed on September 11, 2015, and again on or about October 19, 2015. He asked to be limited to working

4

12-hour shifts, with a 12-hour rest period between shifts. In most workplaces, this would still be considered a strenuous work schedule. For Defendants, it was apparently unreasonably light, and was denied because it did not come directly from his treating physicians (which, of course, is not a requirement of the ADA). (Doc. No. 27-2, Aug. 3, 2016 Memorandum, p. 2.) Dr. Singh was terminated on February 25, 2016, without ever being allowed to return to his patients.

Dr. Singh was determined to continue his work and applied for residency at New York Medical College, where he was accepted despite the rarity of changing residencies. However, Defendants continued to retaliate against him, refusing to release needed documents to NYMC and sending negative performance reviews. Ultimately, due to Defendants' statements, New York Medical College withdrew the offer, essentially halting Dr. Singh's medical career. This lawsuit followed, alleging discrimination and retaliation under the Americans with Disabilities Act, as amended; discrimination and retaliation based on race, national origin, and/or religion under the Title VII; and defamation and tortious interference with business relations under Tennessee common law. (Compl., Doc. No. 1, §§ IV-VI.)

### B. Dr. Singh's Attempts to Prosecute this Case

Pursuant to Federal Rule of Civil Procedure 10, Plaintiff fully incorporates herein his previously filed Objections and Declaration (Doc. No. 38-40), which detail many of the facts relevant to this matter. Briefly, Dr. Singh states that he retained Tracey Kinslow and Bryan Pieper to represent him in his action against Defendants. An action was filed in this Court by Mr. Kinslow and Mr. Pieper on March 1, 2017 (*see* Compl., Doc. No. 1), and a case management order was entered on May 9, 2017 (Doc. No. 10).

Unfortunately, as Dr. Singh states in his Objections and Declaration, neither Mr. Kinslow nor Mr. Pieper communicated with Dr. Singh with from May 9, 2017, until March 22, 2018, a

period of more than ten months. (Singh Dec., Doc. No. 39, ¶ 4.) In the meantime, Mr. Pieper apparently suffered health problems and was suspended from the practice of law in August 2017.[1] Neither Dr. Singh nor the Court was informed of Mr. Pieper's suspension, though the Court was informed of Mr. Pieper's health problems in March 2018. (*See* Pl.'s Objections, Doc. No. 38, p. 4; Pl.'s Mot. Extend Disc. Deadline, Doc. No. 18, p. 2.) According to that Motion to Extend Discovery Deadlines, Mr. Pieper was apparently charged with handling discovery in this matter, which he was unable to do due to his health problems and ongoing treatment, which removed him from his office. (*Id*.)

Given his attorneys' lack of communication, Dr. Singh attempted to contact the Court directly on eight occasions in or about August and September 2017. (Singh Dec., Doc. No. 39, ¶ 5; Pl.'s Objections, Doc. No. 38, p. 3.) He informed the Court Clerk's Office about his attorneys' lack of responsiveness and his concern that he would miss upcoming Court deadlines. (*Id*.) The Clerk's Office assured Dr. Singh that his attorneys would contact him but agreed to send him paperwork by mail regarding changing his counsel, which he never received. (*Id*.) And on June 29, 2018, several days before Defendant's Motion to Dismiss was filed, it was Dr. Singh himself who first brought to the Court's attention the circumstances surrounding his missed deposition and the failure of his counsel to faithfully pursue his case. (Doc. No. 25.)

Between March and June 2018, counsel for both parties exchanged emails and court filings regarding discovery, including Plaintiff's lack of responsiveness to Defendants' discovery requests and notices of deposition. Throughout this process, Plaintiff's counsel failed to

---

[1] Mr. Pieper was not issued a public reprimand and the precise reason for or length of his suspension is unknown. According to the Order of the Tennessee Supreme Court, Mr. Pieper was one of a number of attorneys suspended for failing to comply with the requirements of Tennessee Supreme Court Rule 21, the rule for mandatory continuing legal education. Ex. G, *In Re Rule 21, Section 7.07*, No. ADM2017-00005, at *4 (Tenn. Aug. 17, 2017).

