IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 3:17-cv-00400 |
| | ) Judge Eli J. Richardson |
| VANDERBILT UNIVERSITY MEDICAL CENTER AND VANDERBILT UNIVERSITY, | ) Magistrate Barbara D. Holmes ) ) ) |
| Defendants. | ) ) |

**DEFENDANTS' STATEMENT OF UNDISPUTED FACTS IN SUPPORT OF THEIR RENEWED MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendants, pursuant to Rule 56 of the Federal Rules of Civil Procedure, submit this Statement of Undisputed Facts[1] in support of their Motion to Dismiss, or in the alternative, Motion for Summary Judgment.

1. Plaintiff, Gobind Singh, M.D., PH.D. ("Plaintiff") began in the Ophthalmology Residency Training Program at VUMC on July 1, 2014. Plaintiff began his residency as a postgraduate year two (PGY-2) resident who had completed a PGY-1 year in Internal Medicine at Highland Hospital in California prior to joining VUMC. At all times relevant hereto, the Chair of the Ophthalmology Program was Dr. Paul Sternberg and Dr. Laura Wayman served as an Associate Professor and Vice Chair for Education and Director of Resident Education. Additionally, Dr. Donald Brady served as the Senior Associate Dean for Graduate Medical

---

[1] Defendants note that these facts are undisputed solely for purposes of summary judgment only. Defendants reserve the right to dispute some or all of these facts if it does not prevail on its Motion for Summary Judgment and this matter proceeds to trial.

Education and the ACGME/NRMP Designated Institutional Official for VUMC. Plaintiff was originally slated to advance to PGY-3, but did not advance to a PGY-3 year in 2015 as scheduled due to performance issues that resulted in him being placed on probation on March 26, 2015. Instead, he remained as a PGY-2 throughout the remainder of his residency, which ended on February 25, 2016 when he was dismissed from the Program. *Compl. ¶¶8-9*; *Motion for Summary Judgment ("Motion"), Exhibit ("Ex.") A, Redacted February 25, 2016 Dismissal Letter ("Dismissal Letter")*.

**RESPONSE:**

2. Plaintiff rotated through several different disciplines from July 1, 2014 through June 30, 2015. Plaintiff asserts that in October 2014 he began experiencing the symptoms of fatigue. Plaintiff was diagnosed with vestibular stenosis on October 13, 2014 and took medical leave to have nasal surgery to address these symptoms on December 3, 2014. Plaintiff asserts that this is the first time period that he recalls asking for workplace accommodations, including leave for surgery and modified schedule, particularly long periods when he was on call. However, Plaintiff admits that he was provided with leave to have surgery and to recuperate and that the purpose of the surgery was to help alleviate his symptoms of fatigue. However, Plaintiff contends that his symptoms did not improve as contemplated, and his symptoms actually became worse. Plaintiff also admits that at some time the "on-call" schedule changed for all residents, creating shorter call shifts, but he does not recall when that occurred. See *Id.; Motion, Ex. E, Deposition of Plaintiff Gobind Singh ("Singh Depo.") at pp. 23-30, 82-85*.

**RESPONSE:**

3. In December 2014, Plaintiff was referred to VUMC's Faculty and Physician Wellness-Work Life Connections (EAP) Program by Dr. Wayman. Plaintiff asserts that he believes the purpose of the EAP referral was to address issues related to the symptoms he was experiencing from his medical condition(s). A January 28, 2015 e-mail to Plaintiff from Chad Buck indicates that the purpose of the referral was "more about the need to improve your knowledge base than anything about interpersonal problems." Plaintiff's EAP File was closed on July 10, 2015 due to Plaintiff's lack of engagement. *Id. at pp. 24-42 and Ex. 4 thereto.*

**RESPONSE:**

4. On May 26, 2015, Plaintiff was placed on probation for a continued pattern of concerns including poor clinical judgment, inadequate medical knowledge, poor clinical skills, and unprofessional behavior. His probation including regular coaching sessions with Dr. Wayman and two other doctors in the Ophthalmology Department and was slated to last until August 31, 2015 Plaintiff had the right to appeal this probation, but does not believe that he did. *Motion, Ex. A, Dismissal Letter; Ex. E, Singh Depo. at pp. 47-48, 107-109.*

