# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., | ) |
| Plaintiff, | ) Civil Action No. 3:17-cv-00400 |
| | ) The Honorable Eli Richardson |
| v. | ) |
| | ) Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL CENTER, and VANDERBILT UNIVERSITY, | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION FOR REVIEW OF NON-DISPOSITIVE ORDER OF MAGISTRATE JUDGE

Plaintiff, GOBIND SINGH, by counsel, Edward R. Moor of Moor Law Office, P.C., respectfully states, pursuant to F.R.Civ.P. 72(a) and Local Rule 72.01(a), as follows for his objections to the Order entered on August 25, 2020 by Magistrate Judge Barbara D. Holmes:

Plaintiff, respectfully, objects to certain factual findings or conclusions, explained below, and objects to the conclusions that expert Charles Baum and treating physician Natalie Cusano are barred for being disclosed in an untimely manner, according to findings and rulings stated in the Order of August 25, 2020 (Doc. 132). A memorandum of law, required by Local Rule 72.01(a), is attached hereto and incorporated herein by reference.

**Objection 1:** **The Magistrate Judge improperly infers that Plaintiff's obvious concern with experts meant that he was also aware of deadlines and ignores that the attorney who *entered* the last deadline clearly mislead the Plaintiff about it.**

Pages five and six of the August 25th Order (Doc. No. 132), recites facts showing that Plaintiff was aware of the need for experts since the inception of the case, which Plaintiff on the whole does not dispute but the Magistrate Judge unfairly focused on the March 30, 2018 order because after attorney Kinslow withdrew and attorney Pieper was disbarred, Plaintiff's new counsel not only obtained time to disclose experts, as evidenced in

comparing Docket No. 19 with Docket No. 56, but told the Plaintiff when later preparing answers to interrogatories in November 2018 that "the issue would be addressed later and that [he] should trust his lawyers." (Doc. 130 at Ex. B, ¶ 3, also attached to the Memorandum of Law in Support of this Motion as Exhibit 1-B).

Prior counsel Gilbert then told Plaintiff that the issue would be dealt with *after* the motion for summary judgment was decided. (Doc. 130 at Ex. B, ¶ 4, also attached to the Memorandum of Law in Support of this Motion as Exhibit 1-B). Counsel's statements in this period were false because a) the January 3, 2019 deadline for disclosing experts had already run when the motion for summary judgment was filed in April 14, 2019 (Doc. 70), and b) the deadline had been expired for more than a year by the time the decision on motion for summary judgment was entered on January 16, 2020 (Doc. 99). Attorney Gilbert had appeared in August of 2018, and had participated in entering the governing scheduling order in November 2019. (Doc. 56), and therefore knew that the deadline had run both when the motion for summary judgment was filed and when this Court issued its decision on the motion. Yet, he misrepresented to his client that experts could be disclosed after the motion was decided.

After the motion for summary judgment was decided counsel told Plaintiff that his prior counsel had blown the deadline (Doc. 130 at Ex. B at ¶ 5, also attached to the Memorandum of Law in Support of this Motion as Exhibit 1-B). Then, at and after the mediation, when in arguing about the issue of experts with his counsel the Plaintiff scoured the docket and asked attorney Gilbert about the January 3, 2019 deadline in the scheduling order (Doc. 56). Gilbert responded, in writing, with another false statement: "Looks like you are right per Order 56. We COULD have retained an expert. I thought it had already expired with the other lawyers." (Doc. 130 at Ex. B, ¶ 7 and Doc. 130 at Ex. D, also attached, respectively, to the Memorandum of Law in Support of this Motion as Exhibits 1-B and 1-D).

Therefore, the record shows that Gilbert did make false statements to Plaintiff, and one is in writing. Having secured Gilbert to replace counsel who had let the case teeter on the brink of dismissal, and Gilbert otherwise showing himself to have been able counsel (*i.e.* the response to the motion for summary judgment), there is no reason to assert or assume that between August 2018 and the end of May 2020 that the Plaintiff individually was on notice of any reason to distrust Gilbert or that the Plaintiff individually was altered to the highly unusual need to second check his representation against the court docket.

