# EXHIBIT 1 –

# Plaintiff's Motion to Extend filed 8-19-20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., ) | |
| ) | Civil Action No. 3:17-cv-00400 |
| Plaintiff, ) | |
| ) | The Honorable Eli Richardson |
| v. ) | |
| ) | Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL ) | |
| CENTER, and VANDERBILT ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S MOTION TO EXTEND DEADLINES (CONTESTED)**

Plaintiff, GOBIND SINGH, by counsel, Edward R. Moor of Moor Law Office, P.C., respectfully requests that this Court grant him leave to use late served disclosures and amend the Scheduling Order to allow the Defendants time, if desired, to depose Plaintiff's expert witnesses and disclose their own. In support of his motion, Plaintiff states as follows:

**INTRODUCTION**

1. Plaintiff asks this Court to allow his late service of three expert reports, allow proper disclosures of treating physicians, and allow for time for the Defendants to depose the experts, if they desire, and disclose experts in response. The parties have conferred, first by a telephonic conference between Luther Wright and Edward Moor on July 31, 2020, and subsequently by additional telephone calls. The Defendants object to the late disclosures and to reopening discovery so there is a dispute that cannot be resolved without the Court's intervention. The parties have filed a Joint Statement of their Discovery Dispute. (Doc. No. 129).

2. Plaintiff is fully aware of the history of this case, but the fact that one of his original counsel fell ill, did not communicate with Plaintiff, and was suspended from the practice of law,

all as described in Doc. Nos. 42 and 52, does not mean that he later was aware of, understood, and agreed with decisions that Mr. Gilbert made about the conduct of the case, decisions that including one ongoing significant misrepresentation. Mr. Gilbert, aware that Dr. Singh expected to develop a case to claim his lost salary as an ophthalmologist, repeatedly told Singh that experts would be disclosed after the motion for summary judgment was decided even though that motion was filed on April 19, 2019 (Doc. No. 70), three months after the deadline for Plaintiff's expert disclosures had run. Then, after the motion was decided, he told Plaintiff that "prior counsel" had failed to properly disclose experts. (Ex. B, Affidavit, at ¶ 5). Gilbert was counsel of record when the last order on expert discovery was entered and knew what the deadline was because he helped set it. (Doc. No. 56, Revised Scheduling Order, entered November 6, 2018). Plaintiff had clearly raised the issue with Gilbert in November 2018 and clearly expected, and acted all along as if he expected, expert disclosures to be made. (Ex. B, Affidavit of Singh at ¶¶ 3, 6 and 10). His counsel concealed facts and misled Plaintiff causing the extraordinary circumstance that this motion seeks to address.

## FACTS

3. Attorney Gilbert terminated his representation of Dr. Singh on June 14, 2020, shortly after mediation ended, (Ex. A, Letter of June 14, 2020), after Dr. Singh had asked to see his case file. (*See* Ex. E to Doc. No. 110). Plaintiff learned, for the first time, at mediation that he could not make a strong lost income claim as a fellowship trained ophthalmologist, because he did not have an expert economist. (Ex. B, Affidavit, at 6). Dr. Singh, when the issue came up in mediation, himself hired an expert (Dr. Charles Baum) who developed opinions for use at the mediation, but learned after mediation that he "had no experts" and shortly after the mediation learned that he could not disclose experts because it was too late and was told, initially and incorrectly, that it was the fault of his prior counsel. (Ex. B, Affidavit at ¶ 7).

4. Gilbert had appeared in the case on August 15, 2018. (Doc. No. 43). Later, on November 6, 2018, a Revised Scheduling Order, a draft of which had been prepared and submitted by both counsel for the parties, was entered by the Court. It provided, among other things, that Plaintiff would disclose experts by January 3, 2019. (Doc. No. 56).

5. The November 6, 2018 order was entered *after* the Court had previously been advised by the preceding Plaintiff's counsel (Pieper and Kinslow) that no experts were contemplated, which had led to the prior scheduling order providing that no extension of the expert discovery deadline of February 6, 2018 would occur. (Doc. No. 19, Order of March 3, 2018).

