# EXHIBIT 1-C

## Ex. C to Plaintiff's Motion to Extend filed 8-19-20

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| GOBIND SINGH, M.D., PH.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 3:17-cv-00400 |
| v. | ) | |
| | ) | Chief Judge Waverly D. Crenshaw |
| VANDERBILT UNIVERSITY | ) | Magistrate Judge Barbara D. Holmes |
| MEDICAL CENTER and | ) | |
| VANDERBILT UNIVERSITY, | ) | JURY DEMANDED |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S RESPONSES TO DEFENDANTS' FIRST SET OF**
**INTERROGATORIES & REQUESTS FOR PRODUCTION OF DOCUMENTS**

Plaintiff Dr. Gobind Singh ("Plaintiff" or "Dr. Singh") serves these responses to Defendants' First Set of Interrogatories & Requests for Production of Documents to Defendants Vanderbilt University Medical Center ("VUMC") and Vanderbilt University (collectively, "Defendants"). Plaintiff asserts that these answers are complete and accurate to the best of his knowledge and belief at the time of service, but reserves the right to amend and supplement these Responses as necessary in the future. Plaintiff responds as follows:

**<u>RESPONSES TO INTERROGATORIES</u>**

1. Identify each and every individual whom you believe to possess knowledge of any discoverable facts relating to the subject matter of this litigation. For each such individual, provide his or her address and telephone number and describe what knowledge you believe such individual possesses.

**<u>RESPONSE:</u> Plaintiff objects to this Interrogatory to the extent that it is overly broad and unduly burdensome and that Plaintiff may not know, and in fact most likely**

does not know, all persons who have knowledge or information nor the extent of the knowledge such individuals possess. Moreover, this request is premature as litigation and discovery are ongoing. Subject to these objections and without waiving same, Plaintiff would state that, upon information and belief, the following individuals may have information regarding the facts alleged in the Complaint:

a. Any individual named by any party or witness during written discovery and depositions or named in any pleadings or documents, including in either party's Initial Disclosures or responses to discovery.

b. The following are employees, agents, former employees, or former agents of Defendant. These persons may have knowledge of the circumstances surrounding Plaintiff's employment and termination and the discrimination suffered by Plaintiff, as well as Defendants' employment policies and practices. Their contact information is or should be contained in Defendants' personnel files:

    (1)   Laura Wayman (Plaintiff's program director)

    (2)   Paul Sternberg (Plaintiff's program chair)

    (3)   Louise Mawn (Previous Ophthalmology Program Director)

    (4)   Christopher Estopinal (Plaintiff's chief resident)

    (5)   Ian Thompson (Resident)

    (6)   Jeannie Ling (Resident)

    (7)   Donald W. Brady (Dean for Graduate Medical Education
            Signed Plaintiff's promotion to PGY-3 letter (to be disclosed)[1]

    (8)   Nora Mary Gilgallon-Keele (Assistant to Dr. Wayman)
            Approved Plaintiff's FMLA

---

[1]    The notation "(to be disclosed)" signifies that Plaintiff possesses responsive documentation, which will be served on Defendant upon the entry of the previously agreed upon Confidentiality Stipulation & Proposed Protective Order. *See* Fed. R. Civ. P. 34(b)(2)(B).

2

    (9)    **Chad Buck (Vanderbilt EAP)**

    (10)  **Scott J. Stephan (Plaintiff's treating physician)**

    (11)  **Howard A. Baum (Plaintiff's treating physician)**

    (12)  **Cristina Estrada (Division Chief, Pediatric Emergency Medicine)**
            **Emailed Plaintiff 6/18/15 praising his work (to be disclosed)**

    (13)  **Luronda Couch Green (Ophthalmology Dept. Tech at VA, affiliated with Defendant)**

    (14)  **Anthony Charles Gregory II (Plaintiff's senior resident at VUMC)**
            **Emory Eye Center**
            **1365B Clifton Road, NE, Atlanta, GA 30322**
            **Wrote letter of recommendation for Plaintiff (to be disclosed)**

**c.**  **The following persons may have knowledge relevant to this action as listed.**

    (1)  **Thaddeus Wandel, Sansar Sharma, Gerald Laidman**
          **New York Medical College**
          **40 Sunshine Cottage Road, Valhalla, NY 10595**

    (2)  **Susan Henley, M.D., F.A.C.E.p.**
          **Colorado Springs Endocrine Clinic, P.C.**
          **325 E. Fontanero Street, Colorado Springs, CO 80907**
          **Treated Plaintiff's hypothyroidism, completed accommodation paperwork (to be disclosed)**

