IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., ) | |
| ) | Civil Action No. 3:17-cv-00400 |
| Plaintiff, ) | |
| ) | The Honorable Eli Richardson |
| v. ) | |
| ) | Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL ) | |
| CENTER, and VANDERBILT ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S TRIAL BRIEF ON DAMAGES**

Plaintiff, GOBIND SINGH, by counsel, Edward R. Moor of Moor Law Office, P.C., respectfully submits this as his Trial Brief on Damages in accord with the Order entered on March 23, 2021 (Dkt. # 149).

**A.    ADA Damages**

The Plaintiff is entitled to back pay and front pay. In the Sixth Circuit, while the decision about whether to award either is an equitable remedy to be decided by the Court, the amount, if disputed, is to be determined by the jury. *Grant v. Metro. Gov't of Nashville, Davidson County, Tennessee*, 3:04-0630, 2007 WL 4146807, at *3 (M.D. Tenn. Nov. 19, 2007).

Back pay is the pay that the Plaintiff would have earned from the Defendant in his position with Defendant as a resident but for the discrimination through the date of trial. Because the residency was a 36-month residency, and but for the discrimination he would have completed the program by June 20, 2017, his backpay is, conservatively, $50,000 plus $12,500 for the one year and four months between February 25, 2016 and June 2017, plus the incremental increases he would have been awarded, estimated to be $2,500 per year. This totals $67,500. Plaintiff can

establish this loss by his testimony and by the testimony of Dr. Wayman, Dr. Sternberg and Dr. Brady.

There is no front pay claim in this case because the loss is measured relative to the employee's position in which he was terminated, *Suggs v. ServiceMaster Educ. Food Mgmt.*, 72 F.3d 1228, 1234 (6th Cir. 1996), and the residency was not a permanent position but a training pre-requisite to becoming a board-certified ophthalmologist. Any claim for lost pay as a resident is now a back pay claim. However, a claim for future loss of income, made in the defamation count relative to lost earnings as a board-certified ophthalmologist, is not a claim for front pay. *Williams v. Pharmacia, Inc.*, 137 F.3d 944, 953-954 (7th Cir. 1998).

Any unemployment compensation should not be deducted from Plaintiff's backpay award. *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614, 627 (6th Cir. 1983).

The Plaintiff did mitigate his damages, finding employment by November 2016 as an investment counselor at LifeSci Advisors, LLC. He earned about $33,000 at LifeSci Advisors between November 2016 and April 2017. His annual pay at LifeSci was $80,000. Thereafter, Plaintiff began working for Bank of Montreal (BMO) in April 2017 and remained until July 3, 2020. He made $154,284.38 in 2017, $189,186.90 in 2018, $183,690.37 in 2019, and $108,141.35 in 2020. On July 6, 2020 he started working for JMP and earned $71,069 in 2020. His current annual salary at JMP is approximately $173,000 a year.

Therefore, because unemployment earnings do not offset backpay, and because his residency would have ended on June 30, 2017, his earnings at LifeSci, $80,000 annually but only $33,000 for the period he was employed and his earnings at BMO may be used as interim earnings to offset his backpay claim. His interim earning exceeded his lost pay as a resident, so there is no claim for backpay past November 2016. This means that the Plaintiff's backpay claim is limited

2

Case 3:17-cv-00400   Document 182   Filed 08/30/21   Page 2 of 6 PageID #: 2084

to the period of February 25, 2016, or about nine months.

Compensatory damages are available under the three violations of the ADA that the Plaintiff puts at issue: the failure to accommodate, the failure to engage in the interactive process, and the failure to promote and later firing (retaliation). *Equal Employment Opportunity Comm'n v. Dolgencorp, LLC*, 277 F. Supp. 3d 932 (E.D. Tenn. 2017), aff'd, 899 F.3d 428 (6th Cir. 2018); *Baker v. Windsor Republic Doors*, 635 F. Supp. 2d 765, 767 (W.D. Tenn. 2009), aff'd, 414 Fed. Appx. 764 (6th Cir. 2011).

Punitive damages for a failure to accommodate are permissible under the ADA if the employer discriminated knowing that its acts might violate federal law. *Denoewer v. Union County Indus.*, 2:17-CV-660, 2020 WL 1244194, at *12 (S.D. Ohio Mar. 16, 2020). Punitive damages for retaliation, here the alleged failure to promote and the later firing, are not. *E.E.O.C. v. Faurecia Exhaust Sys., Inc.*, 601 F. Supp. 2d 971 (N.D. Ohio 2008).

