RECEIVED
in Clerk's Office
JAN 13 2022
U.S. District Court
Middle District of TN

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

GOBIND SINGH, M.D., PH.D., )
                            )
       Plaintiff, )
                            )
    v.                       )
                            )
VANDERBILT UNIVERSITY MEDICAL )
CENTER, and VANDERBILT )
UNIVERSITY, )
                            )
       Defendants )

Civil Action No. 3:17-cv-00400

The Honorable Eli Richardson

Magistrate Judge Barbara D. Holmes

## PLAINTIFF'S FILING TO SHOW CAUSE

       Plaintiff, Dr. Singh (himself only) respectfully submits this filing by same-day mail as a follow-on to the original filing that was postmarked within ten days of Honorable Judge Richardson's Order to Plaintiff (Doc 201) to show cause why the case should not be dismissed according to Federal Rule of Civil Procedure 41(b) based on alleged facts that were stated in Ed Moor's Motion to Withdraw (Doc 200). Plaintiff apologizes that delivery of the original filing was delayed according to FedEx tracking despite being postmarked on time; Plaintiff requests the Court to review this filing instead, which was sent by a separate overnight delivery since same-day delivery was not available.

       Plaintiff, by himself, as ordered by the Court, has given his best effort to show cause, and Plaintiff remains fully dedicated to taking this case forwards and complying with Court Orders. Plaintiff humbly apologizes for likely not fully understanding Federal Rule 41(b) or the necessary components needed to show cause. Plaintiff is also grateful the Court specified Doc 200 in its Order (Doc 201) as Mr. Moor never shared Doc 200 with Plaintiff (by email or mail) despite that

filing being critical for Plaintiff to comply with the Court Order. Plaintiff was able to download Doc. No. 200 after reactivating his PACER account.

Mr. Moor's Motion to Withdraw contained many factually incorrect and misleading statements. Additionally, the motion clearly went beyond a Motion to Withdraw, as evident by the Court response to consider dismissing the case entirely due to failure to prosecute when Plaintiff has and still remains 100% committed to advancing this case, which is currently set for trial on February 1, 2022. Mr. Moor grossly misled the Court to think Plaintiff was not interested in going to trial. Also, Plaintiff believes Mr. Moor may have breached attorney-client privileges and ethical duties to his client. In another lawsuit filing dated September 20, 2021, Mr. Moor appears to have been misbehaving with his client in a similar manner as Plaintiff at the same time. However here Mr. Moor appeared to withdraw with more caution and without making any personal opinions. Mr. Moor's client stated Mr. Moor had misrepresented material facts for him too and referred to Mr. Moor as "*unethical*", "*unprofessional*", "*racist*", and "*belligerent*" (Exhibit A). It's unclear why Mr. Moor was behaving with two of his clients at the same time in a similar manner, but Mr. Moor should not be permitted to accept payment for agreed-upon services, and then change the terms at-will while also becoming verbally abusive and materially harming Plaintiff's case

Plaintiff has several claims in this suit against Vanderbilt (VUMC & VU) and there are also pending motions in-limine that were initially discussed during an oral conference on August 26, 2021. In addition to reassuring this Court Plaintiff remains committed to this case, Plaintiff hopes to show cause by also showing this Court specific examples with supporting evidence where counsel have misled/misinformed this Court including on August 26th, 2021, and recent telephonic conference calls that discussed trial dates (December 3, 2020, and September 2, 2021). After

reviewing some of these examples, Plaintiff then identifies some of the false/misleading statements made by Mr. Moor in his Motion to Withdraw.

The most recent trial continuance is because of the Defendant's oral motion on September 2, 2021 to continue the September 14, 2021 trial date allegedly due to a COVID-19 emergency plan VUMC implemented on August 31, 2021 that supposedly might have prevented four specific VUMC physicians from testifying at trial. Plaintiff questions the authenticity of the Defendants claim (not Defendant's counsel) for a few reasons discussed below and supported by evidence. Importantly, the three VUMC physicians that had already been deposed by the Plaintiff did **not** overlap with any of the four cited by the Defendants, suggesting these three key witnesses were still able to testify at the trial had it not been continued. Neither counsel discussed these three witnesses even though they are far more important to the Plaintiff, and neither counsel informed the Court that only the day before, Defendants had notified Mr. Moor for the first time that one of these three key VUMC physician witnesses, Dr. Wayman and a few other key witnesses were supposedly no longer employed with Vanderbilt.