6

Case 3:17-cv-00400   Document 47   Filed 09/17/18   Page 6 of 18 PageID #: 311

communicate with Dr. Singh about discovery.[2] When Plaintiff's counsel finally provided written discovery to Dr. Singh on March 22, 2018, he gave his responses to his counsel the very next day. (Singh Dec., Doc. No. 39, ¶ 9; Pl.'s Objections, Doc. No. 38, pp. 9-10.) However, Plaintiff's counsel failed to discuss responses with Dr. Singh further. (*Id.*) Dr. Singh was also never informed by his counsel that a Notice of Deposition was sent to take his deposition on March 30. (Doc. No. 38, p. 11.) When the deposition was rescheduled to June 29, Plaintiff's counsel did not inform Dr. Singh of the deposition until June 24. (Doc. No. 39, ¶ 29; Doc. No. 38, p. 18.) While Dr. Singh attempted to attend the deposition, cancelling an important examination to do so, multiple flights to Nashville from his home in New York City were cancelled due to weather, and he was unable to get to Nashville in time. (Doc. No 33; Doc. No. 39, ¶¶ 34-35; Doc. No. 38, pp. 19-20.)

Defendants, understandably frustrated by the discovery delays caused by Plaintiff's counsel's failures, filed a motion to dismiss on July 3, 2018 (Doc. No. 27). Magistrate Judge Holmes, not being aware of this background, recommended that the motion be granted. (Doc. No. 32, 35.) After Plaintiff, proceeding *pro se*, explained these circumstances to the Court, District Judge Crenshaw returned the matter to Magistrate Judge Holmes to revise the Report and Recommendation. (Doc. No. 42.) He recommended that Magistrate Judge Holmes reconsider the Motion to Dismiss in light of the question "whether [Dr. Singh], as opposed to his counsel, was responsible for any willful or reckless disregard in this case" and whether the "drastic sanction of dismissal" was appropriate. (Doc. No. 42.) Plaintiff's undersigned counsel entered Notices of Appearance on August 15, 2018 (Doc. No. 43-44), and immediately filed a motion

---

[2] It is Dr. Singh's understanding that Mr. Kinslow believed Mr. Pieper was handling discovery, and this is the reason for Mr. Kinslow's unresponsiveness. Whatever the reason for the lack of communication, Plaintiff was left completely in the dark.

7

seeking permission to file a brief further discussing these circumstances (Doc. No. 45). The motion was granted.

### C. Former Counsel's Performance

The District Court's Order states, "The Objections appear to set forth, across many pages and through recitation of many alleged failed attempts at communication by Plaintiff, a consistent interest in advancing this action on the part of plaintiff that was possibly, at least to some degree, foiled by the performance of his counsel. Of course, this narrative may be a self-serving gloss, but it might not." (Order, Doc. No. 42, p. 5.) In order to address the Court's concern, Dr. Singh has presented substantial evidence to the Court regarding his attempts to directly contact the Court (*see* Doc. No. 25; Singh Dec., Doc. No. 39, ¶ 5; Pl.'s Objections, Doc. No. 38, p. 3), his attempts to attend his deposition in June 2018 (*see* Doc. No. 25; Doc. No 33; Singh Dec., Doc. No. 39, ¶¶ 34-35; Doc. No. 38, pp. 19-20), and his attempts to contact his counsel during ten months of silence (*see* Doc. No. 39, ¶¶ 2-4.) It was Dr. Singh himself who was the first to bring to the Court's attention the lack of diligence on the part of his counsel, first through his eight phone calls to the Court Clerk and, on June 29, 2018, through his first *pro se* letter to the Court. (Doc. No. 25.) These efforts predate Defendant's motion to dismiss. This timing demonstrates that Dr. Singh's efforts to prosecute despite counsel's lack of diligence are not merely self-serving assertions to avoid the instant motion, but born of his true desire to see the case progress, even before the motion to dismiss was filed.

## II. APPLICABLE LAW

### A. Defendant's Motion to Dismiss for Failure to Prosecute

"The dismissal of a claim for failure to prosecute is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the

8

plaintiff." *Carpenter v. City of Flint*, 723 F.3d 700, 704 (6th Cir. 2013). It is true that a party cannot always "avoid the consequences of the acts or omissions of [his] freely selected agent," his counsel. *Link v. Wabash R. Co.*, 370 U.S. 626, 633-34 (1962). However, "[a]lthough this principle—that generally it is not unduly unfair to punish a client for his counsel's errors—remains valid, '[the Sixth Circuit has] increasingly emphasized directly sanctioning the delinquent lawyer rather than an innocent client.'" *Carpenter*, 723 F.3d at 704 (quoting *Coleman v. Am. Red Cross*, 23 F.3d 1091, 1095 (6th Cri. 1994)). In short, it is well-established that "an innocent plaintiff should not be penalized for the conduct of an inept attorney." *Freeland v. Amigo*, 103 F.3d 1271, 1278 (6th Cir. 1997).