**RESPONSE:**

3

5.      Plaintiff was placed on the Corrective Action step of Summary Suspension on June 15, 2015 after another performance related issue occurred. On June 30, 2015, a decision was made to extend his Probation status through December 31, 2015 and to not promote him to PGY-3 for the 2015-2016 academic years because of continued concerns regarding his behavior, clinical skills and medical knowledge being below his expected level of training. He appealed the decisions of Summary Suspension and Non-Promotion, but these decisions were upheld after review through the appeal process. *Motion, Ex. A, Dismissal Letter.*

**RESPONSE:**

6.      On July 29, 2015, Plaintiff was again placed on the Corrective Action of Summary Suspension after another performance issue occurred. In correspondence related to his Summary Suspension, he was specifically advised that immediate dismissal was a potential next course of action. A final decision was made on or around February 25, 2016 to move to the Corrective Action of Immediate Dismissal. Plaintiff appealed the decision of Immediate Dismissal, but this decision was upheld after review through the appeal process. *Id.*

**RESPONSE:**

7. Plaintiff asserts that he was diagnosed with Hypothyroidism on March 24, 2015. Plaintiff states that he made Dr. Wayman aware of his Hypothyroidism diagnosis sometime in April 2015 when he requested an accommodation to "wear extra layers under surgical attire to prevent body/hands from shivering." Plaintiff asserts that this requested accommodation was denied by Dr. Wayman because she asserted that the extra layers of clothing would compromise the sterile field in the operating room. Plaintiff contends that he did not understand this denial. Plaintiff further admits that he was allowed to wear additional clothing outside the operating room without incident. *Motion, Ex. E, Singh Depo. at pp. 50-52.*

**RESPONSE:**

8. Plaintiff contends that he made Dr. Brady aware of his "health issues" on or about June 22, 2015. Plaintiff does not recall whether he specifically mentioned hypothyroidism with Dr. Brady, but recalls discussing his symptoms. Dr. Brady e-mailed Plaintiff on June 23, 2015 and stated the following: "Also, related to the medical issue that you disclosed to me yesterday, if you believe you need any accommodations to your residency program going forward, please contact the EAD (Equal Opportunity, Affirmative Action, and Disability Services) office at 322-4705." *Id. at pp. 48-49 and Ex. 8 thereto.*

**RESPONSE:**

9. Plaintiff contacted VUMC, through his legal counsel at the time, Richard J. Braun, Esq. on September 4, 2015 requesting a reasonable accommodation. Attorney Braun's e-mail reads in relevant part:

> I have been retained to represent Dr. Singh, a resident in Ophthalmology who has experienced some medical issues which have impacted his performance and concentration and which have now created the potential for serious discipline. I will try to attach the letter from his treating physician or will fax it to Nancy soon. Pursuant to the Americans with Disabilities Act, we are requesting a reasonable accommodation that at such time as his physician certifies Dr. Singh is fit for duty that his shifts be limited to 12 hours in duration with 12 subsequent hours off duty until such time as he is fully recovered.
>
> We also request that any reference to potential discipline or performance issues be expunged from his record.
>
> Let me know if you have any questions.

Notably, Attorney Braun's e-mail does not mention any previous accommodation requests or the denial of any prior accommodation requests. Additionally, this e-mail was sent by Plaintiff's counsel over two months after Dr. Brady's direction to Plaintiff to contact EAD if he sought an accommodation and after Plaintiff had been twice suspended. *Id.; Motion, Ex. F, September 4, 2015 E-mail from Richard J. Braun, Esq. to John Callison ("Braun E-mail").*

**RESPONSE:**

10. Plaintiff also submitted a letter from Dr. Howard Baum dated September 2, 2015 regarding his diagnosis of hypothyroidism in March 2015 which stated, in part: "[i]n retrospect, in the months before his diagnosis, he may have suffered from decreased energy and decreased concentration which could have interfered with job performance." Additionally, Plaintiff

submitted a letter from Dr. Scott Stephan dated September 3, 2015, indicating a diagnosis of vestibular stenosis with a corrective surgery on December 3, 2014. *Id.* These submissions prompted an e-mail from Damian Marshall, a Specialist with VUMC's Equal Employment, Affirmative Action and Disability Services, providing Plaintiff with a Request for Reasonable Accommodation Form on September 11, 2015 and further explaining the accommodation process. *Motion, Ex. E. Singh Depo. at pp. 67-72 and Exs. 11-12 thereto; Ex. G, September 11, 2015 E-mail from Damian Marshall to Plaintiff.*