The Magistrate Judge does not refer to the misstatements of counsel or to the email which contains one of his misstatements. But there is no basis on which to charge Plaintiff, who obviously was concerned about his case, and

who was also obviously concerned about experts, with the duty to supervise his counsel's adherence to deadlines especially when the counsel at issue *misled* Plaintiff.

**Objection 2:** **The Fact Conclusions on Pages 6, 7 and 9 of the Order are Unsupported.**

Writing that the Plaintiff is a "extremely sophisticated consumer of legal services," that Plaintiff was aware that he needed experts, and that he knew how to replace counsel, the Magistrate Judge writes that Plaintiff was "put on notice that compliance with case management deadlines, including specifically timely expert disclosures, were critical." The Magistrate Judge then proceeds to find that the Plaintiff's claim that he relied in his attorneys is not credible and not persuasive.

The "lack of credibility" is first cited in footnote 7 but is repeated on page 9 of the August 25, 2020 order.

Respectfully, these findings and conclusions are erroneous.

First, the key fact recited to raise a question as to Plaintiff's credibility is the fact that an attorney, Jennifer Morton, had assisted Plaintiff in his *pro se* filings in 2018 without being disclosed. The ethical rules that the Magistrate Judge cites in footnote 7 of the August 25, 2020 order apply to *counsel,* not the Plaintiff, and should not be used to question Plaintiff's credibility. In fact, Morton declined to take the case after assisting Plaintiff in his filings. (Ex. A, 9-7-20 Affidavit). Also, while unknown to Plaintiff at the time, Morton had, in fact, consulted with the Tennessee Board of Professional Responsibility proactively and been told that if she did no more than she had done that no disclosure was necessary. (Email attached to Ex. A).

The fact that Plaintiff needed help to make his *pro se* filings (he had been writing letters to the Clerk and Court before that) also argues against his sophistication.

The "finding" that Plaintiff knows how to replace counsel is also error. Plaintiff obviously *did* replace attorney Gilbert after the issue of experts came to a boil between them at the mediation, and far from seeking sympathy as a *pro se* litigation, the Motion to Extend (Doc. 130) which was the subject of the August 25, 2020 order, was filed by counsel. Also, Dr. Singh's case had been recommended for dismissal earlier because he was not sophisticated enough to detect the misconduct his prior attorneys Kinslow/Pieper committed until it was too late.

3

**Objection 3:** **The finding that the Plaintiff was not diligent is error.**

The Magistrate concludes after reciting the facts discussed above that the Plaintiff was not diligent. This is error. The Plaintiff was only aware that experts could *not* be disclosed at and after the mediation. He then terminated his counsel (after his counsel terminated him).

Plaintiff then *promptly* had Charles Baum finalize a report, and promptly began looking for new counsel. The undersigned was retained and by July 31, 2020, disclosed not only Baum but those opinions of Cusano that exceeded her mere care and treatment of Plaintiff since late April 2020, as well as supplementing as to Dr. Wandel. These disclosures were made when there was no trial date, and even in light of then then announced intention of the Magistrate Judge to set a trial date by the end of the year, time remained for Defendant to disclose and depose more than 30 days before trial. These facts argue for diligence, not its lack.

**Objection 4:** **Having suggested that the standard to be used in reviewing any motion to extend would be "extraordinary circumstances," rather than Rule 16(b)(4)'s good cause standard, the Magistrate misapplied both standards.**

Plaintiff, in the Motion to Extend (Doc. 130), did not cite or seek to apply the doctrine of equitable tolling as the Magistrate suggests in footnote 9, but rather cited cases that regularly apply a test of "extraordinary circumstances" to illuminate the relevant considerations in applying that test.