6. In November 2018, Singh worked with his counsel preparing answers to interrogatories. (Ex. B, Affidavit at ¶ 3). The answer filed as to experts stated the following:

> "Plaintiff has not retained an expert at this time. In the event Plaintiff does retain an expert in the future, he will disclose it according to the deadlines and procedure set out in Revised Scheduling Order (Doc. No. 53)."

Exhibit C, Plaintiff's Responses to Defendants' First Set of Interrogatories & Requests for Production of Documents.

7. Singh had specifically asked his lawyer on November 15, 2018 before the interrogatory answers were served about whether his damages would include "*future pay for an ophthalmologist and/or a sub-specialized ophthalmologist ex: ocular oncology and/or retina was/is the plan*" in a writing sent to counsel. He was told his counsel agreed and that the issue would be addressed "later" and that he should "trust" his lawyers. (Ex. B, Singh Affidavit, at ¶ 3).

8. Gilbert, who was counsel of record when the Revised Scheduling Order was entered, did not disclose experts. (*See* Ex. C at ¶ 11). He did not produce expert reports by January 3, 2019. He also did not properly disclose treating physicians in accordance with Rule 26(a)(2)(C) as it applies to treating physicians who will only testify about their

3

care, treatment and diagnoses so that no report is required, by listing the subject matter of their testimony and a summary of the facts and opinions to which the witness is expected to testify. (*See Adams v. Farbota*, 306 F.R.D 563, 571 (M.D. Tenn. 2015). The Plaintiff's answers to interrogatories merely listed "treating physicians." (Ex. C at ¶¶ 1(b) and ¶ 4). He did not supplement the interrogatory answers.

9. Gilbert initially told Plaintiff that Plaintiff's request for experts to address his lost ophthalmology salary would be handled "later." (Ex. B, Affidavit at ¶ 3). Then he told Plaintiff that it would be addressed after the motion for summary judgment was decided. *Id.* at ¶ 4. Then, after the motion for summary judgment was decided on January 16, 2020, he told Dr. Singh that the prior lawyers before his time that were at fault for not disclosing experts and there was nothing he could have ever done. *Id.* at ¶ 5.

10. Prior to the mediation and up to point where it started in late May, the Plaintiff and Gilbert extensively discussed the earnings of an ophthalmologist and in the exchange Gilbert did not tell the Plaintiff that these damages could not be sought. (Ex. H, text messages, authenticated at Ex. G, Supplemental Affidavit at ¶ 2). The exchange started on April 1, 2019 when Gilbert texted Singh asking "*how would you calculate your monetary loss? Are you making more now than you would've been?*" Singh responded stating: "*definitely not even close. I make base 150k now before tax. Attending general ophthalmology salary (ignoring that I was planning to subspecialize) is 348K per quick search and photo here.*" (Ex. H, text messages, authenticated at Ex. G, Supplemental Affidavit). Further research at this time showed the was much higher, especially when including bonus and salary for a vitreoretinal surgeon (fellowship trained ophthalmologist in retina). *Id.*

4

11. At mediation, Plaintiff individually raised the issue of his lost salary claim (not front pay) at mediation, even hiring an expert himself during the mediation. Dr. Singh, upon hearing from the mediator that Dr. Singh's financial model would be more convincing if constructed by an expert economist, without the help of Gilbert, found and hired an expert during the mediation with the help of a referral from prior attorney Jennifer Morton, who in-fact had *already* discussed Dr. Singh's case with the expert witness earlier when she was hired to help Dr. Singh reverse the recommended dismissal (long before the November 6, 2018 Revised Scheduling Order specifying January 3, 2019 deadline for expert witnesses) by helping Dr. Singh file a series of documents (Doc. Nos. 38-40), which had resulted in the Chief Judge's Order of July 31, 2018 (Doc. No. 42). (Ex. B, Affidavit at ¶ 6 and Ex. G, Supplemental Affidavit at ¶ 4).