    (3)  **Dominick Maggio, M.D.**
          **Tuba City Regional Health Care Corporation**
          **167 North Main Street, P.O. Box 600, Tuba City, Arizona 86045**
          **Former chief resident, wrote letter of recommendation for Plaintiff (to be disclosed)**

    (4)  **Erik Anderson, M.D.**
          **Dept. of Emergency Medicine, Stanford University**
          **Former supervising resident, wrote letter of recommendation for Plaintiff (to be disclosed)**

    (5)  **Valerie Ng, Ph.D., M.D.**
          **Highland Hospital**
          **1411 East 31st Street, Oakland, California 94602**
          **Former colleague, wrote letter of recommendation for Plaintiff (to be disclosed)**

3

2.      Describe in detail each and every communication, written or verbal, that you have had with any current or former employee of Defendants that you contend supports any of the claims you have raised in this litigation, including the date of the communication, the name(s) of the individual(s) involved, the name(s) of any witness(es), and the substance of the communication.

**RESPONSE: Plaintiff objects that this Request is overly broad, unduly burdensome, and disproportionate to the needs of the case. "Any of the claims you have raised in this litigation" covers nearly every aspect of Plaintiff's employment with Defendants and many other irrelevant topics. Plaintiff cannot recall every conversation he had during his employment, particularly not with the level of particularity sought.**

**Subject to these objections and without waiving the same, Plaintiff answers as follows:**

a. **October 3, 2014: Email from Laura L. Wayman regarding duty hours violations reported by Plaintiff (to be disclosed).**

b. **November 26, 2014: Email from Nora Mary-Gilgallon-Keele approving Plaintiff's leave for his surgery on December 3, 2014 (to be disclosed).**

c. **December 1, 2014: In-person meeting of Plaintiff, Wayman, and Paul Sternberg regarding Plaintiff's nasal vestibular stenosis diagnosis, surgery, and request for accommodations of fewer on-call shifts and breaks between shifts that exceeded 24 hours. Plaintiff's requests were denied, with Wayman and Sternberg stating, "If we were able to do it, so should you."**

d. **December 2, 2014: Email from Nora Mary Gilgallon-Keele wishing Plaintiff good luck for his surgery (to be disclosed).**

e. **December 4, 2014: Email from Wayman regarding Plaintiff's surgery (to be disclosed).**

f. **December 5, 2014: Email from Dr. Amy Chomsky regarding a wrong implant (to be disclosed).**

g. **December 9, 2014 (approximately): Plaintiff verbally informed Wayman at VA that he was still experiencing symptoms of vestibular stenosis (low energy and trouble concentrating) after surgery and his surgeons told him it could be a few months before he saw symptom improvement.**

h. **December 16, 2014: Email from Wayman requiring Plaintiff to attend VUMC's EAP program (to be disclosed).**

i. **January 27, 2015: In-person meeting between Plaintiff and Chad Buck regarding referral to EAP program. Plaintiff informed EAP of his diagnosis, surgery, symptoms, worsening of symptoms after long (30+ hour) shifts, and request for accommodation. Plaintiff asked EAP to help him with his request for fewer shifts and rest breaks.**

j. **January 27-28, 2015: Emails between Plaintiff and Buck regarding reason for referral to EAP program (to be disclosed).**

k. **March 31, 2015: Emails involving Wayman, Buck, and Plaintiff regarding EAP appointment times (to be disclosed).**

l. **April 2, 2015: Emails between Buck and Wayman regarding Plaintiff's EAP visits and Plaintiff's request of the reasonable accommodation to wear extra layers of clothing.**

m. **April 6, 2015: Written letter from Donald W. Brady promoting Plaintiff to PGY-3 (to be disclosed).**

n. **Late April 2015: In-person between Plaintiff and Wayman regarding Plaintiff's hypothyroidism diagnosis. Plaintiff requested the reasonable accommodation of wearing extra layers of clothing under his surgical attire to combat cold and shivering, which was denied.**

o. **August 2015: Plaintiff filed written complaint of discrimination with Vanderbilt EAD.**

p. **September 2, 2015: Written letter from Howard B.A. Baum regarding Plaintiff's hypothyroidism (to be disclosed).**

q. **September 3, 2015: Written letter from Scott J. Stephan regarding Plaintiff's vestibular stenosis (to be disclosed).**

r. **February 4, 2016: Written letter from Vanderbilt EAD stating no findings of discrimination or retaliation. This document is already in Defendants' possession and was filed with the Court as Doc. No. 27-3.**

s. **February 25, 2016: Written letter from Donald W. Brady regarding Plaintiff's dismissal. This document is already in Defendants' possession and was filed with the Court as Doc. No. 27-1.**

t. **June 13, 2016: Written letter of recommendation from Anthony Charles Gregory recommending Plaintiff for NYMC residency (to be disclosed).**