### B. Defamation by Implication

On the state law defamation by implication claim, the Plaintiff can recover "actual damages" but this includes impairment of reputation, standing in the community, personal humiliation, and mental anguish and suffering:

> Under Tennessee law, a plaintiff is required to prove actual damages in all defamation cases. *Handley v. May,* 588 S.W.2d 772, 776 (Tenn.App.1979). The actual damage requirement was discussed by the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974):
>
>> We need not define "actual injury," as trial courts have wide experience in framing appropriate jury instructions in tort actions. Suffice it to say that actual injury is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Of course, juries must be limited by appropriate instructions, and all awards must be supported by

3

> competent evidence concerning the injury, although there need be
> no evidence which assigns an actual dollar value to the injury.
>
> *Id.* at 349–50, 94 S.Ct. at 3012. The failure to prove special damages or out-of-pocket losses is not necessarily determinative. *Handley,* 588 S.W.2d at 776. The issue is whether the record contains any material evidence of impairment of reputation and standing in the community, personal humiliation, or mental anguish and suffering. *Id.*

*Myers v. Pickering Firm, Inc.*, 959 S.W.2d 152, 164 (Tenn. Ct. App. 1997).

Here, the Plaintiff lost his acceptance to the New York Medical College/Westchester Medical Center ophthalmology residency program which would have led to his board certification in ophthalmology. Plaintiff claims that he is entitled to his past lost income as a board certified ophthalmologist and the present cash value of his future lost income as a board certified ophthalmologist. Plaintiff can establish the amount of these losses through the testimony of Dr. Paul Sternberg and through his own testimony. In addition, he is entitled to damages for impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering. Plaintiff will testify that de devoted his life to pursuing the practice of medicine and that he has lost his ability to be employed on a non-volunteer basis as an M.D. in any capacity, which is damage to his reputation, standing in the community, and a source of great mental anguish.

Punitive damages are proper in a defamation case where the Defendant is shown to have acted with malice, which is defined as actual knowledge or reckless disregard as to the untruthfulness of the statement. *McWhorter v. Barre*, 132 S.W.3d 354 (Tenn. Ct. App. 2003).

    C.    **Tortious Interference with Business Relationships**

Damages for interference with a prospective contractual relation include the pecuniary loss of the benefits of the relation, consequential losses for which the interference is a legal cause, and emotional distress or actual harm to reputation reasonably expected to result from the interference.

4

*Dorsett Carpet Mills, Inc. v. Whitt Tile & Marble Distributing Co.*, 734 S.W.2d 322, 325 (Tenn. 1987) (*quoting* Restatement (Second) of Torts § 774A (1979)).

Here, given the potential overlap between the defamation count and the tortious interference count, Plaintiff limits pecuniary losses to the amount he would have earned as a resident in New York Medical College/Westchester Medical Center as a resident after his graduation date from Vanderbilt as his time at Vanderbilt is part of the back pay claim under the ADA. Plaintiff claims emotional distress from the tortious interference.

Punitive damages are proper in a tortious interference case. The standard is different than under the ADA or defamation:

> a plaintiff seeking punitive damages for tortious interference with contract must prove that the defendant acted either intentionally, fraudulently, maliciously, or recklessly. *See Hodges v. S.C. Toof & Co.,* 833 S.W.2d 896, 901 (Tenn.1996). And because "punitive damages are to be awarded only in the most egregious of cases," a plaintiff must prove this element by clear and convincing evidence.

*Cambio Health Sols., LLC v. Reardon*, 213 S.W.3d 785, 792 (Tenn. 2006).

Here, the Plaintiff will show that the Defendants acted either intentionally or recklessly and will show that was the case by clear and convincing evidence.

Respectfully submitted,

*/s/ Edward R. Moor*
Edward R. Moor, *admitted pro hac vice*
Moor Law Office, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
312-726-6207
erm@moorlaw.net
Illinois Attorney #: 6205169

Seamus T. Kelly, TN # 032202
David J. Goldman, TN # 035151
Music City Law, PLLC
209 10th Avenue South, Suite 560

5

Nashville, TN 37203

**CERTIFICATE OF SERVICE**

  I hereby certify that on August 30, 2021 I electronically filed the foregoing Motion with the Clerk of the Court using CM/ECF system, which will send notification of such filing to all registered users, including those listed below:

Luther Wright Jr.
Ogletree, Deakins, Nask, Smoak & Stewart, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, Tennessee 37219
luther.wright@ogletree.com

              /s/ Edward R. Moor

6

Case 3:17-cv-00400   Document 182   Filed 08/30/21   Page 6 of 6 PageID #: 2088