On August 26, 2021, during a conference call with this Court to discuss motions in-limine, counsel misled/misinformed the Court on several items. For example, counsel stated unredacted text messages between ophthalmology resident physicians **had never** been provided by the Plaintiff— this is simply not true for almost 5 years now (Exhibit B). Not only has Plaintiff disclosed these messages to his counsel on numerous occasions, including Mr. Moor, but neither counsel apparently was aware these unredacted texts were already given to the EEOC too, so Defendants already had access to them. Further, even though Mr. Moor had these texts in his possession before and after the August 26, 2021 conference call, Mr. Moor misrepresented the

facts about the existing evidence to this Court and never bothered to fix his mistake to the Court, like many other items that Plaintiff has had to endure and is trying to correct.

Also on the August 26, 2021 conference call, Mr. Moor and Defendants misled/misinformed this Court about missing evidence. Counsel shared with this Court that certain evidence may never have been created in the first place even though it **should** have existed. However, this is also not true as there is existing evidence that shows many of the missing evidence definitely existed, at times even the actual evidence itself is provided herein, yet Mr. Moor made no mention. For example, Defendants claimed Plaintiff never requested a reasonable accommodation until late 2015, referring to when Plaintiff was still an active Vanderbilt employee and had completed the two specific EAD forms that Defendants themselves gave to Plaintiff, and only gave to the Plaintiff after attorney Mr. Richard Braun on September 4th, 2015 made a request for reasonable accommodation on behalf of the Plaintiff to the Defendants attorney Mr. John Callison (Exhibits C-D). This partial email thread was not disclosed to Plaintiff until late 2020, after discovery closed. As shown here, Vanderbilt's counsel, Mr. John Callison, forwarded Mr. Braun's request for a reasonable accommodation to another attorney for Defendants, Ms. Sheree Wright, on September 8th, 2015 (Exhibits C-D), but none of the follow-up emails after communications with another attorney, Anita Jenious or Dr. Donald Brady has been disclosed or supplemented by the Defendants. These must have existed to prompt Defendants EAD on September 11, 2015 to invite Plaintiff to complete two specific EAD forms **if the Plaintiff** wanted to initiate an accommodation request (Exhibit E). Defendants Ms. Wright and Mr. Marshall stated:

> "*If you would like to request a workplace accommodation on account of a disability, please complete the Reasonable Accommodation Request Form (attached). Also, your physician or care provider should fill out Section II of the Medical Information Request Form*

*(attached). Once EAD receives **both completed forms, we can then** evaluate to determine if an accommodation can be made."*

Further, Defendants never disclosed or supplemented any of Plaintiff's other requests for accommodation in 2014 or 2015, yet Plaintiff was able to find evidence that showed a request for an accommodation was made in October of 2014 (Exhibit F). Defendants not disclosing key evidence like this has prejudiced the Plaintiff on numerous levels, one of them enabling Plaintiff to show this Court documented evidence that the Plaintiff made requests for reasonable accommodations under federal ADA/ADAA, but Defendants, as they have established in this suit, did not view any of these requests as reasonable accommodation requests under the Defendants ADA/ADAA policy, because, as evident below, Defendant's policy clearly required **two specific EAD forms to be completed in order to initiate an accommodation request**, with one form needing to be completed by the medical provider. In line with Defendants Ms. Wright and Mr. Marshall email to Plaintiff on September 11, 2015, Defendant's own ADA policy forms also stated:

"To Vanderbilt Employee: ***To initiate a request for a reasonable accommodation***, an employee must: • Submit the completed Reasonable Accommodation Request Form ***and*** the Medical Information request form to the EAD's Disability Services Program Director." (Exhibit G & H)

Despite Mr. Braun making a request for reasonable accommodation on behalf of the Plaintiff permitted under the federal ADA/ADAA, which should have triggered the Defendants to engage in the interactive process, instead, Defendants establish they did not see Mr. Braun's request as an accommodation request given Defendants have made no mention about this request whatsoever to date, even after late disclosure, but also because Defendants eventually came back

to Plaintiff on September 11, 2015 with the two specific EAD forms still asking Plaintiff if he wanted to request an accommodation.

Mr. Braun's request was proper under the federal ADA/ADAA and so was Plaintiff's written request to Dr. Wayman in October 2015, yet Defendants have stated neither of these were accommodation requests, under their ADA/ADAA policy, not the federal ADA/ADAA law. Defendants ADA/ADAA policy mandating two specific forms does not excuse them from following federal ADA/ADAA regulations, which do not require specific forms to be completed to make an accommodation request, as Defendants recited to this Court on August 26, 2021 when Defendants misstated they have never nor were ever planning to argue certain paperwork was required to initiate an accommodation request, which misled the Court into believing Plaintiff's motion in-limine was moot. Defendants should not be permitted to mislead this Court or a jury that their ADA/ADAA policy is in-line with the federal ADA/ADAA act when it is clearly not.