The Sixth Circuit "has expressed an extreme reluctance to uphold the dismissal of a case merely to discipline a party's attorney." *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586, 590 (6th Cir. 2001). "Accordingly, '[d]ismissal is usually inappropriate where the neglect is solely the fault of the attorney.'" *Carpenter*, 723 F.3d at 704 (quoting *Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980)). *Carter* used even more pointed terms: "The dismissal of an action for an attorney's failure to comply is a harsh sanction which the court should order only in extreme situations showing 'a clear record of delay or contumacious conduct by the plaintiff.' **Absent this showing, an order of dismissal is an abuse of discretion**; the court is limited to lesser sanctions designed to achieve compliance." 636 F.2d at 161 (internal citation omitted) (emphasis added).

As this Court has already articulated, there is a four-factor test for determining when dismissal for failure to prosecute is appropriate: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead

9

to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal of the action." *Carpenter*, 723 F.3d at 704.

Here, there has not been and cannot be a showing of "a clear record of delay or contumacious conduct by the plaintiff," as *Carter* and *Carpenter* require. Indeed, Dr. Singh has shown extraordinary diligence in order to keep this matter moving forward despite his counsel's misconduct. Additionally, less drastic sanctions can be—and already have been—implemented to punish Plaintiff's counsel without punishing Dr. Singh himself. These factors outweigh the prejudice to Defendants and the fact that Plaintiff's counsel was previously warned of the possibility of dismissal (a warning that was not passed on to Dr. Singh). Therefore, the motion to dismiss should be denied.

### B. Defendant's Motion in the Alternative for Summary Judgment

In the alternative, Defendant asks the Court to grant summary judgment in its favor. The Court's September 6, 2018, Order ordered Plaintiff to respond to Defendant's Motion to Dismiss, rather than its alternative motion for summary judgment (Doc. No. 46). In an abundance of caution, Plaintiff has addresses Defendant's motion for summary judgment here. If the Defendant's motion to dismiss is denied, Plaintiff asks that the motion for summary judgment also be denied or, alternatively, postponed until after discovery.

The prosecution of this case has been hindered not by Dr. Singh, but by the misconduct of his former counsel. Due to this, Dr. Singh has had no discovery in this matter. Therefore, the facts needed to respond to Defendants' alternative motion for summary judgment are unavailable to Plaintiff, as presented in Dr. Singh's declarations to the Court (Doc. No. 39 & 40). *See* Fed. R. Civ. P. 45(d). The Sixth Circuit has held that it is reversible error to grant summary judgment when a party has presented affidavits to the Court regarding why he does not possess the needed

10

discovery and what discovery is needed. *White's Landing Fisheries v. Buchholzer*, 29 F.3d 229, 231 (6th Cir. 1994). "[S]ummary judgment should not have been awarded until the plaintiffs were allowed some opportunity for discovery. Rule 56[] of the Federal Rules of Civil Procedure provides courts with a useful method by which meritless cases may be discharged. However, the benefits of this rule are quickly undermined if it is employed in a manner that offends concepts of fundamental fairness. In the instant case, we find that the grant of summary judgment, absent any opportunity for discovery, is such a misuse." *Id.*

This is a case where fundamental fairness requires giving Dr. Singh the opportunity to take discovery before granting a motion for summary judgment. Therefore, Plaintiff requests that the Court deny the motion for summary judgment; alternatively, Plaintiff asks that the Court defer the motion to allow him time to take discovery, or issue another appropriate order. Fed. R. Civ. P. 45(d)(1)-(3).