**RESPONSE:**

11. Plaintiff submitted a Request for Reasonable Accommodation Form (the "First Request") on or about September 21, 2015 prepared by Dr. Baum. Dr. Baum's portion of the First Request indicates that Plaintiff's condition had been resolved as of July 1, 2015 and that Plaintiff would need no accommodations "going forward." This First Request was denied on September 25, 2015 because the healthcare provider did not indicate a need for accommodations going forward. *Motion, Ex. E, Singh Depo. at pp. 88-102 and Ex. 14 thereto; Ex. H, September 25, 2015 E-mail from Batia Karabel to Plaintiff.*

**RESPONSE:**

7

12. In response to the denial of the First Request, Plaintiff submitted a second Request for Reasonable Accommodation Form (the "Second Request") from a different physician on October 22, 2015. The Second Request, prepared by Dr. Susan Henley, requested several specific accommodations: 1) no working without breaks from longer than eight hours- could work an additional four hours after one hour break; 2) no longer than a 24 hours shift as long as appropriate breaks are given throughout; 3) one hour of rest for every six hours of work; 4) a weekday schedule of 4:30pm -8am and weekend schedule of Friday 4:30pm-7am/Saturday & Sunday 24 hours. However, Plaintiff never returned to work after his second suspension and was dismissed from the Ophthalmology Residency Program before these or any other accommodations would have been implemented. Additionally, Plaintiff has no idea why Dr. Henley requested the specific schedules listed in the Second Request. *Motion, Ex. E, Singh Depo. at pp. 76-88 and Ex. 13 thereto.*

**RESPONSE:**

13. On July 27, 2015, Plaintiff alleged that he was experiencing a "hostile work environment" after he had been suspended for the second time. His allegations were referred to Vanderbilt University's Equal Employment, Affirmative Action and Disability Services (EAD) for review by Dr. Brady. Plaintiff's written statements to EAD in August 2017 reference Plaintiff's belief that his disciplinary actions were the result of reports he made about alleged "duty hour" violations, asserting his belief that VUMC Ophthalmology Residents were underreporting hours

8

worked. For example, in a statement dated August 17, 2015, Plaintiff wrote: "[i]tis the disproportionate reaction by being placed on probation and subsequent actions that lead me to believe I am being singled out for other reasons—notably after I completed my honest answers to a national survey about violations in duty hour regulations and had expressed concerns about duty hour violations." *Motion, Ex. B, August 3, 2016 Confidential Memorandum ("August 3rd Memorandum"); Ex. I, August 17th 2015 Written Statement from Plaintiff; Ex. K, August 25, 2015 E-mail from Damian Marshall Regarding Plaintiff.*

**RESPONSE:**

14. On August 24, 2015, Plaintiff added: "[a]s previously noted in my first statement, I believe that I am being targeted for honestly speaking out about violations in duty hour regulations, both internally in the department and through a national survey. I believe that this was not only the reason for my probation in the first place, but that this started a cascade that also resulted in the reversal of my promotion to the next year of residency." The investigation into Plaintiff's complaints included disability because Plaintiff asserted his "health issues" had not been supported by his department. EAD ultimately concluded, after investigating the concerns raised by Dr. Singh, that there was insufficient evidence to determine that he had been retaliated against or discriminated against on the basis of disability or any other basis. *Motion, Ex. B, August 3rd Memorandum; Ex. C, February 4, 2016 Letter from Damian Marshall; Ex. J, August 24, 2015*

*Written Statement from Plaintiff; Ex. K, August 25, 2015 E-mail for Damian Marshall Regarding Plaintiff.*

**RESPONSE:**


15. After his dismissal from VUMC, Plaintiff applied for a residency position with New York Medical Center. Plaintiff, who was represented by counsel Richard Braun at this time, executed a "Consent and Authorization for Release of Information and Waiver of Liability" agreement (the "Release") on June 6, 2016. *Compl. at ¶27; Motion, Ex. D, Consent and Authorization for Release of Information and Waiver of Liability ("Release and Waiver").*

**RESPONSE:**


16. The Release expressly authorized VUMC to "consult with a representative of prospective employers, other hospitals, medical staffs, sponsoring institutions, educational institutions . . . with which I am associated." The Release further authorized VUMC to have "contact with any of the entities described above and any others who may have a need for information bearing on my professional competence, character and ethical qualifications" and gave "consent for Vanderbilt to release information, including but not limited to my performance, including any disciplinary actions." Plaintiff also released the Defendants from liability associated

with information provided in good faith, and, in his own handwriting, expressly limited the Release to New York Medical Center/Westchester Medical Center." *Motion, Ex. D, Release and Waiver*.