As it turns out, in the cases applying *both* good cause and extraordinary circumstances have been found when an attorney misrepresents facts, like deadlines, to a client.

*Holland v. Florida*, 560 U.S. 631, 651, 130 S. Ct. 2549, 2564 (2010), and *Nassiri v. Mackie*, --- F.3d ---, 19-1025, 2020 WL 4282159 (6th Cir. July 27, 2020), support the proposition that "extraordinary circumstances" exist a plaintiff has been pursuing his rights diligently and his counsel misrepresents relevant facts to him. So does *Travelers Cas. and Sur. Co. of America v. J.O.A. Construction Co. Inc.*, 479 Fed. Appx. 684, 696 (6th Cir. 2012) and *Gregson v. Metro. Life Ins. Co., 3:13-0678, 2018 WL 4701854, at \*4* (M.D. Tenn. June 20, 2018), report and recommendation adopted, 3:13-CV-00678, 2018 WL 3655388 (M.D. Tenn. Aug. 2, 2018) ("the Sixth Circuit has recognized that even with the general principle of holding clients to the acts of their attorneys, courts still 'occasionally deem attorneys' misconduct sufficiently egregious to warrant post-judgment relief for their abused clients'").

4

The Rule 16(b)(4) analysis is similar. The "primary measure of Rule 16's 'good cause' standard is the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)(citations omitted). Here, with attorney Gilbert as counsel of record, telling the Plaintiff individually that experts could be disclosed when they could not (the period between January 2019 and January 2020), and then claiming and prior counsel had blown the deadline, the Plaintiff individually *could not* have complied with the deadline although he was diligent in pursuing the issue. *Interstate Packaging Co. v. Century Indem. Co.*, 291 F.R.D. 139, 145 (M.D. Tenn. 2013) (plaintiff failed to show why he could not comply with deadline).

It is extraordinary for an attorney who enters a scheduling order to misrepresent issues governed by that same order to a client who is asking about the issue. It is also an explanation of good cause in that while the Plaintiff was individually diligent, his counsel misrepresented the relevant facts to Plaintiff.

**Objection 5:** **For the reasons stated above the Magistrate Judge erred in barring Charles Baum**

Once the Plaintiff individually discovered the error his counsel had made misstatements about, he individually and out of his own pocket retained an expert economist, obtained a final report, and the report was disclosed on July 31, 2020. This is diligence on the part of the Plaintiff individually without any help from Gilbert in less than one month. Plaintiff has shown that he could have met the deadline had he known the truth, but did not because attorney Gilbert was his counsel.

**Objection 6**: **The Magistrate erred in barring treating physician Cusano.**

On July 31, 2020, Plaintiff disclosed treating physician Natalie Cusano in supplemental answers to interrogatories (Doc. 130 at Ex. E, also attached to the Memorandum of Law in Support of this Motion as Exhibit 1-E), and as her testimony exceeds her mere care and treatment of Plaintiff, a report in compliance with F.R.Civ.P. 26(a)(2)(B) was also attached.

The Magistrate Judge refused to permit the disclosure as untimely because she was not disclosed in April. However, the facts are that Dr. Cusano only began treating Plaintiff in April of 2020 after the COVID-19 quarantine began in NYC in March. (Doc. 130 at Ex. E). Then the Plaintiff went to mediation and, at the mediation, discovered the above described issues as to expert discovery. Then, in very early June 2020, his counsel of record terminated representation of the Plaintiff and Plaintiff filed a *pro se* motion on June 30, 2020, and searched for new counsel. The undersigned was

retained on July 7, 2020 (Doc. 130 at ¶ 13), and Dr. Cusano's report was disclosed on July 31, 2020.

Plaintiff respectfully submits that in the context of these events, the disclosure of Dr. Cusano on July 31, 2020 was timely, and especially so given the circumstances in this case and the world. At the time of disclosure there was no trial date. Even with a January 5, 2021 trial date, the supplementation would have been done 158 days before trial, or five months before trial.