12. After the mediation, Plaintiff was told by Gilbert that it was too late for experts because prior counsel had let the deadline lapse. *Id.* at ¶ 7. When Plaintiff asked attorney Gilbert if he might be incorrect about that assertion after personally reviewing the Court docket, Gilbert stated "*Looks like you are right per Order 56. We COULD have retained an expert. I thought it had already expired with the other lawyers.*" (Ex. B, Affidavit at ¶ 7 and Ex. D, excerpt of June 8, 2020 email, authenticated in Exhibit G, Singh's Supplemental Affidavit at ¶ 1). Six days after this email Gilbert sent his termination letter. (Ex. A). Within two weeks thereafter, Plaintiff filed his *pro se* "Motion to Allow Counsel to Withdraw, Obtain Missing Case Files, and Allow This Motion to be Filed Under Seal." (Doc. No. 110).

13. The undersigned was retained on July 7, 2020, and moved to be admitted *pro hac vice* in this case on July 10, 2020, and was admitted on August 4, 2020. Seeing

5

the deficiencies, the undersigned worked with Plaintiff and his experts to immediately secure the necessary reports. On July 31, 2020, the undersigned served supplemental interrogatory answers which properly disclosed treating physicians, and disclosed three expert reports for witnesses whose opinions required a report. (Ex. E, Supplemental Answers). On August 11, 2020, the undersigned served additional supplemental answers that identified witnesses who would need to be called to authenticate records and who might be needed to perfect impeachment. (Ex. F, Second Supplemental Answers).

14. Therefore, as of August 12, 2020, the Plaintiff, completed steps to *promptly* repair the deficiencies in his case that the Plaintiff individually did not even know existed until a) he learned that he could not have experts after the mediation, and b) the undersigned informed him that other deficiencies existed in the case preparation. Any further extension would solely be to accommodate the Defendants' desire to depose Plaintiff's experts and disclose their own, should they desire.

## ARGUMENT

15. The Court has ruled that no reopening of discovery or any other expired case management deadlines will be made unless the request is supported by demonstrable extraordinary circumstances. (Doc. No. 127 at fn. 3).

16. There are extraordinary circumstances here. In *Holland v. Florida*, 560 U.S. 631, 651, 130 S. Ct. 2549, 2564 (2010), the Supreme Court, in construing what "extraordinary circumstances" were in relation to a petitioner's claim that an untimely filing should be allowed, noted that the rule was that a "'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland*,

Case 3:17-cv-00400 Document 135 Filed 08/19/2020 Page 6 of 14 PageID #: 1360

560 U.S. at 649, 130 S. Ct. at 2562. The Court held that a garden variety excusable neglect claim, for instance missing a deadline, does not rise to extraordinary circumstances, but that it can if the facts also involve misrepresentations by the petitioner's counsel to the petitioner. *Holland*, 560 U.S. at 651, 130 S. Ct. at 2564.

17. The same holding was suggested in *Nassiri v. Mackie*, --- F.3d ---, 19-1025, 2020 WL 4282159 (6th Cir. July 27, 2020), decided after *Maples v. Thomas*, 565 U.S. 266, 132 S.Ct. 912 (2012). *Nassiri* noted that several Circuits have rejected a reading of *Maples* that requires a showing that abandonment by counsel must be shown in order to establish extraordinary circumstances by holding that other attorney conduct can constitute an extraordinary circumstance. *Nassiri*, 2020 WL 4282159 at *4.

18. Here, prior counsel represented that he *would* disclose experts, then represented that he *could not* due to counsel before him missing the deadlines, then, when confronted with a timeline, admitted that he *could* have. All throughout it was very clear that the Plaintiff individually, wanted and expected experts to be properly disclosed. All throughout it was very clear that Mr. Gilbert knew what the deadline was, that he failed to comply with it, and that he misrepresented the issue to Plaintiff.