5

u. **June 23, 2016: Email from Brady regarding Plaintiff's request for accommodation (to be disclosed)**

v. **August 17, 2016: Written letter from Dr. Gerald Laidman, Dr. Thaddeus Wandel, and Dr. Sansar Sharma to NYMC stating that VUMC's explanation of Plaintiff's performance offered no context and that after speaking to Plaintiff, they recommend him for residency (to be disclosed).**

w. **2016 (undated): Letter from Donald W. Brady to New York Medical College regarding Plaintiff's time at Vanderbilt (to be disclosed).**

x. **Undated: Letter from patient regarding care received from Plaintiff (to be disclosed).**

y. **Various dates: Text messages among residents regarding patient care. Also discusses ACGME Physician Survey regarding number of hours worked (to be disclosed).**

**Other communications not listed in this Interrogatory may be included in the documentation disclosed by Plaintiff.** *See* **Fed. R. Civ. P. 33(d).**

3.     Identify any employee, agent or representative of Defendants, whether current or former, with whom you have communicated (either verbally or in writing) about any matter that is the subject of this lawsuit, specifically including the nature of your asserted disability and request for accommodations. For each individual identified, please provide his or her title (or former title), the dates of the discussion, the name(s) of any witness(es), and the substance of the discussion.

**RESPONSE: Please see Plaintiff's Response to Interrogatory No. 2.**

4.     Identify every physician, counselor, therapist or other healthcare professional from whom you have sought treatment within the last ten (10) years, specifically including those who have treated you for the conditions that you contend give rise to your asserted disability. For each such healthcare provider, please state the date(s) treatment was rendered, the reason for treatment, and the healthcare provider's area of

practice. If any such treatment was allegedly related to the claims in the Complaint, that fact should be specified.

**RESPONSE: Plaintiff objects this is overly broad, unduly burdensome, not proportional to the needs of the case, and an unjustified invasion of Plaintiff's privacy, as it requests private health information beyond Plaintiff's disability that is irrelevant to this action and has no likely benefit to the case. Subject to and without waiving this objection, Plaintiff responds as follows:**

    a. **Scott J. Stephan, M.D.**
       **Vanderbilt Bill Wilkerson Center, Dept. of Otolaryngology**
       **7209 MCE South Tower, 1215 21st Ave. S., Nashville, TN 37232**
       **(615) 322-6180**
       **ENT surgeon (2014)**

    b. **Howard B.A. Baum, M.D.**
       **Vanderbilt Eskind Diabetes Clinic**
       **Medical Center East, Suite 8210, 1215 21st Ave. S., Nashville, TN 37232**
       **(615) 343-8332**
       **Endocrinologist (2015)**

    c. **Chad A. Buck, Ph.D., HSP**
       **Work/Life Connections – EAP**
       **1211 21st Ave. S., Suite 018 MAB, Nashville, TN 37212**
       **(615) 936-1327**
       **Psychologist (2014-15)**

    d. **Susan Henley, M.D., F.A.C.E.p.**
       **Colorado Springs Endocrine Clinic, P.C.**
       **325 E. Fontanero Street, Colorado Springs, CO 80907**
       **(719) 636-3829**
       **Endocrinologist (2016)**

    e. **Gary Steven Wand, M.D.**
       **The Johns Hopkins University**
       **(410) 464-6641**
       **Endocrinologist (2018)**

    f. **Silvia Cunto-Amesty, M.D.**
       **New York Presbyterian Medical Center**
       **(212) 342-3232**

**Primary care (2018)**

5.      Have you received any treatment or counseling for any mental, psychiatric, psychological or emotional issues within the past ten years?  If yes, identify by name, address and telephone number every physician, counselor, therapist, clergy person, or other healthcare professional from whom you have received such treatment, state the dates on which you received such treatment, and state whether such treatment was specifically related to your claims in this action.

**RESPONSE: Plaintiff objects this is overly broad, unduly burdensome, not proportional to the needs of the case, and an unjustified invasion of Plaintiff's privacy, as it requests private health information beyond Plaintiff's disability that is irrelevant to this action and has no likely benefit to the case.  Subject to and without waiving this objection, Plaintiff responds that he saw a psychologist through Vanderbilt's EAP program while employed with Defendants. Plaintiff will produce with his documentation a Release allowing VUMC to obtain his EAP records.**

6.      Identify any medication you have taken for any mental, emotional, psychiatric, and/or psychological conditions during the preceding ten years. For any such medication, specify the dates during which you took such medication.