To confuse matters even more, Defendants wrote in their reply to interrogatory 10 that asked Defendants to list all requests for reasonable accommodation by VUMC physicians from January 1, 2014 to 2019 according to the federal ADA/ADAA (not Vanderbilt ADA/ADAA) and below Defendants do not even acknowledge Plaintiff's 2015 accommodation request

> "*Defendants are not aware of any residents who have sought reasonable accommodations in the Ophthalmology Residency Program during the requested time period.*"

Despite all of the above examples, Defendants went on to tell this Court on August 26, 2021 that the paperwork referenced in Plaintiff's motion in-limine was supposedly part of a "***formalized interactive process***" when Defendants own forms and words clearly established the Defendant's ADA/ADAA policy **did indeed** require specific forms completed to initiate an accommodation request, not to initiate the interactive process. Defendants should not be permitted to claim, as they

did on August 26, 2021 and wish to do so in front of a jury, that no specific paperwork was required to request an accommodation. This was their policy in operation during the events in this suit and hopefully, this Court would agree at the minimum that jury instructions should distinguish Defendants ADA/ADAA policies from Federal ADA/ADAA policies.

Further, while Defendant's own original ADA/ADAA policy used to require two specific forms to be completed, it should be noted that since February of 2016, VUMC has materially changed its ADA/ADAA policy not once, but twice, yet Defendants have never disclosed or supplemented any of these ADA policy changes (VUMC related - Exhibit I (2016), J (2018), K (2019) ) to the Plaintiff despite them being requested by Plaintiff interrogatories/productions plus Defendants volunteered these in their initial disclosures  (Exhibit L-1 & L-2). Additionally, this lawsuit was filed in 2017 **after** VUMC's first ADA/ADAA policy change already was in-effect as of May 17, 2016 (Exhibit I), yet Defendants have failed to make any mention of the 2016 change or again in 2018 (Exhibit J) or again in 2019 (Exhibit K) to the Plaintiff or this Court, and this evidence clearly existed.

Defendants also misled this Court to believe another motion in-limine was also moot by claiming Defendants would have been given accommodation to the Plaintiff if he had returned to clinical duties. However, evidence as supplied by the Defendants already showed: 1) *"EAD has not decided on this accommodation request"* as of February 2016 yet *"in March 2016, the accommodation case was closed as [the Plaintiff] was no longer an active employee,"* (Exhibits M & N), 2) depositions from Dr. Wayman and Dr. Brady have both stated neither of them ever knew Plaintiff made a reasonable accommodation request with the EAD (Exhibits O & P, respectively), and 3) new evidence disclosed in late 2020 showed the EAD requested a conference call with Defendants Dr. Brady and Dr. Wayman to discuss Plaintiff's reasonable accommodation

request (Exhibit Q). Yet before any conference call could be set up, which could have led to the Defendants engaging in the interactive process with the Plaintiff for the first time, Dr. Brady stepped in, and then Dr. Wayman thanked Dr. Brady. Defendants have never disclosed what transpired during the above phone calls that led to Dr. Wayman thanking Dr. Brady nor should Defendants be permitted to do so now with a new story as done on the August 26, 2021 conference call suggesting either Dr. Brady and/or Dr. Wayman knew about the accommodation and planned to grant it when depositions from each Dr. Brady and Dr. Wayman clearly showed neither received an accommodation request from Plaintiff (Exhibits O & P). Defendants should not be permitted to say at a trial that they planned to offer an accommodation based on existing evidence.

Defendants claimed that they have disclosed all of Plaintiff's evaluations from 2014 and 2015, yet this is also not true as shown in Exhibit T, which Defendants never produced or supplemented but these clearly existed and were positive for Plaintiff. Defendants have withheld all of Plaintiff's positive evaluations, including those from patients. Another type of evaluation are milestone evaluations, which are required to be completed by the resident physician and program director every 6 months (and signed and kept in resident file; Exhibit U) according to ACGME and Vanderbilt policies. Also, CCC meetings must occur every 6 months, also required by ACGME and Vanderbilt. An end of the year CCC meeting must have occurred before a resident can be offered a promotion contract (vs non-promotion). Yet, on August 26, 2021 conference call, Defendants confirmed for the first time in the past five years that the end of the year (2014-2015) CCC meeting minutes for the Plaintiff did in-fact exist, but were being withheld (the last five years) by the Defendants supposedly due to peer-review. Defendants continue to state no CCC meeting minutes for mid-year (2014-2015) were in their possession nor any other evaluations in spite of Exhibit V, which shows an example of minutes from a committee meeting like the

Education Committee and Program Evaluation Committee, even though Defendants claimed no meeting minutes in 2014 were in their possession on the call with the Court. While one of the pending motions in-limine is addressing the peer review issue, this Court should be aware that in order for CCC meeting minutes to exist for the end of the year (2014-2015), this means end of the year (2014-2015) milestone evaluations must have first existed (2014-2015), which Vanderbilt disclosed an incomplete set during discovery with serious questions about authenticity. Of note, these are the same incomplete milestone evaluations that Dr. Brady used to compose the Plaintiff ratings used in the summative evaluation, and the same evaluation that Dr. Brady claimed to have spoken with Dr. Wayman even though Dr. Wayman's deposition denied this.