### III. ARGUMENT

#### A. This Case is Like Other Cases Where the Sixth Circuit Has Found Dismissal Was an Abuse of Discretion.

In *Carpenter*, Plaintiff's counsel repeatedly failed to abide by local rules, delayed responding to defense motions, and failed to file a motion for default or to amend the complaint after the defendant failed to file an answer. *Id.* at 705. The Sixth Circuit undertook a thorough analysis of different cases where the Court had considered whether to dismiss a case for failure to prosecute, concluding, "Our past cases have distinguished between 'mere dilatory conduct involving a failure to file a specified document' and the more egregious problem of an 'attorney's failure to appear on repeated occasions,' and we repeatedly have reversed dismissals where the misconduct fell into the former, less egregious, category." *Id.*; *see also id.* at 706 n.3

11

(reviewing cases from other circuits). The Court determined that "Carpenter's counsel's delayed filings and violations of local rules fall into the less egregious category, and accordingly, these infractions and missteps do not demonstrate a clear record of contumacious conduct warranting dismissal with prejudice." *Id*.

The *Carpenter* Court discussed the *Patterson* case, where counsel's more egregious behavior was still not enough to sustain a dismissal. *Id*. In *Patterson v. Grand Blanc*, 760 F.2d 686 (6th Cir. 1985), "counsel failed to comply with procedural rules, failed to submit documents according to court-ordered deadlines, failed to initiate any discovery, and submitted answers to interrogatories four and a half months late." *Carpenter*, 723 F.3d at 705. While the Court condemned counsel's actions, it found that since there was no "clear record of delay or contumacious conduct *by the plaintiff*," it was appropriate to place sanctions on the *attorney* rather than on the individual plaintiff. *Patterson*, 760 F.2d at 689 (emphasis added). It listed a number of "less drastic sanctions" a district court should consider, such as "(1) a reprimand by the court, (2) a finding of contempt, or (3) a prohibition against practicing for a limited time before the court whose order was neglected or disregarded." *Id*. at 688.

The *Patterson* Court found that giving the plaintiff "his day in court" was of the upmost importance. *Id.* at 689. Quoting the Fifth Circuit, the Court stated, "There was no indication that the appellant's claim was vexatious or fictitious. The admitted delay was not so long drawn out as to indicate a desire not to prosecute. *The appellant was in no way connected with or responsible for, his proctor's dilatory conduct.* While we do not condone that conduct [of the attorney], we feel that the circumstances of the case are not such that the appellant should lose his day in court." *Id*. at 688 (quoting *Flaksa v. Little River Marine Construction Co.*, 389 F.2d 885, 889 (5th Cir. 1968)) (emphasis added).

12

This case is unfortunately very like *Patterson*. Here, too, counsel failed to meet Court-ordered deadlines, initiate discovery, or submit discovery responses. However, Plaintiff's former counsel never failed to attend a court conference or hearing, to file pleadings with the Court, or to respond to the Court. *See Mulbah*, 261 F.3d at 592 (reversing dismissal where "the instant case is easily distinguishable from the multitude of cases in which this Court upheld the dismissal of a complaint where a plaintiff's counsel failed to appear at hearings or court-ordered conferences"). However, Dr. Singh himself is less culpable than the plaintiff in *Patterson*, or any of the other cases discussed in *Carpenter*. In this case, it was *Dr. Singh himself* who brought his counsel's misconduct to the Court's attention, even before Defendants' motion to dismiss was filed. Dr. Singh undertook extraordinary steps to attempt to keep his counsel "in line," including repeatedly communicating with the Court itself when he could not reach counsel. Dr. Singh was diligent in answering discovery, returning written discovery responses to counsel within one day and booking multiple flights to reach Nashville for his deposition, even though he was given only a few days' notice of it. It was *counsel's* failure to deliver Dr. Singh's efforts to Defendants that resulted in the delays in this matter. Under these circumstances, it is unjust to punish Dr. Singh for his counsel's failures, which he "was in no way connected with or responsible for." *Flaska*, 389 F.3d at 889.

Plaintiff's efforts in this case far exceed any of the cases Plaintiff's counsel can locate where dismissal was reversed. *See*, *e.g.*, *Carpenter*, 723 F.3d at 705 (reversing dismissal where the Plaintiff attended case management conferences and responded to discovery in a timely fashion); Tung-*Hsiung Wu v. T.W. Wang, Inc.*, 420 F.3d 641 (6th Cir. 2005) (reversing dismissal where both plaintiff and his attorney were mistakenly waiting on a stipulated order to be entered by the Court); *Mulbah v. Detroit Bd. of Educ.*, 261 F.3d 586 (6th Cir. 2001) (reversing dismissal