**RESPONSE:**

17. Plaintiff was offered a residency position with New York Medical Center/Westchester Medical Center ("Westchester") on April 21, 2016 by Residency Program Director Dr. Thaddeus Wandel. On May 31, 2016, Plaintiff provided Westchester with information regarding his hypothyroidism condition and his belief that it had impacted his performance. *Motion, Ex. E, Singh Depo. at pp. 122, 134-136 and Exs. 18-19 thereto.*

**RESPONSE:**

18. At Plaintiff's request, VUMC sent a Summative Evaluation to Westchester on or about June 6, 2016. Plaintiff contends that the Summative Evaluation was misleading as it did not include any information about his medical condition and contained information he had not seen before and information with which he disagreed. Plaintiff also contends that the Summative Evaluation caused Dr. Wandel to revoke Westchester's offer on June 24, 2016. *Id. at pp. 138, 142-143 and Ex. 20 thereto*.

**RESPONSE:**




19. However, on August 17, 2016, Dr. Wandel and two other doctors sent a letter to a Dr. Bierman indicating that "[a]fter many hours of discussion with Dr. Singh, an, (sic) credible, documented, alternative cause of his poor performance became clear" and that they hoped "that Dr. Singh's application for a Residency in Ophthalmology will be accepted based on a new review of the evidence presented." Despite this support from the Ophthalmology Program Director and other professors, Plaintiff's job offer was not reinstated by Westchester for reasons that have not been explained to Plaintiff. Plaintiff revoked his release for VUMC to provide any information to any other programs and is not aware of any other programs to which VUMC has provided information. *Id.* at pp. 148-150 and Ex. 22 thereto.

**RESPONSE:**




20. Defendants previously moved to dismiss this matter on July 3, 2018 based on Plaintiff's failure to participate in discovery. Prior to Defendant's Motion to Dismiss, Plaintiff filed a Motion to Request New Counsel And/Or Porceed (Sic) Pro Se. The Court ultimately denied Defendants' Motion to Dismiss on January 17, 2019, based primarily on Plaintiff's Motion and many submitted communications with his former counsel demonstrating an alleged

lack of attention to Plaintiff's case. In reaching its conclusion, the Court determined that Plaintiff had waived the attorney-client privilege, at least in part, based on the inclusion of 23 separate communications with his attorneys in support of his opposition to Defendants' Motion to Dismiss and in support of his Objections to the Magistrate's Initial Report and Recommendation. *See [Docket Entry Nos. 25, 27, 59]*.

**RESPONSE:**

21. Based on the Court's January 17, 2019 Order and its belief that there were communications missing from Plaintiff's filings that the Court should consider, Defendants subpoenaed communications from Plaintiff's former counsel. The subpoena to Tracey Kinslow yielded several communications that Plaintiff did not provide to the Court in this matter with his prior submissions. The first is an e-mail dated June 28, 2018 (the day before Plaintiff's Noticed Deposition) from Plaintiff to Tracey A. Kinslow stating "[a]s a heads up, I sent some paperwork and requests to the court house after speaking with a few people that may or may not arrive in time, but I am hoping the end goal of buying more time is achieved with it." . In a series of text the next day (June 29, 2018) with Attorney Kinslow, Plaintiff reiterates that he was not seeking Kinslow's termination, "but more buying time" because he was feeling overwhelmed. *See Motion, Ex. E, Singh Depo. at pp. 164-173 and Exs. 25-26 thereto; Ex. K, Subpoena to Tracey Kinslow*.

**RESPONSE:**

                    Respectfully submitted,

                    /s/ Luther Wright, Jr.
                    Luther Wright, Jr., TN #17626
                    Casey M. Parker, TN #033081
                    OGLETREE, DEAKINS, NASH, SMOAK &
                    STEWART, P.C.
                    SunTrust Plaza
                    401 Commerce Street, Suite 1200
                    Nashville, TN 37219-2446
                    Telephone: 615.254.1900
                    Facsimile: 615.254.1908

                    Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2019, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Justin S. Gilbert (TN Bar No. 17079)
200 W. Martin Luther King Blvd., Suite 1067
Chattanooga, TN 37402
(423) 499-3044
(731) 664-1540 Facsimile
jgilbert@gilbertfirm.com

Caraline E. Rickard (TN Bar No. 34414)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
(731) 644-1540 Facsimile
crickard@gilbertfirm.com

**s/Luther Wright, Jr.**
Luther Wright, Jr.