Barring Dr. Cusano is a far too drastic remedy given that even now time exists in which to take her deposition, should the Defendants wish to do so.

**Objection 7:** **The Magistrate Judge erred in finding substantial prejudice to Defendants.**

There is no substantial prejudice to Defendants relative to Dr. Natalie Cusano as discussed above.

As to Dr. Charles Baum, the Plaintiff did not ask for more time to locate and disclose an expert when moving to extend. Rather, he produced a report leaving only the need for a deposition, if the Defendants desired, and the need for time for Defendants to disclose, if they desired. Because there was time for these tasks when the disclosure was made on July 31, 2020, and because there now remains time prior to the January 5, 2021 trial date, the only real prejudice is the disappointed expectation that the case would be tried without an expert on the economic loss or without the Plaintiff's treating endocrinologist. This case is meritorious, and the Plaintiff, as argued above, has been diligent. Having to use September and October to depose and disclose is not substantial prejudice.

WHEREFORE, Plaintiff, by counsel, respectfully requests that this Court enter an order overruling or amending the Order of August 25, 2020, and enter an order allowing the Defendants time to depose experts and disclose their own, if they wish. Plaintiff further prays for any other relief that this Court deems just.

Respectfully submitted,

/s/ Edward R. Moor
Moor Law Office, P.C.
One N. LaSalle Street, Suite 600
Chicago, Illinois 60602

312-726-6207<br>
erm@moorlaw.net<br>
Illinois Attorney #: 6205169

**CERTIFICATE OF SERVICE**

    I hereby certify that on September 8, 2020, I electronically filed the foregoing with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all registered users.

    /s/ Edward R. Moor

7

Case 3:17-cv-00400    Document 135    Filed 09/08/20    Page 7 of 13 PageID #: 1640

# EXHIBIT A –

# Affidavit and Morton Email

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., ) | |
| ) | Civil Action No. 3:17-cv-00400 |
| Plaintiff, ) | |
| ) | The Honorable Eli Richardson |
| v. ) | |
| ) | Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL ) | |
| CENTER, and VANDERBILT ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF DR. GOBIND SINGH

I, Gobind Singh, under penalty of perjury, hereby declare and state as follows:

1. I hired attorneys Jennifer Morton and Wade Cowan to help me prepare my objection responses after my case had been recommended for dismissal in 2018 (Doc. No. 32, 35). My agreement with the attorneys was that they would only help me with these filings and the agreement would self-terminate after the responses were filed, regardless of their outcome.

2. With lead-attorney Bryan Pieper attorney on the record plus suspended from practicing law by the TN Supreme Court almost 11 months earlier, my objections and responses were successfully filed on July 24, 2018 (Doc. No. 38, 39, 40), thus also ending my agreement with the attorneys Morton/Cowan. I did not believe then or now that it was improper for me to seek additional help beyond Mr. Pieper (who had been non-responsive to me for almost 14 months at that point) because I am not a lawyer and have never had any legal education. Accordingly, the importance of whether Morton/Cowan announced themselves at that time was not a point that I realized could be an issue; I was trying to save my case from misconduct caused by attorneys Bryan Pieper and Tracey Kinslow.

3. After reading footnote 7 of Judge Holmes' August 25, 2020 order, I called attorney Jennifer Morton to ask if her and Wade Cowan had announced themselves (Ex. 1, email chain). Morton kindly informed me that her and Cowan had consulted the Tennessee Board of Professional Responsibility (TBPR) and after they explained my cases circumstances, they had permitted to not announce themselves as long as they did not help me with any other legal filings (which they have not since), as I understand it. Attorney Jennifer Morton informed me she believed my case required an expert economist.

4. I did not know that Jennifer Morton and economist Charles Baum ever spoke about my case ever until June 2020, which was when I had personally undertook the task to locate, hire, and pay for such an expert to help provide answers that were missing in my case. I learned that he had already known about my case during a conversation I had with Charles Baum.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

/s/ Gobind Singh  9/8/20
Gobind Singh

Executed on September 8, 2020, in New York, New York.