19. An attorney misrepresenting or misstating the filing deadlines to a client who inquires about them may rise to "extraordinary circumstances." *Nassiri v. Mackie*, --- F.3d ---, 19-1025, 2020 WL 4282159 (6th Cir. July 27, 2020). Further, here, unlike in *Patterson v. Lafler*, 455 Fed. Appx. 606 (6th Cir. 2012), the Plaintiff did ask his counsel to properly disclose experts through the time between November 2018 and May 2020, and in fact, even hired one on his own at his own expense.

7

20. Between the time the answers to interrogatories were served and the time that the deadline for disclosing experts ran was only a few months and the representations of counsel that the issue would be addressed "later" served to lull Plaintiff into reliance on his counsel at a time when development of expert testimony should have been the first order of the day.

21. After the expert witness deadline ran, but before the motion for summary judgment was decided, a period of one year, the representations of counsel that the issue would be addressed after the motion was decided were simply false unless he believed that he could move, and planned to bring a motion, to reset the schedule. There is no known evidence to support either proposition.

22. After the motion for summary judgment was decided and up until the start of mediation first in April and then rescheduled late May, a period of five months, counsel continued to mislead Dr. Singh as it relates to expert testimony at trial. After mediation, even when Dr. Singh asked Gilbert which rule did prior counsel not comply with, Gilbert responded that he could not name the rule but still represented he was interested in the earnings of an ophthalmologist. Gilbert's representations with Dr. Singh were false and misleading.

23. After the mediation when counsel told Dr. Singh that prior counsel had missed the deadline and experts could not be disclosed *because* of missed deadlines, again, Gilbert's representation were false because it was Gilbert that had blown the deadline.

24. Gilbert only told Dr. Singh that he had failed to disclose experts in accordance with a schedule that he himself had set after Dr. Singh researched the docket and, having learned about Rule 26 from the expert witness (Ex. B at ¶ 6), asked Gilbert

8

about the order entered on November 6, 2018. (Doc. No. 56 and see Ex. B, Affidavit, at ¶ Affidavit, at ¶ 7). This is the first time Gilbert admitted to Dr. Singh he had missed the expert deadline.

25. This pattern of conduct by an attorney charged with the representation of his client, L.R. 16.01(a), concealed from Plaintiff the effect of counsel's decisions and conduct. That is an extraordinary circumstance and not a garden variety claim of excusable neglect. Plaintiff is not claiming that he, or his counsel, forgot about the deadline. Plaintiff has shown that his attorney misled him.

26. Other sources of law also support the relief sought here. F.R.Civ.P. 16(b)(4) provides that a case schedule may be modified only for good cause and with the judge's consent. F.R.Civ.P. 6(b)(1)(B)provides that good cause can include excusable neglect.

> Under Rule 6(b)(1)(B), we may extend a deadline after its expiration "for good cause ... if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). As the Supreme Court and Sixth Circuit have explained, we balance five factors to determine whether excusable neglect exists: "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith."

*Gardner v. Dye*, 3:15 C 00669, 2016 WL 9244200, at *4 (M.D. Tenn. July 1, 2016) (citations and quotations omitted).

27. Further, the analysis is essentially an equitable analysis:

> In *Pioneer* [*Inv. Services Co. v. Brunswick Associates Ltd. P'ship*, 507 U.S. 380, 113 S. Ct. 1489 (1993)], the Supreme Court observed that although mere inadvertence does not usually constitute "excusable neglect" under Rule 6(b), the term is a "somewhat 'elastic concept' and is not limited strictly to omissions caused by circumstances beyond the control of the movant." *Id.* at 392, 113 S.Ct. 1489 (footnotes omitted). In applying this elastic concept, the court went on to emphasize that the determination whether neglect is excusable "is at bottom an equitable one, taking account of all relevant circumstances surrounding the moving party's omission." *Id.* at 395, 113 S.Ct. 1489. In other words, depending on the equities, mere inadvertence may warrant an enlargement of time under Rule 6(b).