**RESPONSE: Plaintiff objects this is overly broad, unduly burdensome, not proportional to the needs of the case, and an unjustified invasion of Plaintiff's privacy, as it requests private health information beyond Plaintiff's disability that is irrelevant to this action and has no likely benefit to the case.  Subject to and without waiving this objection, Plaintiff responds as follows that, while employed by Defendants, he was prescribed levothyroxine for his thyroid condition.**

7.     Set forth the details of your work history prior to your residency, including the name and address of each employer, the dates of employment, positions held, reasons for leaving, and name of your last immediate supervisor with each such employer.

**RESPONSE:  Plaintiff objects that this request is not reasonably limited in time and thus encompasses information that is irrelevant to this action and has no likely benefit to this case. Subject to and without waiving this objection, Plaintiff responds as follows:**

**a.  Mount Sinai Hospital**
**MSTP Graduate Student (2004-2013)**
**Dr. Diomedes Logothetis, Previous Dean and Director of Medical Scientist Training Program (MSTP)**

**b.  Highland Hospital (2013-2014)**
**1411 East 31st Street, Oakland, CA 94502**
**(510) 437-4800**
**PGY-1 Resident Physician, Internal Medicine**
**Dr. Steve Sackrin, Program Director**

8.     Set forth the details of your work history after your residency, including the name and address of each employer, positions applied for and the dates, the dates of employment, positions held, reasons for leaving any employment, all amounts earned at subsequent positions and name of your last immediate supervisor with each such employer.

**RESPONSE: Plaintiff responds as follows:**

**a.  New York Medical College (2016)**
**40 Sunshine Cottage Road, Valhalla, NY 10595**
**(914) 594-4000**
**Offered position as resident, retracted week of start date**

**b.  LifeSci Advisors (November 2016-March 2017)**
**250 West 55th Street, Suite 3401, New York, NY 10019**
**(646) 889-1200**
**Analyst**

**Jerry Isaacson, Supervisor**

    c. **BMO (April 2017-Present)**
       **430 Park Avenue, New York, NY 10022**
       **Associate**

9.      Describe each and every application you have made in the last ten (10) years for workers compensation benefits, unemployment benefits, short term disability benefits, long term disability benefits, social security or other benefits, including the nature of the benefit, the entity to which you applied for that benefit, the date(s) your claim was filed, whether your application for the benefits was granted, and if so, the date(s) the benefit was received and the payment amount, the total amount received, the date of expiration or eligibility, the current status of your claim.

**RESPONSE: Unemployment benefits (2016). Plaintiff cannot recall the details of his benefits, but this information is or should be equally available to Defendants, who were the employers in question.**

10.     Set forth in detail every category of damages you are claiming in this lawsuit, the amount sought for each category of damages, the basis for your claim that you are entitled to each such amount, and the methodology or formula you used to calculate your entitlement to each such amount.

**RESPONSE: Plaintiff objects that this Interrogatory seeks a purely legal conclusion and impermissibly seeks to invade the work product/mental impressions of counsel. Subject to and without waiving these objections, Plaintiff states that he cannot answer this Interrogatory with the level of particularity sought. Because his damages are largely based on lost wages, the dollar amount of these damages changes with every passing hour; thus, it**

10

is impossible for him state an accurate dollar value at any one time. Damages such as attorneys' fees, expenses, and interest are also constantly evolving. Moreover, Plaintiff cannot calculate a dollar amount for front pay/reinstatement, compensatory, or punitive damages, which will be determined by the Court or jury.

Thus, at this time, Plaintiff can only definitively say that she seeks all categories of damages available under the ADA, Title VII, and Tennessee common law:

a. <u>Back Pay & Lost Wages</u>. Plaintiff's back pay will be measured from the date of termination (February 25, 2016) through either the date of trial (no earlier than August 15, 2019) or the date Plaintiff is reinstated to his employment, whichever comes first. Plaintiff's back pay will be reduced by any interim earnings. Plaintiff also requests lost wages resulting from Defendants tortious interference with contract and defamation.

b. <u>Front Pay or Reinstatement</u>. Plaintiff seeks reinstatement to the same or similar position. Alternatively, Plaintiff seeks front pay for a reasonable period from the date of trial into the future. The length of time, if any, will be determined by the Court. The pay rate will be the rate at which Plaintiff could have expected to be paid had Plaintiff been employed by Defendant at the date of trial.

c. <u>Compensatory & Punitive Damages</u>. Plaintiff seeks compensatory damages for the emotional harm, suffering, humiliation, embarrassment, and loss of reputation suffered as a result of the termination, tortious interference with contract, and defamation. Plaintiff seeks punitive damages to deter Defendants from such conduct in the future. The amount of compensatory and punitive damages is unliquidated, and the judgment of the jury will be determinative.

d. <u>Lost Benefits</u>. Plaintiff seeks compensation for all lost benefits due to Defendant's actions.

e. <u>Attorneys' Fees</u>. Plaintiff seeks attorneys' fees at a rate to be approved by the Court.

f. <u>Costs</u>. Plaintiff seeks payment of costs.

g. <u>Interest</u>. Plaintiff will seek interest on recovery at the appropriate rate.

h. <u>Legal & Equitable Relief</u>. Plaintiff also seeks such other legal and equitable relief to which he may be entitled.