For 2014-2015 there must be two sets of milestone evaluations and two sets of CCC meeting minutes that existed for the Plaintiff since there is a PGY-3 contract. As confirmed by Dr. Wayman, there also must have been a final written approval/denial from herself before a promotion contract or non-promotion letter was issued to the Plaintiff, yet Defendants have not disclosed any of these items by Dr. Wayman. Not only has Dr. Wayman confirmed they existed at some point, but Defendants had been publishing clinical evaluations to the national ACGME about Plaintiff every six month (Exhibit W), yet Defendants never disclosed or supplemented to the Plaintiff this evidence.

Also related to the ACGME of great importance, as mentioned before, Defendants misled this Court on August 26, 2021 to believe motion in limine was moot because Defendants plan to argue Plaintiff could and would have been accommodated had Plaintiff returned to being "clinically active" from suspension. Yet, this Court was not informed by Counsel that Defendants previously published clinical evaluations to the ACGME about Plaintiff during the time-period of January 1, 2016 to June 24, 2016 when Plaintiff was either not "clinically-active" or an "active

employee" with the Defendants (Exhibit W; "Year-End 2015-2016" means January 2016 to June 2016). Not only have Defendants misled this Court about missing evidence, which clearly is not the case since Defendants must have given a record to the ACGME for documents like Exhibit W-2 to exist, butr Defendants also published false information about Plaintiff to the ACGME, as confirmed by the Defendants themselves to this Court on August 26, 2021 by stating Plaintiff was not clinically active (from July 29, 2016 to February 25, 2016). Similar to Defendants should not be permitted to mislead this Court or a jury that Defendants ADA/ADAA policy is in-line with federal ADA/ADAA, which it is not, Defendants should not be permitted to say on one end Plaintiff was clinically inactive to mislead this Court to think a motion in-limine was moot yet on the other end be permitted to have published false information about Plaintiff's so-called clinical performance to the ACGME, evidence that clearly existed which the Defendants were supposed to disclose and still never did.

Court should also be informed that Defendants omitted the final page of the PGY-3 contract page, which happens to be the signature page and that stated Defendant's obligations to the Plaintiff included accommodations under the federal ADA/ADAA **and** Defendant's ADA/ADAA policy, as reflected below (Exhibit X & X-2):

"*Accommodations for residents with disabilities as required by the Americans with Disabilities Act **and** in accordance with Institutional Policy.*"

But Defendant's ADA/ADAA policies were not in accordance with federal ADA/ADAA despite the above stating otherwise. Vanderbilt withholding this one contract page from discovery when all the other PGY-3 contract pages were provided is telling.

Further, Defendants have stated Plaintiff's PGY-3 to PGY-2 contract retraction was supposedly a "*non-promotion*". This is false and materially important. Even using Vanderbilt's

own policy handbook (Exhibit Y), a non-promotion occurs when evaluations are unfavorable such that no annual promotion contract was ever issued in the first place. This is clearly **not** applicable to Plaintiff as a PGY-3 contract was issued, but then was supposedly retracted by Dr. Brady to PGY-2. This sequence of events also means that Defendants never disclosed to Plaintiff which disciplinary policy Dr. Brady operated under when Defendants retracted Plaintiff's signed PGY-3 contract to a second PGY-2. Importantly, Defendants never disclosed the supposed "second" annual PGY-2 contract that Plaintiff would have been required to disclose/supplement for 2015-2016 reflecting Plaintiff's PGY status after Dr. Brady retracted Plaintiff's PGY-3. Defendants have not disclosed or supplemented which PGY contract was in-effect when Plaintiff's employment was terminated in February of 2016; this is material and clearly must exist for Defendants to terminate it in February of 2016. Defendants withheld the PGY-3 signature page of the annual promotion contract, Defendants have never disclosed/supplemented the second annual PGY-2 contract, yet Defendants ranked Plaintiff as PGY-1 or below in the published summative evaluation even though Plaintiff successfully completed PGY-1 elsewhere.