13

where plaintiff responded to discovery and made court appearances); *Freeland v. Amigo*, 103 F.3d 1271 (6th Cir. 1997) (reversing dismissal without mentioning any direct effort by plaintiff to engage in the case); *Bishop v. Cross*, 790 F.2d 38 (6th Cir. 1986) (reversing dismissal where plaintiffs' counsel appeared but individual plaintiffs failed to appear at voir dire); *Patterson*, 760 F.2s at 688-89 (reversing dismissal without mentioning any direct effort by plaintiff to engage in the case); *Carter*, 636 F.2d at 161 (same); *Kemp v. Robinson*, 262 F. App'x 687 (6th Cir. Dec. 27, 2007) (reversing dismissal where both plaintiff and his attorney were engaged in settlement discussions). If the efforts by these plaintiffs were enough for the Sixth Circuit to find that dismissal was an abuse of discretion, how much more so in this case.

The closest analogy is perhaps *Tung-Hsiung Wu v. T.W. Wang, Inc.*, 420 F.3d 641 (6th Cir. 2005), where the Court found that Plaintiff's and Plaintiff's counsel's delay was understandable because both parties mistakenly believed the Court was going to rule on a stipulated order to stay proceedings. *Id*. at 643. In a situation mirroring the one here, defendant's attorneys "contacted the district court clerk's office on at least eight occasions regarding the status of the stipulated order. The court, however, never responded in one way or the other." *Id*. at 642. The Sixth Circuit found that these efforts to keep the case moving forward showing that, "[e]ven if this reliance was unreasonable or unwarranted . . . it was not motivated by bad faith, willfulness, or fault." *Id*. at 643. Thus, dismissal was not appropriate.

Similarly, here, Dr. Singh *himself* contacted the Court eight times, attempting to inform the Court about his counsel's lack of diligence and his desire to comply with court deadlines and move the case forward. (Singh Dec., Doc. No. 39, ¶ 5; Pl.'s Objections, Doc. No. 38, p. 3.) The court clerk's office was unfortunately unresponsive, failing to send him documents he requested regarding how to change counsel. (*Id.*) Nevertheless, these efforts show that *Dr. Singh* "was not

14

motivated by bad faith, willfulness, or fault." In fact, unlike the Plaintiff or counsel in *Wu*, Dr. Singh took the extra step of filing letters to the Court in order to ensure the Court was aware of his desire to prosecute the matter and his counsel's shortcomings.

On the other hand, cases where a dismissal is affirmed often show direct failures by the individual plaintiff himself. *See*, *e.g.*, *Schafer v. City of Defiance Police Dep't*, 529 F.3d 731 (6th Cir. 2008) (affirming dismissal where the plaintiff himself failed to communicate with counsel or refile his complaint as ordered by the court); *but see Harmon v. CSX Transp.*, 110 F.3d 364 (6th Cir. 1997) (upholding dismissal where the plaintiff's counsel failed to respond to discovery and a motion to dismiss). That is certainly not the case here.

### B. Defendants Have Made No Showing of Prejudice to Outweigh Plaintiff's Interest in Pursuing This Matter.

While Defendants may have suffered some prejudice by the lack of progress in this matter, that prejudice does not outweigh the other factors. "A defendant is prejudiced by a plaintiff's dilatory conduct if the defendant is 'required to waste time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" *Carpenter*, 723 F.3d at 707. In *Carpenter*, the Court noted that while the defendants made cursory assertions that discovery delays made the case more difficult, "these assertions are unsupported by any specific details or evidence." *Id*.

Likewise here, Defendants have presented no evidence that they have been prejudiced by Plaintiff's former counsel's delays. The entirety of Defendant's prejudice argument comprises four sentences in Defendants' motion. (Def.'s Mot. Dismiss, Doc. No. 29, p. 7.) These four sentences simply assert that, due to Plaintiff's counsel's failure to participate in discovery, Defendants' defense has been "severely limited," without giving any further details. (*Id*.) As the

15

*Carpenter* Court stated, "This total lack of evidence of prejudice to Defendants weighs against dismissal." 723 F.3d at 707.