2

 **Gobind Singh <gobind.singh@gmail.com>**

## FW: Declaration for Mary McKnight

**Jennifer Morton** <jen@jmortonlaw.com> Fri, Aug 28, 2020 at 5:36 PM
To: Gobind Singh <gobind.singh@gmail.com>

**From:** Jennifer Morton <jennifermorton@comcast.net>
**Sent:** Friday, August 28, 2020 5:18 PM
**To:** jen@jmortonlaw.com
**Subject:** FW: Declaration for Mary McKnight

**From:** Jennifer Morton <jennifermorton@comcast.net>
**Sent:** Monday, July 23, 2018 11:07 AM
**To:** 'wcowan' <wcowan@dhhrplc.com>
**Subject:** FW: Declaration for Mary McKnight

Hi Wade,

Laura responded to my question before I had a chance to call. See below.

**From:** Laura Chastain <lchastain@tbpr.org>
**Sent:** Monday, July 23, 2018 10:24 AM
**To:** Jennifer Morton <jennifermorton@comcast.net>
**Subject:** RE: Declaration for Mary McKnight

Hi Jennifer,

Mary McKnight has informed me that the declaration was scanned to you on Friday by Alan Johnson.

In my opinion, it is permissible to assist Dr. Singh in his court filing due to the short timeline and if you continue to assist with filings after the initial filings, then you should have a statement on the filing "prepared with assistance of counsel". You can have a limited scope agreement with Dr. Singh pursuant to RPC 1.2 Comment [6].

Best regards,

**EXHIBIT 1**

Laura L. Chastain

Ethics Counsel

Board of Professional Responsibility

of the Supreme Court of Tennessee

10 Cadillac Drive. Suite 220

Brentwood, TN 37027

615-361-7500 ext 212

Fax: 615-367-2480

lchastain@tbpr.org

---

**From:** Jennifer Morton [mailto:jennifermorton@comcast.net]
**Sent:** Friday, July 20, 2018 10:24 AM
**To:** Laura Chastain <lchastain@tbpr.org>
**Subject:** Declaration for Mary McKnight

Hi Laura,

Attached is the proposed declaration for Mary McKnight related to the suspension dates for attorney Bryan Pieper. I am sending it in .pdf format as well as in WORD in the event you or Mary need to make revisions. It does not need to be notarized because I've set it up as a declaration. I've also attached the Supreme Court order dated August 17, 2017 for your convenience.

I have a follow up question related to the ethical parameters of assisting on a court filing without entering a notice of appearance. As I mentioned, I am hesitant to enter a notice of appearance on behalf of Dr. Singh until the court decides whether to dismiss the case for failure to prosecute. It is my understanding that it is permissible for me to assist Dr. Singh with writing a response without signing it myself or entering an appearance at this time. If you have any additional guidance related to that issue, please give me a call at your convenience.

Thank you for your assistance with this matter.

Sincerely,

*Jennifer Morton*

*Jennifer Morton Law, PLLC*

8217 Pickens Gap Road

Knoxville, TN 37920

(865) 579-0708

(865) 579-0787 fax

[jen@jmortonlaw.com](mailto:jen@jmortonlaw.com)

[www.jmortonlaw.com](http://www.jmortonlaw.com)

This e-mail, including attachments, contains information that is confidential and may be protected by the attorney-client privilege, work product privilege, or other privileges. This e-mail, including attachments, constitutes non-public information intended to be conveyed only to the designated recipient(s). If you are not an intended recipient, please delete this email, including attachments, and notify me. The unauthorized use, dissemination, distribution or reproduction of this e-mail, including attachments, is prohibited and may be unlawful.

Please be advised that information relating to the investigation of complaints is confidential and privileged as provided in Tennessee Supreme Court Rule 9, Section 32.