9

*Morgan v. Gandalf, Ltd.*, 165 Fed. Appx. 425, 429 (6th Cir. 2006)(some citations omitted).

28. Here, the danger of prejudice to the non-moving party is controllable. There is no trial date. Plaintiff individually and new counsel have worked to make and has made the disclosures, and are not seeking more time for Plaintiff. The Plaintiff is asking for a re-opening and extension of expert discovery solely to allow Defendants time to respond.

29. While there obviously delay between January 3, 2018 and July 31, 2020, this was not due to the Plaintiff individually. If the motion is granted, the delay going forward, if any, is only to accommodate the Defendants ability to respond to Plaintiff's experts.

30. The delay between January 3, 2018 and July 31, 2020 was not in the control of Dr. Singh. As stated above, he was misled by his counsel with whom he extensively discussed experts first being told that the issue would be addressed later, then being told that prior counsel failed to disclose and it was too late. An individual Plaintiff represented by counsel relies on counsel to understand and apply the Rules of Civil Procedure and the Court's Local Rules in the prosecution or defense of the case and relies on counsel to comply with scheduling orders. It is not equitable to require an individual Plaintiff to hire a lawyer to supervise his trial counsel's discovery practice, and that is about the only way Dr. Singh could have discovered the issue. That this is the case is shown by ¶ 5 of Exhibit B which documents that Mr. Gilbert was evasive about identifying the applicable rule to Mr. Singh.

31. Plaintiff has acted in good faith. He is not a lawyer and relied on his counsel. He personally undertook to hire an expert when it was clear that there was none and that he needed one, and Plaintiff has acted diligently since being told by Mr. Gilbert that Mr. Gilbert had let the expert disclosure deadline pass. (Ex. B, Affidavit, at ¶¶ 7 and 11).

10

32. Lastly, Rule 37(c)(1) provides that if a party fails to disclose information or a witness in accordance with Rule 26(a) or (e) that the information or witness cannot be used unless the failure was substantially justified or harmless.

33. Here the failure is substantially justified because the reason for the late disclosure is that counsel misled his client.

34. Here, *counsel* did not even disclose treating physicians in a manner to accords with the rule. *Adams v. Farbota*, 306 F.R.D 563, 571 (M.D. Tenn. 2015) and *Eheridge v. E.I. DuPont De Nemours and Co., Inc.*, 2015 WL 12516227, *5 (W.D. Tenn. Oct. 14, 2015), among other cases, clearly require that even as to treating physicians who will not testify to diagnoses, causation or other issues outside their care and treatment that the subject matter and their opinions must be disclosed in accordance with Rule 26(a)(2)(C). This is not knowledge attributable to the Plaintiff personally. While prior counsel's neglect may be inexcusable, the Plaintiff individually should not be penalized for the conduct of an inept attorney (Doc. No. 59 at p. 9 *citing Patterson v. Township of Grand Blanc*, 760 F.2d 686 (6th Cir. 1985)).

35. Similarly, here *counsel* participated in setting the applicable expert disclosure deadline and told Plaintiff first that experts would be taken care of "later" and then told him that prior counsel had blown the deadline. The Plaintiff raised the issue with his counsel early, and when at mediation the Plaintiff learned that he had no experts he individually retained one immediately.

36. The Sixth Circuit uses a five factor test to determine whether a party's failure to comply with Rule 26(a) is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the

11

evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

*Howe v. City of Akron*, 801 F.3d 718, 748 (6th Cir. 2015).

37. Here, even if trial is set for December 2020, there is time to allow Defendants to depose Plaintiff's experts and disclose their own if they need them. The Defendant cannot claim complete surprise as to most of the treating physicians and Dr. Wandel: their names were disclosed in discovery as persons with relevant information. Dr. Cusano is a current treating physician and to the extent that there is surprise allowing her deposition and allowing the Defendants to disclose an expert, if they wish, would cure the surprise.