11. Identify by name, address, and telephone number each person who you

expect to call as an expert witness at trial, state the subject matter on which the expert is

expected to testify, state the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion, and identify every document provided to and/or received from such expert, including any correspondence exchanged by and between your attorney(s) and such expert.

**RESPONSE: Plaintiff has not retained an expert at this time. In the event Plaintiff does retain an expert in the future, he will disclose it according to the deadlines and procedures set out in the Revised Scheduling Order (Doc. No. 53).**

12.     State whether you have ever been a party to any other legal proceeding, including court, administrative or other proceedings, and for each such proceeding provide the caption, court or agency, case number and substance of the claims and/or defenses asserted by you.

**RESPONSE: None.**

13.     Have you, at any time within the previous five years, created, maintained, updated, or joined any personal website, online journal, social networking website, blog, weblog, photoblog, audioblog, videoblog or similar site, including but not limited to Face Book, Twitter or My Space? For each such site, blog or similar online service, provide the screenname or username used, the url or web address, and all other identifiable information needed to locate and view the content of each such site, blog or page.

**RESPONSE: Plaintiff objects on the grounds that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is not relevant to any party's claims or defenses and of no importance in resolving the issues of the case. Plaintiff no longer has any active social media pages. Moreover, even when he**

did have active social media accounts, his privacy settings allowed only his friends or connections to view information posted on social media sites. Therefore, requiring Plaintiff to permit Defendant unfettered access to those accounts constitutes an invasion of his privacy in that it seeks greater access than is currently or was ever publicly available.

Additionally, Plaintiff objects because Defendant seeks access to Plaintiff's social media accounts without any limitations with regard to subject matter and/or time period relevant to Plaintiff's claims. The simple fact that the Plaintiff may have had social communications is not probative of the issues in the case. Rather, "it must be the substance of the communication that determines relevance." *See, e.g., EEOC vs. Simply Storage Management, LLC*, 270 F.R.D. 430 (S.D. Ind., 2010); *Rozell vs. Ross-Holst*, 2006 WL, 163143 (S.D.N.Y. Jan. 20, 2006). ("To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may reduced to writing or, indeed, the deposition of everyone she may have talked to.").

14. With respect to the allegations set forth in Paragraph 11 of the Complaint, please identify the "supervising physicians" referenced, the "medical issues" you contend you notified them of and the approximate dates of the referenced communication/notification.

RESPONSE: As stated in Paragraph 11, the supervising physicians were Dr. Laura Wayman and Dr. Paul Sternberg. The medical issue was nasal vestibular stenosis and attendant issues, as described in Dr. Stephan's letter. *See* Plaintiff's Response to Interrogatory No. 2.

15.     With respect to the allegations set forth in Paragraph 15 of the Complaint, please identify all residents who you contend underreported hours and who allegedly directed such underreporting.

**RESPONSE: Plaintiff objects that this Interrogatory requests information that is already in the possession of Defendant and/or equally or more available to Defendant, which is required by law to maintain time records. The records must include "hours worked each workday and total hours worked each workweek." 29 C.F.R. § 516.2(7).**

**Subject to and without waiving these objections, Plaintiff was told by Dr. Wayman and fellow residents that he and other residents were working more hours than allowed under applicable rules.  Plaintiff was told by his fellow residents that they were underreporting their hours worked.  Responsive documentation will be disclosed once the Agreed Protective Order is in place.**

16.     With respect to the allegations set forth in Paragraph 18 of the Complaint, please identify all instances where you believe that you were disciplined for suffering from the symptoms of any alleged medical condition.

**RESPONSE: Plaintiff alleges that all discipline against him, including corrective action, referral to the EAP program, suspensions, and his ultimate dismissal from the program, were due to retaliation and discrimination caused by his disability and request for accommodation.**

17.     With respect to the allegations set forth in Paragraph 21 of the Complaint, please identify all instances where you contend that errors attributed to you were the product

of the factors delineated in Paragraph 21 of the Complaint and all persons you contend have knowledge of the same.

**RESPONSEL** *See* **Plaintiff's Response to EEOC, which are or should be in Defendants' possession and control, as EEOC records are equally available to both parties. *See* Fed. R. Civ. P. 33(d). Plaintiff will disclose these documents once the Agreed Protective Order is in place.**

18. Please identify all persons referenced in Paragraph 22 of the Complaint whom you contend were similarly situated to you, but treated more favorably.