Also related, Defendants have informed this Court that settlement discussions related to a revised letter were supposedly one or two lines away from completion before Plaintiff supposedly changed his mind, this is also false and again misrepresentative. On the PGY-3 contract issue discussed above, Plaintiff applied (and was accepted) to a PGY-3 ophthalmology residency position at NYMC/WMC (Exhibit Z). Even if the Court believes the PGY-3 to PGY-2 demotion (but not "non-promotion") is not material, the summative evaluation letter published to NYMC/WMC never endorsing Plaintiff successfully completed PGY-2 should be a material issue, especially since Plaintiff in-fact did so and this is undisputed as confirmed in Dr. Wayman's deposition and the existence of a PGY-3 contract. Given Dr. Brady's summative evaluation ranked

Plaintiff at the level of a PGY-1 or below; this published summative evaluation made it impossible for NYMC/WMC and any other institution to verify that Plaintiff successfully completed PGY-2. Contrary to implied statements from Counsel to this Court on September 2, 2021, Defendants did not endorse Plaintiff completed PGY-2 before and this has not changed in revised letters during settlement negotiation.

Also not changed in revised letters, even when Dr. Brady was requested to mention Plaintiff's medical symptoms (or any accommodation requests) in the original summative evaluation before it was sent out to NYMC/WMC, Dr. Brady refused, by way of Alfredo Sergio, counsel for the Defendants. Alfredo Sergio remains unannounced in this lawsuit (like other attorneys for Defendants: John Calliston, Bill Ozier, Shree Wright) despite Mr. Sergio having attended numerous telephonic calls with this Court plus Mr. Sergio attended Defendants deposition of Plaintiff and was listed as one of the Defendants attorneys present on the transcript of Plaintiff's deposition (Exhibit AA). Regardless, none of the communications about Plaintiff's medical symptoms (including October 2014 email) or requests for an accommodation were disclosed by the Defendants. Defendants refuse to have any humility about the impact these actions had on Plaintiff, as was evident in any of the revised summative evaluation letters during settlement negotiations. Contrary to Defendant statements about only releasing information to NYMC/WMC, Mr. Sergio's own emails confirm other conversations with other institutions took place (Exhibit AB) even though Defendants have not disclosed or supplemented this evidence either. These conversations were at the expense of the Plaintiff and when Plaintiff did not sign Defendant's waiver, a waiver that ACGME rules forbid from any institution having in the first place.

Lastly, during telephonic conference calls on December 3, 2020, August 26th, 2021, and September 2, 2021, counsel have misled the Court about so-called settlement efforts that were

supposedly occurring in the interim. In fact, there have been zero settlement discussions on this topic since mid-2020 that involved Plaintiff, yet counsel have misrepresented the truth by stating some discussions were taking place when there were none. Plus, Mr. Moor was not authorized to engage in any settlement discussions according to the terms of his hiring made verbally and in-writing since day one. Should the Court grant Mr. Moor's motion to withdraw, Plaintiff would not object as Mr. Moor has not fulfilled his services that he was hired and fully paid to do and Mr. Moor has grossly violated the terms he agreed to in exchange for payment. Plaintiff wishes to have counsel and is aggressively looking, even while international. It should be known that Mr. Moor has outright violated his client's instructions on multiple occasions the last few months in recent filings that Plaintiff would like to rectify with new counsel, or if it must be, as *pro-se* if the Court demands.

Also related to Mr. Moor's motion to withdraw, Mr. Moor violated many of the terms that were stipulated in his fee-arrangement in-writing or verbally by video conference with Plaintiff and/or Plaintiff's parents. For example, the terms clearly stated Mr. Moor was required to give Plaintiff a 30-day formal notice, not 14-days as Mr. Moor did in front of this Court and even less time behind the scenes. Even after Mr. Moor asked Plaintiff to write a legal brief and Plaintiff did so, Mr. Moor did not reply to Plaintiff for at least 2 months. Mr. Moor should not complain about lack of response when his own behavior has been far worse with his client for longer periods. Eventually, Mr. Moor finally submitted another version of the brief Plaintiff wrote almost six months later that removed a critical portion which was material and the source of the failure based on the Court's response. Plaintiff believes Mr. Moor was intentionally destroying the relationship by disregarding his client's instructions and doing the exact opposite at times.