The *Carpenter* Court also found it significant that "Defendants' activity in this litigation indicates that they have not expended significant time or effort defending against Carpenter's claims." *Id*. There, defendants had filed only a few pleadings; their main complaint was that they had expended time attempting to communicate and negotiate case management with Plaintiff's counsel. *Id*. at 707-08. Rejecting this argument, the Court cited the First Circuit: "[E]xpense incurred in unsuccessfully attempting to communicate with [plaintiff] . . . . [is] not unusual in the course of litigation and do[es] not rise to the level of prejudice justifying dismissal." *Id*. at 708 (quoting *Crossman v. Raytheon Long Term Disability Plan*, 316 F.3d 36, 39 (1st Cir. 2002)).

Similarly here, Defendants have filed only a handful of documents, including their Answer to the Complaint (Doc. No. 9); three Status Reports, which Plaintiff's former counsel cooperated to draft (Doc. No. 13, 15, 26); a motion to extend the time to file a dispositive motion, which Plaintiff's former counsel did not oppose (Doc. No. 19); and their motion to dismiss (Doc. No. 27). Plaintiff's former counsel's failures to respond to discovery were no doubt frustrating for Defendants, but they did not cost any time or expense, and certainly not any more than any other communication difficulty. Rather, as in *Carpenter*, "there is nothing in the record demonstrating that Defendants have wasted substantial time, money, or effort due to the uncooperativeness of [plaintiff's] counsel." *Id*. at 708. In sum, Defendants have not and cannot show prejudice, and certainly not enough prejudice to overcome Plaintiff's demonstrated interests in pursuing this action.

Therefore, for all these reasons, there has been no showing of "a clear record of delay or contumacious conduct by the plaintiff." *Carter*, 636 F.2d at 161. "Absent this showing, an order of dismissal is an abuse of discretion; the court is limited to lesser sanctions designed to achieve compliance." *Id*. These have already been entered, by the Court's orders allowing Mr. Kinslow's withdraw from the case (Order, Doc. No. 31) and sanctioning Dr. Singh's dilatory counsel Mr. Pieper by barring him from practice before this Court (Order, Doc. No. 41). Therefore, the motion to dismiss for failure to prosecute should be denied.

### C. The Facts of This Case Have Not Yet Been Explored, and Dr. Singh Deserves His Day in Court.

As *Patterson*, *Carpenter*, and a long line of cases show, one of the utmost considerations in determining whether a case should be dismissed for failure to prosecute is whether it is just for plaintiff to be deprived of "his day in court." *Carpenter*, 723 F.3d at 704; *Mulbah*, 261 F.3d at 590; *Patterson*, 760 F.2d at 689. The Sixth Circuit has "expressed an extreme reluctance," *Mulbah*, 261 F.3d at 590, to impose the "extremely harsh" sanction of dismissal due to counsel's mistakes, especially where "[t]here [is] not indication that the [plaintiff's] claim was vexatious or fictitious." *Patterson*, 760 F.2d at 688 (quoting *Flaksa*, 389 F.3d at 889).

Here, Plaintiff's claim is not vexatious or fictitious. As explained in Section I(A), above, Plaintiff has in good faith stated a claim for discrimination based on his disability, race, national origin, and/or religion. Defendants assert Plaintiff's claims are untrue, as defendants so often do. However, that is for the justice system to decide. Dr. Singh is entitled to his day in Court.

Respectfully submitted,

**GILBERT McWHERTER SCOTT BOBBITT PLC**

s/ Justin S. Gilbert

17

Justin S. Gilbert (TN Bar No. 17079)
200 W. Martin Luther King Blvd., Suite 1067
Chattanooga, TN 37402
(423) 499-3044
(731) 664-1540 Facsimile
jgilbert@gilbertfirm.com
Caraline E. Rickard (TN Bar No. 34414)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
(731) 644-1540 Facsimile
crickard@gilbertfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF CONSULTATION

Per the Court's Order (Doc. No. 46), on September 11, 2018, Plaintiff's Counsel Caraline Rickard communicated with Defense Counsel Luther Wright regarding the possibility of Defendants' withdrawing their Motion to Dismiss and agreeing to a revised case management schedule. Defense Counsel reported that Defendants were unwilling to withdraw the motion or agree to a revised case management order at this time.

s/ Caraline E. Rickard

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of this Notice of Appearance has been mailed electronically via the Court's electronic filing system, to all counsel of record and to by U.S. Mail to the Plaintiff on September 17, 2018:

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Luther Wright, Jr., TN #17626
Casey M. Parker, TN #033081
SunTrust Plaza 401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615.254.1900
Facsimile: 615.254.1908

*Attorneys for Defendants*

s/ Justin S. Gilbert