38. As to the damages expert, allowing Dr. Charlie Baum's deposition and allowing Defendant to disclose an expert, if they wish, would also cure the surprise. The evidence is clearly important: Plaintiff needs to be able to explain his disability to the jury with his treating physician and needs to be able to present evidence that, but for the tort, he would have successfully completed his ophthalmology residency and training, and that as a result he has lost the opportunity to earn a vitreoretinal surgeon's (type of fellowship trained ophthalmologist) compensation.

39. Allowing the late disclosure would not disrupt the trial as the trial has not started, and currently remains unscheduled but could be scheduled before year-end even with the granting of this Motion.

40. The evidence is clearly important. Dr. Singh also lost his opportunity to enroll in New York Medical College ("NYMC") because of Defendants' Summative Evaluation. He lost the opportunity to become a Board Certified Fellowship Trained Ophthalmologist had he been able to complete the NYMC ophthalmology program. The

12

treating physicians are clearly important to **(a)** help establish his disability and **(b)** explain why Dr. Singh could have performed the essential duties of his job with an accommodation.

41. The explanation for the nondisclosure is that counsel, not Plaintiff individually, was less than diligent and misrepresented his involvement to Plaintiff. As to Charles Baum, Plaintiff expected all the way through the time that mediation was conducted that the issue of his lost income as an ophthalmologist would be dealt with by the disclosure of an expert. The fact that at deposition he only mentioned "lost wages" as a resident as an item of damage is not proof that Plaintiff knew that his counsel would not disclose an expert on his lost earnings as an ophthalmologist. Indeed, the very statement that VUMC cites in the Joint Statement of Facts concludes "I'm not a lawyer and I don't know how those things are calculated, so I have to resort to my current counsel for that." A primary basis for this motion is that Plaintiff did, in fact, "resort" to his current counsel for his economic damages. As to the treating physicians, there is no sound basis upon with to charge Plaintiff individually with the knowledge that F.R.Civ.P. 26(a)(2)(C) requires reports from non-retained witnesses if they do more than testify about their care are treatment, or interactions, with Plaintiff.

42. Further, the issue of the earnings of board certified fellowship trained ophthalmologist was raised in the case. At the deposition of Dr. Sternberg, testimony was elicited to the effect that a first year board certified fellowship trained ophthalmologist earns, in the Nashville market, between $150,000 and $250,000 a year. (Ex. I, excerpt of the deposition of Dr. Sternberg, at pp. 45-46).

43. Lastly, though not relevant to this motion yet, the Defendant claims in the Joint Statement that Plaintiff has caused all the delay, VUMC has moved to continue the

13

trial in the past. On January 29, 2020 it moved to continue the trial stating, *inter alia*, that "Defendants now seek to move the trial date" because "several of the key witnesses have professional and/or family commitments during the scheduled trial dates. For example, one witness will be on leave for the birth of a child/children and another witness was scheduled to be out of the country on a previously arranged teaching engagement. Additionally, the current trial date falls within the "Match Day" period for the VUMC Residency Program ("Match Day" is March 20, 2020) and would require one (or more) of the key witnesses in this matter to be absent from the VUMC campus during this important time period." (Doc. No. 102 at ¶ 3).

44. Plaintiff respectfully suggests that extraordinary circumstances do exist to allow the late disclosure and to reopen expert discovery solely to allow Defendants to respond, and suggests that such an order would be in the interests of justice given the reasons for the delay.

WHEREFORE, Plaintiff, by counsel, respectfully requests that this Court enter an order permitting his late disclosure of experts, and enter an order allowing the Defendants time to depose the experts and disclose their own, if they wish. Plaintiff further prays for any other relief that this Court deems just.

    Respectfully submitted,

    /s/ Edward R. Moor
    Moor Law Office, P.C.
    One N. LaSalle Street, Suite 600
    Chicago, Illinois 60602
    312-726-6207
    erm@moorlaw.net
    Illinois Attorney #: 6205169

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2020, I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all registered users.

/s/ Edward R. Moor