**RESPONSE: Plaintiff objects that he cannot know and in fact does not know how Defendants treated all similarly situated persons. This information is more available to Defendants, who should possess such records. Plaintiff reserves the right to rely on any information produced by Defendant. Subject to and without waiving these objections, Plaintiff responds that the incidents of which he has knowledge are as follows. Upon information and belief, in all these incidents, the error was corrected with additional training, rather than the drastic discipline imposed on Plaintiff:**

a. **August 2014: Dr. Ian Thompson's care of a male patient with preseptal cellulitis who developed life-threatening necrotizing fasciitis that resulted in vision loss and numerous surgeries.**

b. **July 2015: Dr. Thompson's care of a patient who was force ducted for extraocular movement who had a hyphema, a contraindicated procedure that should not have been performed and likely caused patient harm.**

c. **July 2015: Dr. Thompson's care of a female patient who experienced visual field deficits and headaches who was recommended for an invasive test because she had been misdiagnosed.**

d. **July 2015: Dr. Thompson overlooking of posterior tenting on his patient's posterior globe upon image review creating a danger to the patient and irreversible vision loss.**

e. **December 2014: Wrong implant by staff surgeon.**

f. **Dr. Thompson and Dr. Tomas Moreno missing an open-eye ball diagnosis in a patient, which requires emergent surgery to close. This was not recognized until later, which caused the patient to lose vision.**

g. **Dr. Moreno and Dr. Jeannie Ling involved a patient eventually diagnosed with bilateral necrotizing fasciitis, which initially they missed. Further, after the diagnosis, there was an accidental discontinuing of a vital medication, vancomycin, which caused serious life-threatening harm to the patient and required prolonged hospital stay and surgical intervention.**

h. **Dr. Matthew Hollar failed his OKAPS and did not incur any disciplinary action.**

Documentation of the above in Plaintiff's possession and control will be disclosed one the Agreed Protective Order is in place.

19.    Please identify the information that you contend was false, misleading and deceptive as alleged in Paragraph 28 of the Complaint and the persons/institutions to whom this information was allegedly communicated as referenced in the Complaint.

**RESPONSE:  The question of what information was communicated and to whom is best answered in documentary form, and communications from VUMC to NYMC (to be disclosed).  Plaintiff was not a party to and thus is unaware of the contents of any other verbal, telephone, or private written communications that may have taken place between VYMC and NYMC, but, upon information and belief, such communications did occur.  Defendants have knowledge and/or possession of these communications.**

**Plaintiff alleges that false, misleading, and/or deceptive information in the letter is as follows:**

a. **"He was placed on the Corrective Action step of Probation on May 26, 2015 for a continued pattern of concerns including poor clinical judgment, inadequate medical knowledge, poor clinical skills, and unprofessional behavior."**

16

b. "He was placed on the Correction Action step of Summary Suspension on June 15, 2015 with a decision on June 30, 2015 to extend his Probation status through December 31, 2015 and to not promote him to PGY-3 for the 2015-2016 academic year because of unprofessional behavior and continued concerns regarding his clinical skills and medical knowledge being below his expected level of training."

c. "Based upon a review of his year-end milestone evaluations from June 2015, Dr. Singh is on average at Level 1 in Patient Care, Medical Knowledge, Systems-Based Practice, Practice-Based Learning and Improvement, Professionalism, and Interpersonal and Communication Skills."

d. "He was between Level 1 and Level 2 in MK-2 'Demonstrates level-appropriate knowledge applied to patient management' and had not yet achieved Level 1 in in [sic] PC-6 'Non-Operating Room Surgery,' PC-7 'OR Surgery,' PBLI-3 'Participate in a quality improvement project,' PROF-2 'Responsiveness to patient needs that supersedes self-interest,' and ICS-3 'Work effectively as a member or leader of a health care team or other professional group.'"

e. "On July 28, 2015, he was again placed on the Corrective Action of Summary Suspension with a final decision on February 25, 2016 to move the Corrective Action of Immediate Dismissal. Dr. Singh did not return to the clinical setting in the interim between July 28, 2015 and February 25, 2016. He appealed the decision of Immediate Dismissal, but this decision was upheld after review through our appeal process."

## RESPONSES TO REQUESTS FOR PRODUCTION OF DOCUMENTS

1. All documents identified in Plaintiff's Responses to Defendant's First Set of Interrogatories to Plaintiff.

**RESPONSE: Responsive documents in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order. Plaintiff notes that he also referenced documents he believes to be in Defendants' possession or control. *E.g.*, Plaintiff's Response to Interrogatory No. 19. Plaintiff reserves the right to rely on any such documents in the possession of Defendants.**

2. All documents, writings, or things evidencing any communications or

correspondence between Plaintiff (including her attorneys) and any third party, other than legal counsel, relating to the allegations contained in the Complaint.