During Defendant's oral motion on September 2, 2020, to continue the trial date, Defendant's counsel cited four specific VUMC physicians claiming this emergency plan could, but not necessarily, prevent them from testifying at trial. Ignoring that Defendants just days before stated to this Court they anticipated no impact from COVID-19, it remains unclear how Defendant's counsel could state to this Court that these four physicians not testifying would be more of a prejudice to the Plaintiff, when Mr. Wright should not know the Plaintiff strategy or which witnesses Plaintiff sees as helpful or hurtful. Even more puzzling was the fact that three other VUMC physicians (Dr. Sternberg, Dr. Wayman, Dr. Brady), all of whom had been deposed and were arguably more important to testify at trial, were not mentioned as having been impacted by the emergency plan. Not only does this suggest they were available to testify at the trial even though they too are physicians actively treating patients still, but Mr. Moor did not raise this issue with the Court once, nor did Mr. Moor or Defendants notify this Court that supposedly Dr. Wayman was no longer an employee of Vanderbilt. Below are a number of items Mr. Moor wrote in his motion to withdraw and Plaintiff's response below.

(1) In Doc 200, Mr. Moor wrote: "*with trial set for September 14, 2021 (Dkt. 161), this case was continued due to the COVID pandemic*"

- This is technically false, the trial was continued because of an oral motion by the Defendants to this Court on September 2, 2021, where Defendant's attorney Mr. Wright claimed his client (Dr. Brady of VUMC) informed him that an emergency plan had allegedly been implemented on **7:26 pm on August 31st 2021**. This plan supposedly mandated every doctor associated with VUMC to be on notice and available at a minute's notice to help due to increases in COVID-19 related hospitalizations. Mr.

Wright informed the Court that the emergency plan impacted four VUMC physicians from testifying so delaying the trial would supposedly benefit the Plaintiff more. These four witnesses cited were: Dr. Amy Chomsky (VA ophthalmology), Dr. Louise Mawn (VUMC ophthalmology), Dr. Scott Stephan (VUMC ENT), and Dr. Howard Baum (VUMC endocrinology). Yet other VUMC physicians (Dr. Laura Wayman, Dr. Donald Brady, Dr. Paul Sternberg), who are in ophthalmology or internal medicine, actively treat patients, and have been deposed by Plaintiff's counsel were **not** impacted by this emergency plan for reasons not mentioned or discussed during the oral motion. This suggests these key witnesses were still available to attend the trial despite the emergency plan, even though they are treating physicians. Mr. Moor was quick to cite COVID-19 in his motion to withdraw, yet Mr. Moor intentionally omitted COVID-19 in the motion to request Dr. Wandel when he was informed of this reason and instructed to include it. Mr. Moor asked Mr. Wright for a copy of the order, yet this order was never provided to the Plaintiff (Exhibit AD)

- Defendants also notified Plaintiff for the first time the day before the oral motion was made to the Court that Dr. Wayman and other members were no longer employees of Vanderbilt, yet this update was not shared with the Court during the oral motion, which Plaintiff thinks could have been material information that should have been shared with the Court to give it the relevant information when deciding whether or not to continue the trial in light of witnesses.

- Whether there was an emergency plan implemented for all VUMC physicians (including ophthalmologists) remains unconfirmed for many reasons like VUMC's web page with COVID-19 information for employees and patients posted information

on **August 31st** about new OSHA standards taking effect on September 7, 2021 with mention of COVID-19 Emergency Temporary Standards. No mention of what the Defendants' asked Mr. Wright to communicate to this Court is mentioned anywhere (Exhibit AE). On September 25, 2021 VUMC president/CEO, Dr. Jeff Balser uploaded a video that discussed updates with VUMC and COVID-19 with a focus on efforts on vaccination and boosting, no mention of any emergency plan had gone into place and/or lifted subsequently. This same webpage posts all COVID-19 hospitalizations at VU Health, and even here this evidence is even more compelling  clearly showing a decreasing number of patients since the time of Defendant's oral motion, which certainly does not line up with supposedly an emergency plan having ever taken place (Exhibit AF).

- The Court should also be made aware that on December 3, 2020, Mr. Moor misrepresented material important when Mr. Moor made a surprise oral motion against his client instructions and the terms of his hiring, stating to this Court that outside state witnesses were supposedly nervous about traveling to Nashville for a trial scheduled for January 5, 2021 at that point. If Mr. Moor was referring to  Dr. Wandel of NYMC/WMC, Dr. Wandel had clearly informed Mr. Moor that he was perfectly comfortable traveling to Nashville in person for trial on January 5, 2021, which was not the response Mr. Moor expected when he asked Dr. Wandel this question before. Why Mr. Moor informed the Court of the exact opposite of the truth, only to also go directly against his client's instructions, and delay the trial, hurting Plaintiff's case, which remains unclear to Plaintiff. Plaintiff has made extraordinary efforts to discuss this and many other issues with Mr. Moor, without success even once

      i.   Also, Mr. Moor was required to keep Dr. Singh up to date about any requests for trial changes, which he violated on December 3, 2020, when he made a surprise oral motion for continuation based on factually incorrect statements to this Court. Even after Mr. Moor's request was granted, Mr. Moor did not establish contact with Dr. Wandel to update him on this timing nor did he accurately reflect this Court the actual reasons for the change in Dr. Wandel's professional obligations, which were in fact directly related to COVID-19 and new hospital leadership that wanted to protect their doctors, like Dr. Wandel, from unnecessary travel. Dr. Wandel informed Plaintiff that he would be required to attend the trial if he was issued a subpoena.