**RESPONSE: Plaintiff objects that this Request is a violation of the attorney-client privilege and/or attorney work product doctrine, as it explicitly requests communications by and including counsel. Subject to this objection and without waiving the same, all responsive, non-privileged communications relevant to this matter in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

3. All documents, notes, diaries, journals, logs, chronologies or recordings created or maintained by you that contain information relating to any of the claims in this action.

**RESPONSE: Plaintiff objects that this Request seeks information that is protected by the attorney-client privilege and/or work product doctrine, as some responsive documents in Plaintiff's possession or control were created by Plaintiff for counsel for the purpose of litigation and are thus protected by the attorney-client privilege and/or work product doctrine. *See* Fed. R. Civ. P. 26(b)(3)(A) ("Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . .)."); Black's Law Dictionary (7th ed.), "Work product" ("Tangible material . . . that was either prepared by or for a lawyer or prepared for litigation, either planned or in progress.").**

**Responsive, non-protected documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order. Other relevant documentation, such as Plaintiff's patient and work logs, are solely within Defendants'**

possession and control. Plaintiff reserves the right to rely on any such documents in the possession of Defendants.

4.     All documents that support, evidence, refer, relate to, or otherwise discuss the allegations contained in the Complaint and/or any amendments thereto.

**RESPONSE: Responsive documents in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

5.     All documents, writings or things received by you from Defendants or any of their employees, including, but not limited to, letters, notes, policies, handbooks, manuals, training materials, voice mail messages, e-mail messages, or any other documents, relating to your residency.

**RESPONSE: Plaintiff objects that this Request asks for documentation that equally or more available to Defendants, as its plain language reveals that Defendant was also a party to all the requested communications and documents ("received by you from Defendants"). This Request is thus unduly burdensome and disproportionate to the needs of the case given the parties' comparative resources and relative access to the information.**

**Plaintiff states that Defendants can find the requested information in its own records, to which he no longer has access, including but not necessarily limited to his VUMC email account, patient charts, and pager records. Moreover, Defendants have superior access to their own policies, handbooks, manuals, and training materials. Plaintiff reserves the right to rely on any such documents in the possession of Defendants.**

**Subject to this objection and without waiving the same, responsive documents in Plaintiff's possession and control will be provided following the entry of the Agreed**

Protective Order.

6.     Any and all witness statements and notes which relate to any of the allegations made by Plaintiff in this case.

**RESPONSE: None.**

7.     Any and all documents that relate to reports of witnesses or potential witnesses that support, tend to support, or tend to refute Plaintiff's allegations, or that may be used by Plaintiff as evidence or at the trial of this action, including but not limited to documents that contain any statements, sworn or unsworn, of any person with knowledge of any of the allegations made by Plaintiff in this action or which Plaintiff believes support, tend to support, or tend to refute her claims.

**RESPONSE: Plaintiff has not taken any witness statements and thus cannot answer for what any witnesses or potential witnesses might "report" or what knowledge they might possess.  Further, answering for third parties is beyond Plaintiff's duties under the Federal Rules of Civil Procedure.  Finally, requesting what evidence Plaintiff will use at trial impermissibly seeks the mental impressions and trial strategy of counsel in violation of the work product doctrine.  Plaintiff will disclose pretrial evidence and witnesses at the time required by the Court pursuant to the Case Management Order in this matter.**

**Subject to and without waiving these objections, those persons who, upon information and belief, may have knowledge and the basis of their knowledge are listed in Plaintiff's Response to Interrogatories No. 1-4.  Responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

8.     All documents, writings, or things that support your claims for damages,

specifically including documents related to any offers of employment you contend were rescinded and any income you have earned since the end of your residency.

**RESPONSE: Responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

9. Your income tax returns from 2015 to the present and all attachments thereto, including, but not limited to, your W-2s.

**RESPONSE:  Responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

10. All documents, writings, or things that relate to any claim that you suffered any mental, emotional, or psychological harm as a result of the alleged act or omissions by Defendant and/or its employees.

**RESPONSE: Plaintiff states that this information is best presented in narrative format in a deposition or at trial.  Subject to this, responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.**

11. For the preceding ten (10) years, any and all medical records and other documents, including, but not limited to, reports, notes, evaluations, diagnoses, prescription forms, bills, letters to employers, and intake forms, reflecting or relating to the physical, mental, emotional, or psychological health or condition of Plaintiff.