     ii.   Furthermore, Mr. Moor has not updated this court about other witnesses in any capacity, even though he notified the witnesses that he would have done so more than 6 months ago as of the timing of this filing. Mr. Moor claims to this Court that he has supposedly been ready to go to trial with Plaintiff is disingenuous, especially when he has not yet fulfilled his professional or ethical obligations to his client that were fully paid for and moreover as Mr. Moor has misled this Court on numerous materially important issues that have impacted this Court's docket in addition to Plaintiff's professional/personal life.

(2)  Mr. Moor stated: "*counsel has no understanding of why Dr. Singh was ready to go to trial with him in September 2021 and now is not, but counsel cannot represent a client that will not return communications*"

      •   Mr. Moor expressing his opinion whether he thinks Plaintiff is ready to go to trial appears to the Plaintiff as a violation of his privileges, especially with Mr. Moor

assigning one time period vs another based on pure speculation. That said, Plaintiff can share with this Court, if it so wishes, evidence that shows Mr. Moor's claim that Plaintiff supposedly did not return communications is misleading and inaccurate since Mr. Moor actually ignored his client's instructions but did not tell the Court this in his motion to withdraw. Plaintiff has never controlled Mr. Moor, but Plaintiff should not be forced to abandon his wishes/interests no matter how much Mr. Moor abuses and harasses his clients. Mr. Moor ignoring his client's instructions should also not excuse Mr. Moor for misrepresenting the full issue to the Court. Mr. Moor's actions/inactions related to this single topic were also in violation of Plaintiff's fee-arrangement with Mr. Moor, amongst other reasons.

- Plaintiff also has evidence that can be shared with this Court, if it wishes, that shows despite Mr. Moor instructing Plaintiff to write specific items, Mr. Moor did not reply to Plaintiff for multiple months despite repeated attempts by Plaintiff to reach him, Mr. Moor never got back to Plaintiff at all on other items that Mr. Moor requested Plaintiff to compose. Plaintiff is still waiting for responses from Mr. Moor on countless questions, including new questions Plaintiff raised with Mr. Moor near September 2, 2021.

(3) Mr. Moor stated: *"After the continuance, counsel reached out to his client on October 29, 2021, when Defense counsel enquired by email that day whether it was worth trying to resume settlement discussions."*

- Not wishing to waive privileges accidentally, Plaintiff notes Mr. Moor informed this Court and opposing counsel that Mr. Moor "*was fuzzy*" about all the details related to prior mediation and settlement efforts. This was an overstatement on Mr. Moor's part.

- Plaintiff also notes that Mr. Moor advertises himself as a trial lawyer that represents ordinary people in an extraordinary way. Mr. Moor agreed to take Plaintiff's case to trial but since the trial was scheduled at that time for August 25, 2020 (less than 2 months) and he was weary of the mishaps prior counsel made related to damages, he required a large upfront retainer to be paid immediately. Mr. Moor agreed to have Plaintiff's parents pay this amount to him since Plaintiff did not have these funds at that time.

(4) Mr. Moor stated: *"6. Further, counsel emailed the Plaintiff's father, G.B. Singh, with whom counsel has met, on November 11, 2021 when no response had been forthcoming from the Plaintiff. The father replied that counsel had all of Plaintiff's contact information but that he would drop Plaintiff a note the next day. Counsel never heard from the father and calls to the father on December 10 and December 13 were unanswered.*"

- Mr. Moor's statement is misleading, incomplete, and misrepresents interactions with Plaintiff parents intentionally. See attached for declaration from Plaintiff parents (Exhibit AG).

While not in Mr. Moor's motion to withdraw, Plaintiff noticed Defendant's filing in response to Mr. Moor's audio conversations and from that noticed Mr. Moor agreed to items he was expressly forbidden not to do. Plaintiff requests some time to rectify Mr. Moor's material misrepresentations before it makes a ruling. Specifically, Plaintiff requests time to hire new counsel to refile jury trial instructions, exhibit list, positioning on all three audio calls to be admitted to the trial, and Plaintiff's damages brief. All three audio calls are important in order to show the truth about Plaintiff claims.