**RESPONSE: Plaintiff objects that this request is overly broad, unduly burdensome, and not proportional to the needs of the case, in that it seeks health information from outside the timeframe of this matter that is not important to resolving any issues and not relevant to either party's claims or defenses.**

**Subject to and without waiving these objections, relevant responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order. Plaintiff would consider executing a release of medical records that was tailored to the medical concerns relevant to this matter upon request. Plaintiff will also produce an executed release allowing Defendants to gain his EAP records when the Agreed Protective Order has been entered.**

12. Any and all documents pertaining to any application Plaintiff has made (or which has been made on Plaintiff's behalf) at any time for the receipt of disability insurance benefits, social security disability benefits or workers' compensation benefits from any employer.

**RESPONSE: None.**

13. All video tape recordings, audio tape recordings, compact disc recordings, or other recordings and any photographs relating to your claims in this action.

**RESPONSE: Responsive documentation in Plaintiff's possession and control is will be provided following the entry of the Agreed Protective Order.**

14. Every document prepared by or for any expert you intend to call to testify at the trial of this matter which records or relates to the facts and opinions to which the expert is expected to testify.

**RESPONSE: Plaintiff has not retained an expert at this time. In the event Plaintiff does retain an expert in the future, he will disclose it according to the deadlines and procedures set out in the Revised Scheduling Order (Doc. No. 53).**

15.     Every document provided to and/or received from any expert you intend to call to testify at the trial of this matter.

**RESPONSE: Plaintiff has not retained an expert at this time. In the event Plaintiff does retain an expert in the future, he will disclose it according to the deadlines and procedures set out in the Revised Scheduling Order (Doc. No. 53).**

16.     Documents, writings or things sufficient to identify the name of the Court, the parties involved and the resolution of all civil lawsuits, bankruptcy proceedings, administrative proceedings or arbitration proceedings to which you are or have ever been a party.

**RESPONSE: Other than the instant case, none.**

17.     With respect to the websites, online journals, social networking websites, blogs, weblogs, photoblogs, audioblogs, videoblogs or similar social networking sites (("Blogs")) identified in response to Defendant's Interrogatory No. 19, please produce electronic copies of all content created, modified, uploaded, posted, sent or received by you (or by anyone on your behalf) on each such Blog within the previous five years. With respect to any Facebook account you may have, we request a copy of the content of such Facebook account in the format available through the "Download Your Information" function. To the extent electronic copies are not available, please provide the documents in hard copy form.

**RESPONSE:   Plaintiff objects on the grounds that it is overbroad, unduly burdensome, disproportionate to the needs of the case, and seeks information that is not relevant to any party's claims or defenses and of no importance in resolving the issues of**

the case. Plaintiff no longer has any active social media pages. Moreover, even when he did have active social media accounts, his privacy settings allowed only his friends or connections to view information posted on social media sites. Therefore, requiring Plaintiff to permit Defendant unfettered access to those accounts constitutes an invasion of his privacy in that it seeks greater access than is currently or was ever publicly available.

Additionally, Plaintiff objects because Defendant seeks access to Plaintiff's social media accounts without any limitations with regard to subject matter and/or time period relevant to Plaintiff's claims. The simple fact that the Plaintiff may have had social communications is not probative of the issues in the case. Rather, "it must be the substance of the communication that determines relevance." *See, e.g., EEOC vs. Simply Storage Management, LLC*, 270 F.R.D. 430 (S.D. Ind., 2010); *Rozell vs. Ross-Holst*, 2006 WL, 163143 (S.D.N.Y. Jan. 20, 2006). ("To be sure, anything that a person says or does might in some theoretical sense be reflective of her emotional state. But that is hardly justification for requiring the production of every thought she may reduced to writing or, indeed, the deposition of everyone she may have talked to.").

18.     All documents supporting the allegations raised in Plaintiff's Complaint related to similarly situated colleagues.

RESPONSE: Responsive documentation in Plaintiff's possession and control will be provided following the entry of the Agreed Protective Order.

Respectfully submitted,

**GILBERT McWHERTER
SCOTT BOBBITT PLC**

s/ Caraline E. Rickard
Justin S. Gilbert (TN Bar No. 17079)
200 W. Martin Luther King Blvd., Suite 1067
Chattanooga, TN 37402
(423) 499-3044
(731) 664-1540 Facsimile
jgilbert@gilbertfirm.com

Caraline E. Rickard (TN Bar No. 34414)
341 Cool Springs Blvd., Suite 230
Franklin, TN 37067
(615) 354-1144
(731) 644-1540 Facsimile
crickard@gilbertfirm.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that a true and exact copy of the above has been served via e-mail and U.S. Mail to the following on November 15, 2018:

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
Luther Wright, Jr., TN #17626
Casey M. Parker, TN #033081
SunTrust Plaza 401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615.254.1900
Facsimile: 615.254.1908

*Attorneys for Defendants*

s/ Caraline E. Rickard