Plaintiff requests relief in any form that this Court thinks is justified. If Court is amenable to a short continuation, Plaintiff would be grateful for 60 days after February 1, 2022, so that Plaintiff can hire new counsel and correct Mr. Moor's deficiencies in recent filings ahead of trial. Also, if this Court feels the plaintiff going *pro-se* is required for February 1, 2022, Plaintiff, as always, will comply.

Respectfully submitted,

Gobind Singh
1/11/22

SM

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

# Exhibit A

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

Luis Aguilar

_____
Plaintiff

v.

Roland Corporation U.S.,

_____
Defendant

)
)
)
)
)
)
)
)
)
)

**Case Number:** 20-cv-6668

**Judge:** The Honorable Sara L. Ellis

**Magistrate Judge:** Sheila M. Finnegan

As detailed in the following documents
Mr. Moor's unethical and unprofessional behavior
has led me to terminate him as my attorney.
The following documentation makes it clear how
Poorly he has behaved.

# FILED

## SEP 20 2021 SH

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

_Luis A. Aguilar_
04/20/21

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Your honor:

This letter ensures that you are aware of why I choose to terminate Mr. Moor as my attorney. My apologies in advance if I'm doing anything inappropriate by writing this letter directly to you. Mr. Moor has acted in a very unprofessional and ~~untheatrical~~ manner by doing the following: *unethical*

1. Unethically has made racist comments towards Arabs and believes that only Arabs are considered terrorists. As a result, he told me that he will not investigate my claims regarding the defendant's racial slur towards me by calling me a terrorist because I have facial hair and I'm brown.
2. Has disregarded my requested to look into other employment violations and as a result I did not meet the deadline to add additional charges to my complaint.
3. He keeps insisting that blatant racist behavior isn't racist.
4. He has not read my personnel file and gets angry because I keep bringing up the same things repeatedly.
5. In addition to this, I witnessed a significant number of blatant disregards of other laws however Mr. Moor feels that they are not worth discussing.
6. He has told me that my case is small.
7. Mr. Moor has gotten extremely belligerent with me.
8. Has shared my notes that were for him with the defendant.
9. Does not want look into documents provided by defendant prior to my termination and after my termination that were edited or falsified.
10. The things that he put on the Notice Of Motion are incorrect.

These are just a few of the things that are simply wrong; your honor, I'm begin for a little of justice please. I'm at mental breaking point and I'm humbly asking the court that I get a time frame to look for another attorney that will represent me properly.

Sincerely yours,

Luis Aguilar

*Luis A. Aguilar*
*09/26/2021*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS AGUILAR, | ) | |
| | ) | No.   20-cv-6668 |
|         Plaintiff, | ) | |
| v. | ) | The Honorable Sara L. Ellis |
| | ) | |
| | ) | Magistrate Judge Shelia M. Finnegan |
| ROLAND CORPORATION U.S., | ) | |
| | ) | |
|         Defendant. | ) | |

**MOTION TO WITHDRAW**

Edward R. Moor of the Moor Law Office, P.C., respectfully leave to withdraw as counsel for Plaintiff in this case. In support of the Motion, counsel states as follows:

1.     On September 14, 2021 Luis Aguilar informed counsel by email that he was terminated. This announcement was confirmed by subsequent email between counsel and Plainitff.

2.     The termination follows disagreements and difficulties that can only be described, in the interests of preserving client communications, as non-payment of certain invoices relating to costs, and other issues indicating a breakdown in the attorney client relation.

3.     Plaintiff states he has retained new counsel.

4.     Counsel does not believe that the relation between current counsel and Plaintiff can be repaired.

5.     Mr. Aguilar's current mailing address is: Luis Aguilar, 424 Town Place Circle, Buffalo Grove, Illinois 60089. Notice of this motion was given to Mr. Aguilar by email and first class mail, postage prepaid.

04/20/2021
Luis A. Aguilar

WHEREFORE, counsel for Luis Aguilar, Edward R. Moor, respectfully prays that he be

given leave to withdraw as counsel of record for Luis Aguilar.

Respectfully submitted,

/s/     Edward R. Moor

Moor Law Office, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
312-726-6207
erm@moorlaw.net

2

## CERTIFICATE OF SERVICE

I, Edward R. Moor, certify that on September 14, 2021, service of this Notice and the referenced document was accomplished pursuant to ECF as to Filing Users and I also certify that I shall comply with LR 5.5 as to any party who is not a Filing User or represented by a Filing User. I further certify that on September 14, 2021 I served this Notice and the referenced motion on Luis Aguilar by email and by depositing it in the U.S. Mail at 211 S. Clark Street, Chicago, IL 60604 on September 14, 2021, with proper postage prepaid and addressed to Luis Aguilar, 424 Town Place Circle, Buffalo Grove, IL 60089.

/s/ Edward R. Moor

2