06/12/15

**United States District Court**
**Northern District of Illinois**

**Notification of Party Contact Information**

**Directions**: This form must be attached to a motion to withdraw from a case when no other attorney of record has been noted on the docket. A completed form must be electronically filed as an attachment to the motion to withdraw. The address and telephone number of your client must be completed on this form to enable the Court to contact your client in the future if the motion to withdraw is granted.

**Case Number**: 20-cv-6668

**Case Title**: Luis Aguilar

**Judge**: Sara Ellis

**Name of Attorney submitting the motion to withdraw**:

Edward R. Moor

**Name of Client**:

Luis Aguilar

**Mailing address of Client**: 424 Town Place Circle

**City**: Buffalo Grove          **State**: IL

**Zip**: 60089          **Telephone Number**: 571-338-9507

**I attest that the above information is true and correct to the best of my knowledge.**

Signed: _____

**Date**: 9-14-21

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LUIS AGUILAR, | ) | |
| | ) | No.      20-cv-6668 |
| Plaintiff, | ) | |
| v. | ) | The Honorable Sara L. Ellis |
| | ) | |
| | ) | Magistrate Judge Shelia M. Finnegan |
| ROLAND CORPORATION U.S., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>NOTICE OF MOTION</u>**

To:     Kristine S.Phillips, Andre Antonio Sutton, O'Hagan Meyer, LLC, One E. Wacker Drive, Suite 3400, Chicago, Illinois 60601 kphillips@ohaganmeyer.com asutton@ohaganmeyer.com

Luis Aguilar, 424 Town Place Circle, Buffalo Grove, IL 60089

PLEASE TAKE NOTICE that on **<u>September 21, 2021</u>**, at **<u>9:45 a.m.</u>**, or as soon thereafter as counsel may be heard, we shall appear before the **Honorable Sara L. Ellis**, or any judge sitting in her stead in **Courtroom 1403**, at the United States District Court, for the Northern District of Illinois, Dirksen Federal Building, 219 South Dearborn Street, Chicago, Illinois, and shall then and there present **Plaintiff Counsel's Motion to Withdraw**, a copy of which is served upon you together with this Notice.

By: /s/ Edward R. Moor

MOOR LAW OFFICE, P.C.
53 W. Jackson Blvd., Suite 1527
Chicago, Illinois 60604
312-726-6207
erm@moorlaw.net

*Luis A. Aguilar*
*04/26/2021*

 **Gmail**

Louis A <laaguilar9507@gmail.com>

## Concerns Regarding Communication, Process And Client, Attorney Relationship

4 messages

**Louis A** <laaguilar9507@gmail.com>
To: Edward Moor <erm@moorlaw.net>
Cc: Louis A <laaguilar9507@gmail.com>

Thu, Sep 9, 2021 at 10:18 PM

Hello Mr. Moor,

As I mentioned a few weeks ago, I have concerns regarding the discovery process; as I've beginning to dissect all the documents for discovery, I'm also concern with the communication flow from your end. I understand that you are busy, and as you said, "my case is small" I feel this is simply not worth your time; I know this is a business, and revenue is king. That said, it is time that we come to some resolution to figure this out. If you cannot represent me correctly, I respect that; please let me know as soon as you so I can look for someone else to take my case. I apologize if this comes across as abrasive; I need to make this as straightforward as possible to avoid any misunderstandings.

Here is where I'm with this:

I've spent the past 20 months sending you the same information repeatedly due to you not giving exact instructions as to what data you need and how you need it.

In addition to this, some of the comments you have made, in my opinion, are inappropriate, considering my mental state and the nature of this lawsuit. This, in my opinion, has decreased my ability to file my complaint correctly and has put my complaint against Roland Corporation in jeopardy.

I'm sure you come across many people who fake their medical conditions for personal gain; I'm not one of them, and I would give anything!! In exchange for not having to take so many antidepressants, anxiety medications, and high doses of Ibuprofen to have some level of normalcy in my life, in addition to this, I've also been diagnosed with PTSD. The only people who understand how mentally and physically painful this is are the doctors I have seen for years.

Allowing Roland Corporation to get away with this much disregard for so many laws at both the state and federal level is not an option; since I'm not an attorney, I'm not exactly sure how to proceed with this, but one thing is certain I will make sure that all employment violations are out in the open and everyone is fully aware of all these issues. I will make this as straightforward as possible; I will not settle for any amount of money until all the information is out on the open for everyone to review. This is a non-negotiable term for me, and it is not up for discussion with anyone.

Here are some examples of what I'm referring to:

1) **Unreplied emails and text messages via email and text messages**

   a) On our last interaction when I texted you about this very subject you told me that you texted me back, I went back to look at my text history from my cellphone carrier and it shows that you did not texted or called me.

2) **I cannot add all necessary charges to my complaint because you ignore my requests to look into my personnel file and timeline docs.**

   a) I was terminated on 08/09/2019

   b) In January 2020, you asked me to scan the documents and load them into OneDrive because this was your

proffered method.

c)  I scanned my personnel file and timeline on 02/14/2020, as you requested, into OneDrive.

d)  After a few months later, you told me that this would not work because "OneDrive does not work for you."

e)  You then asked me to bring you the physical documents; I did so accordingly.

f)  After a few months, you told me that I needed to remove the first two pages because they had my personnel comments and descriptions of events; I went back to your office, picked them up, took the first two pages.

g)  After that, you asked me to scan them into Dropbox.

h)  In an attempt at having everything as organized a possible, I titled everything and added special characters.

i)  You then told me that the special characters prevented the docs from synching into your hard drive; this took a few more months for you to say to me.

The delay of all these issues led to me missing the deadline to file a lawsuit with all of the charges that applied.

**Is this fixable?**

**3)  Questions**

a)  Is an employer allowed to edit or falsify documents during or after the termination of employment?

b)  Is an employer legally allowed to let employees traffic drugs throughout the US for personal use or otherwise?

c)  Is the defendant allowed to edit or withhold any documentation?

d)  Is an employer allowed to ask employees to commit crimes that would violate any anti-trust laws?

**If I have proof of all these things, is it my duty or in my best interest to report these issues to the FTC, FBI, or local government?**

**4)  When I was answering the defendant's questions, I said that I was called a terrorist often. A Roland team member got up and yelled it out during a company event in front of Jay Wannamaker (CEO at the time), who heard the Roland team member yell the racial slur.**

a)  This was part of my initial complaint that Matthew Stein wrote.

b)  When I replied to the plaintiff's answers, I told you I wanted to highlight the event by saying who the team member yelled this out was and when it happened. In addition to this, I said to you that people would call me a terrorist because of my skin color and that I have lots of facial hair.

c)  You then reply that you would not include this because "only Arabs are considered terrorists"

**I respectfully disagree with your comment and would like you to add this to my lawsuit. The legal term of terrorist, terrorism, etc., applies to people's actions and is not specific to ethnicity or origin.**

7)  I've asked you several times how you came up with the dollar amount for my lawsuit and have not gotten an answer.

   a) Can you let me know how you came up with this figure?

**8) In my contract, you said that you would sue Dave Rivard?**

   a) This has not happened

   b) I've asked you about this several time and you have not replied.

**Will you file a lawsuit against Dave Rivard?**

9) I explained to you that Roland Corporation's human resources department dropped me from taking the employment racial and sexual harassment courses mandated by the state of California two months before I was fired.

   a) You said that "this was irrelevant because I knew that I was racially harassed and retaliated against.

**Would the defendant be able to  successfully argue this in front of a jury?**

**10) In my contract, you said that you filed a lawsuit against Dave Rivard.**

   a) You have not filed a lawsuit against Dave Rivard.

   b) You have not replied to any of my requests regarding whether you will file a lawsuit against Dave Rivard or not.

**11) <u>Matthew Stein made a few spelling errors in my complaint, and I sent a request to Mathew and you a few times to correct the grammar errors.</u>**

**Well, this be updated at any point?**

**12) <u>Sleep Apnea Issues</u>**

   a) I explained that I passed out during an event at Roland due to a lack of sleep due to constant retaliation and harassment.

   b) I was medically diagnosed with severe sleep desaturation and severe sleep apnea. This was exacerbated by Roland's constant retaliation that in which my workflow that is resulting in 0 hours of sleep for over 18 months.

   c) This is my opinion; it is in the medical records.

**Can you add this to my complaint?**

13. Am I allowed to discuss this with any media outlet?

14. The cost of the process is way much more than we originally dicussused. Am I allowed to create a fundme account and tell my story?  this might allowed to pay my current bill in full.

**Edward Moor** <erm@moorlaw.net>                                           Thu, Sep 9, 2021 at 10:45 PM
To: Louis A <laaguilar9507@gmail.com>

Luis:  the last email exchange we had was to set up a conference and then you cancelled.

I do not think your case is small.  It is large and unwieldy.  I am a trial lawyer.  As I told you many times, I need your help processing the vast collection of material you kept from your employment.  I am not getting that help.  I have hired a paralegal to code documents because you did not do it as you said you would.  She will at least enable me to finish our production.  Along the way she has been sending me documents related to our harassment claims, and in truth the material that she sends me, like the material you have pointed out, does not clearly show racial harassment and can be read as work place personality and work style issues, which is a defense to your case.  The main problem with your case is that you never actually complained about racial harassment until the tail end of your employment, and Roland papered your file so that it looks like personality issues.  When I ask to identify the racially harassing emails, comments, etc. you have pointed to very few emails or pictures.  When I ask you to perform tasks to assist in the litigation, you often do the wrong thing.  Further, you have not paid the costs of NextPoint or 4 Discovery as you agreed to do.

If you want to go to new counsel, that is fine with me.  Let me know who and I will send the material to him and transfer NP to him.  If you do not, then you should meet me as you asked to do before you cancelled.

I am not a social worker or counselor and it is not my job to make you feel good in general.  It is my job to prepare the case for trial and in a case with hundreds of thousands of electronic files I need you to help as you lived through it.  This will only work if you can do as I ask.  If you are uncomfortable then you should promptly get new counsel.

_____

Edward R. Moor

312-726-6207

www.moorlaw.net

**Louis A** <laaguilar9507@gmail.com>                                           Fri, Sep 10, 2021 at 8:41 AM
To: Edward Moor <erm@moorlaw.net>

There is clearly a level of miscommunication that is preventing the flow of the process. I don't recall us setting up a meeting and me blowing off, generally we send invites via google calendar or zoom.
There isn't one for the past few months. That said let's hit the reset button and keep moving forward.

I'm working and currently doing about 100 hours per week; give me until the weekend and I will answer this email.

Have a great weekend,

Kind regards,

Luis Aguilar
Cell: 571.338.9507

---

**Louis A** <laaguilar9507@gmail.com>                                          Sun, Sep 12, 2021 at 4:06 PM
To: "Edward R. Moor" <erm@moorlaw.net>

Hello Mr Moor,

 I want us to keep to working together and I'm humbly request that we simply communicate as much as possible. I'm dealing with PTSD as a result of all my previous employer's behavior and I feel like I'm at mental break point because I feel that they will get away with this.

> On Sep 9, 2021, at 10:45 PM, Edward Moor <erm@moorlaw.net> wrote:
>
> Luis:  the last email exchange we had was to set up a conference and then you cancelled.

- There is no message history of any time that shows we scheduled any conference call and I cancelled.

> I do not think your case is small.

- But you did say it in our last face-to-face meeting at your office.

> It is large and unwieldy.  I am a trial lawyer.  As I told you many times, I need your help processing the vast collection of material you kept from your employment.  I am not getting that help.

- What is that you need that I'm not helping with?

> I have hired a paralegal to code documents because you did not do it as you said you would.  She will at least enable me to finish our production.  Along the way she has been

sending me documents related to our harassment claims, and in truth the material that she sends me, like the material you have pointed out, does not clearly show racial harassment and can be read as work place personality and work style issues, which is a defense to your case.

- A video of me being racially profiled as an illegal migrant coming to us to cut grass, a picture sent to everyone by the CEO with a pic of Mexican farmer, my supervisor saying that I'm dirty because of the way that I raised, being passed on for an award to give to another employee who is white, asking me to drive all night by sayin in an email that it is not fair to white employee saying that I'm a stumbling alcoholic while allowing people do bring drugs into my car and me complaining about it, allowing people do to do cocaine without even question it, saying that I'm wireless driver but allowing people do drive with a suspense driver's license, calling me a terrorist because of the way that I look in public because of the way that I look, falsifying documents in my personnel file to avoid paying me  a bonus this in addition to all the other things that are in personal file it is not racism correct?

The main problem with your case is that you never actually complained about racial harassment until the tail end of your employment, and Roland papered your file so that it looks like personality issues.

- I spent 18 months complaint about this and this and HR just simply excluded all of these information from discovery.

When I ask you to identify the racially harassing emails, comments, etc. you have pointed to very few emails or pictures.   When I ask you to perform tasks to assist in the litigation, you often do the wrong thing.  Further, you have not paid the costs of NextPoint or 4 Discovery as you agreed to do.

Can we discuss what is that you need me to do.

If you want to go to new counsel, that is fine with me.

I rather not, but I honestly am having a mental breakdown because I feel that Roland Corporation is going to get away with this, this extremely traumatizing to me and as result I'm having to deal with PTSD. I really do not want keep rehashing this with anyone.

Let me know who and I will send the material to him and transfer NP to him.  If you do not, then you should meet me as you asked to do before you cancelled.

Sure when Is it a good time for us to meet?

I am not a social worker or counselor and it is not my job to make you feel good in general.

I understand that completely and so I feel that I have complied with all of your requests.

It is my job to prepare the case for trial and in a case with hundreds of thousands of electronic files I need you to help as you lived through it. This will only work if you can do as I ask. If you are uncomfortable then you should promptly get new counsel.

OK lets meet up as soon as possible. What is a good day and time?

**Edward Moor <erm@moorlaw.net>**                                                   1/28/2020 8:39 PM

# RE: Aguilar – Moor Contract.pdf

To Luis Aguilar <laaguilar9507@comcast.net>

Luis:  Here is the executed contract. Yes, you should not have communications with your prior employer.

I need your timeline and personnel file.  Later I will need ALL email, documents etc that you have related to your employment.

_____

Edward R. Moor
Moor Law Office, P.C.
One North LaSalle Street, Suite 600
Chicago, Illinois 60602
(312) 726-6207
erm@moorlaw.net
www.moorlaw.net

**Confidentiality Statement.** The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please notify me immediately by telephone at 312.726.6207 and/or by reply e-mail.

**From:** Luis Aguilar <laaguilar9507@comcast.net>
**Sent:** Tuesday, January 28, 2020 11:57 AM
**To:** Edward Moor <erm@moorlaw.net>
**Cc:** Luis Aguilar <laaguilar9507@gmail.com>
**Subject:** Aguilar - Moor Contract.pdf

Hello Mr. Moor,

    Thank you taking the time to meet with me and taking my case. I would like to move forward, however I do have one stipulation to complete this contract. Considering my previous employer's behavior, I want to have 0 contact with anyone from Roland Corporation and I will forward any requests directly to your firm. I'm still taking medication for severe anxiety and antidepressants. Communicating with my previous employer has severe effects on my mental and physical health.  When you get my medical charts and get a chance to speak to my therapist and psychiatrist, you will see that I'm not exaggerating with how detrimental this has been to me.

If my request is acceptable, we should move forward as soon as possible; here is what I have been working on.

04/20/2021

I'm organizing the data in a timeline format; It will be put into a shareable document so that we can work on it together; this should maximize efficiency and decrease the amount of time looking for data.

Any questions, please feel free to call me at 571.338.9507.

## Personnel File And Your Request For Information

- I'm working on the information that you requested and will send it as soon as possible.
- My personnel file; 11.6 years of documents has been organized and titled by document type.

Proof Of Previous Employer's Behavior, False Accusations And Racist Behavior.

- I'm currently working on decrypting my iPhone cloud data so that I can download every text message that I've received.
- I'm printing 7 years of detailed expense reports with all pertaining information including copies of receipts.
- I backed up all of my employee emails, there is about 250 gigabytes of documentation in it and I will turned into PDF files and store them in a chronological order.

## Communication Efficiency:
I can use any platform that works best for you.

- Skype
- Facetime
- Texting

My schedule is as follows:
## Monday to Friday

- 5:30 AM - 6:30 AM: Wake and start working on day trading
- 7:30 AM: Drop my son off at school
- 8:30 AM - 1:PM: Day Trade
- 1:00 PM -10:00 PM: Work on employment issue.

## Saturday and Sundays

- I generally spend about 6 hours, both days, working on putting employment information together.

## Physical Document Processing

- I have 8 terabytes of space to house as much information a possible.
- I can print about 3000 pages per month
- I have a 600 DPI document scanner so that it can catch editing or document falsification.

## Document Sharing

- I noticed that you are using outlook and will send all shareable information from OneDrive.
- If there is any other platform you would like to use please let me know.

I want to make the process as smooth and efficient as possible so please feel free to reach out to let me

know what you need from me.

---

- Moor Edward.vcf (5 KB)
- Aguilar - Moor Executed Contract.pdf (830 KB)

**LUIS AGUILAR <laaguilar9507@comcast.net>**

7/28/2020 12:48 PM

Re: Done

To Edward Moor <erm@moorlaw.net>

Ok just sent you a link

Sent from Xfinity Connect App

------ Original Message ------

From: Moor Edward
To: LUIS AGUILAR
Sent: July 28, 2020 at 12:41 PM
Subject: RE: Done

Did not get.

_____

Edward R. Moor
312-726-6207
www.moorlaw.net

**From:** LUIS AGUILAR <laaguilar9507@comcast.net>
**Sent:** Tuesday, July 28, 2020 12:34 PM
**To:** Edward Moor <erm@moorlaw.net>
**Subject:** Done

Just sent it,

Sent from Xfinity Connect App

# Exhibit B

• **Summary**: 2014/2015 — Bottom Right: In the national ACGME survey for resident physicians, a survey which asks questions related to resident work hours, teaching opportunities, program strengths, program weaknesses, and other comments. Resident Gobind Singh answered these questions honestly and openly, as indicated, requesting help/accommodation. Residents Jeanine Ling and Viraj Mehta indicate they will be "lie" or "saying never." Top left picture: Same text message. Ian Thompson identifies Respondent Program director, Dr. Wayman, will "think it was u Gobind" in the event of any reported criticism to ACGME. Bottom Left Picture: Gobind Singh sharing his concerns with other residents, also shared with town hall meeting with all of Respondents. Note all formal disciplinary events on Gobind Singh BEGAN soon afterward this survey and content was submitted.

Verizon 📶     7:13 PM     🌙 🔋 61%

## New Group MMS     Can...

Jeanie Ling Vandy Ophtho & 3 more...



How are you guys responding

Ian Thompson 7th Day Aventis Ophthalmology vandy

> Wayman has no way of knowing. But shell know its u. The obky way it worms is if we all do it

> Or if we all had 90plused on our okaps

> Meaning she wont have the identification data. Buy she ll think it was u gobind

> Also waynab is upcoming president of association of program directors. Shr would be really unhappy

> So the faculty can veto it?

> Lets pray really hard.

It's disappointing. Home call is not really home call, it's hospital call all night. The system is not following the rules and everyone is ignoring it when everyone knows it

Jeanie Ling Vandy Ophtho

 Jeanie Ling Vandy Ophtho

JL   Lie

I am actually responding very often Niraj said to be honest

Viraj Mehta Vandy Ophtho

VM   Um yea I'll be saying never

   

Text Message

Jeanie Ling Vandy Ophtho

> It is very disappointing

Aug 13, 2014, 8:17 AM

Ian Thompson 7th Day Aventis Ophthalmology vandy

> I think what this program needs is definitely more work outside of clinic.

CONFIDENTIAL

Jeanie Ling Vandy Ophtho

**JL** Husband will do it q4 h

Tomas Moreno Vandy Ophtho

**TM** Whatever

Jeanie Ling Vandy Ophtho

She says qtip to remove the eyeid discharge

**JL** Not to sweep fornices

Tomas Moreno Vandy Ophtho

**TM** Sounds good

Jeanie Ling Vandy Ophtho

Her fornices have been reasonably clean

**JL** Most of the gunk is from eyelid margin

Ian Thompson 7th Day Aventis Ophthalmology vandy

Honestly i think i mighy jave thrown up

**O** She looks terrible

   Text Message 

Ian Thompson 7th Day Aventis Ophthalmology vandy

**O** Heavy is my crown

Today was awful at the va. Techs started shovong patients in rooms. Me and melayna had to have a talk after she shoved a yrain wreck in my room and then opened my door every 10 minutes to "see if i needed anything" i hate when they start doing that

I lost that battle anyway and ended up pologizing for losing my cool. At least i know we all have those days when they r forcing us to go at breaknexk, barely safe amd reliable speed

**O**

---

Jeanie Ling Vandy Ophtho

**JL** No, just 20/20

Ian Thompson 7th Day Aventis Ophthalmology vandy

I heard chpmsky is pissed about that bilateral corneal ulcer patient and the wording of my note

**O**

Jeanie Ling Vandy Ophtho

Yea

U wrote a chatanooga consult report

And that u mentioned rejected by VEI

Because of no preauthorizayion form

**JL** And that dr. Lindsey was not notified

   Text Message 

Ian Thompson 7th Day Aventis Ophthalmology vandy

I jist saw thw craziest patient. I feel betrayed. U guys should leave doxumentation for the next innocent resident if the patient is crazy.

Of course im only halfway joking. I do wish there was some way to not on the paper chartm. Patient is crazy do not believe any of the verbal history. Just examine eyes

**O**

---

### Summary:

Four images are shown here. Top left shows resident physicians Ian Thompson, Jeanine Ling, and Tomas Moreno discussing an eye-patient's care. Ian Thompson's evaluation of the patient suffering from her eye disease prompted him to say unnecessary judgmental remarks that were not part of her care . His statements "Honestly I think I might have thrown up" and "she looks terrible" raise important professionalism questions. Top right most image identifies Attending Dr. Chomsky, representing the Respondent, being "pissed" with Ian Thompson's professional decision how to manage a patient. Image right below this one identifies Ian calling one is his patients "craziest" and "do not believe any of the verbal history" Lower left image shows Ian self-admitting "losing 'his' cool" during clinic against ancillary staff offering to help. This resident did not receive any formal disciplinary actions for any of these despite representatives of the Respondent being aware of them.

CONFIDENTIAL



●●●●● Verizon LTE     6:20 PM     🌙 @ 40% ▪️

**New Group MMS**     Cancel

To: Jeanie Ling Vandy Ophtho & 3 more…

Jul 14, 2015, 8:19 AM

Ian Thompson 7th Day Aventis Ophthalmology vandy

I missed it but i fwel like i came in on the tail end of a rant. Was mawn mad that the patient was force ducted

Viraj Mehta Vandy Ophtho

Yep

Ian Thompson 7th Day Aventis Ophthalmology vandy

Damn. Did she say my name?

Viraj Mehta Vandy Ophtho

Apparently had a hyphema

Tomas Moreno Vandy Ophtho

She said Zhangs name

Mawn and her analogies

Jeanie Ling Vandy Ophtho

Good job!

Ian Thompson 7th Day Aventis Ophthalmology vandy

Dr mawn needs to learn how to say

    Text Message 

• July 2015 — Dr. Thompson's care of a patient, who was force ducted for extraocular movement when he missed them having a hyphema, which is a contraindication for this procedure because it can cause patient harm.

**Summary:**

Image to the left shows resident physician Ian Thompson self-admitting to missing a diagnosis in a patient, a hyphema. This condition is a contraindication for performing the procedure of forced ductions of exocular muscles due to it increasing risk for patient harm and vision loss. Dr. Thompson performed on the patient. Dr. Mawn is one of the attending physicians for this patient, also representing the Respondent, Vanderbilt University. As indicated by residents Viraj Mehta and Tomas Moreno, Dr. Mawn was clearly aware of this diagnosis, mad about it occurring, and even brought up the senior resident's name, Dr. Zhang, who was the senior resident for Ian Thompson. These residents did not receive any formal disciplinary actions despite the Respondent having been clearly made aware of this mistake where the patient received a contraindicated procedure.

CONFIDENTIAL

• Another incident involving Dr. Thompson also occurred in July 2015 with a female patient who experienced visual field deficits and headaches. Dr. Thompson recommended her to receive an invasive test, lumber puncture, and MRI. Dr. Bond is the senior attending on this case representing the Respondent and identifies that this patient was misdiagnosed and did not need invasive testing or unnecessary expensive imaging.

●●●●● Verizon LTE    6:22 PM    ◐ ⍟ 40% ▮▭

**New Group MMS**    Cancel

To: Jeanie Ling Vandy Ophtho & 3 more...

Who is on tonight.  Viraj?

I got pwned today.  Ran through a last minute iih consult.  Girl shows yp with visual field deficit negatice mrv. Headaches that worsend after her pregnancy and tvos.

I saw grade 2 frisen. Thru undilated pupil.  Presented her to bond.  As iih. Needs lp and mri.  Bout to giddyon up.

Bond pulls out direct ophthalmoscope.

And looks at moms optic nerves. Then Asks me to take another look

Psuedopapillodema.  Optic disc druse. Bu direx ophthalmoscopy

 PWNED

*Viraj Mehta Vandy Ophtho*

Yep me

Jul 10, 2015, 7:55 AM

     Text Message  

**Summary:**

Image to the left shows resident physician Ian Thompson self-admitting to incorrectly recommending invasive testing and medical imaging in a pregnant patient. Dr. Bond is one of the attending physicians for this patient, also representing the Respondent, Vanderbilt University. As indicated by resident Ian Thompson, Dr. Bond was clearly aware of this misdiagnosis, asked the resident to reexamine the patient, and decided upon a different diagnosis, one that does not require invasive testing, especially one that deserves special consideration since she was pregnant. This resident did not receive any formal disciplinary actions for recommending the incorrect and unnecessary tests that posed a risk for a pregnant patient. The Respondent was clearly aware of this mistake and the resident did not receive any formal disciplinary actions.

In a different scenario with a differ patient and resident, when the Respondent claimed Gobind Singh made recommendations for a patient that were unnecessary, Gobind Singh was placed on formalized correction action. Refer to Appendix I of Timeline, Bullet 4.

CONFIDENTIAL

**July 2015** — Dr. Thompson overlooking of posterior tenting on his patient's posterior globe upon imaging review, creating a danger to the patient and irreversible vision loss;

●●●●● Verizon  LTE          6:24 PM          🌙 ⌾ 40% 🔋

**New Group MMS**          Cancel

To: Jeanie Ling Vandy Ophtho & 3 more...

(O) Funny.  I am the senior for consults

Jeanie Ling Vandy Ophtho

(JL) Ian i just got a page from Id there is concern of proptosis

Ian Thompson 7th Day Aventis Ophthalmology vandy

(O) Yea.  That is probably why her mot llity is restricted

Jeanie Ling Vandy Ophtho

(JL) Im sooo sleepy

Jul 6, 2015, 3:06 PM

Jeanie Ling Vandy Ophtho

(JL) I was so sleepy post call in Dr. Mawn's neuro clinic, i did nothhing right

Ian Thompson 7th Day Aventis Ophthalmology vandy

(O) I totally glossed over posterior yenting of mccays globe.  Geeez. Mawn is going to eat me alive

Jul 6, 2015, 5:49 PM

Ian Thompson 7th Day Aventis Ophthalmology vandy

📷  ✏️  (A)  ⟨ Text Message ⟩ ⬆

**Summary:**

Image to the left shows resident physician Ian Thompson self-admitting to overlooking the imaging of Patient M        eyeball, referred to as globe, and missing an important diagnosis. The diagnosis of posterior tenting is a serious condition indicating immediate vision loss that requires emergent evaluation to identify a potential reversible cause to prevent further vision loss. Overlooking this diagnosis in a new patient poses serious harm and irreversible vision loss to the patient. Dr Mawn, mentioned in this text message, again represents the Respondent and is the attending physician for this patient. As indicated by resident Ian Thompson, Dr. Mawn was clearly aware that Ian Thompson missed this diagnosis. This resident did not receive any formal disciplinary actions for missing an important diagnosis in a patient that likely caused irreversible vision loss. The Respondent was clearly aware of this mistake and the resident did not receive any formal disciplinary actions.

CONFIDENTIAL

●●●●● Verizon 📶    7:19 PM    🌙 ⊕ 67% ▭⚡

**New Group MMS**    Cancel

To: Jeanie Ling Vandy Ophtho & 3 more...

Ian Thompson 7th Day Aventis Ophthalmology vandy

Missing total keds and having to file veritas reports

Doing a four dot worthh test when ur senior specifically asked u to do a red green duichrome and not knowing thw difference

Tomas Moreno Vandy Ophtho

To be fair.. That was also missed by a senior

Ian Thompson 7th Day Aventis Ophthalmology vandy

Missing. An open globe because you dont actually know how to seidel. Lol

Tomas Moreno Vandy Ophtho

That happened?

Ian Thompson 7th Day Aventis Ophthalmology vandy

Not really but kind off. I called a corneal lac partial thickness and thought i seideled the hell out of him

Turns out it was partial thickness and just at the limbus it becane full. And i wouldv known if i had burped the

   Text Message 

• **Summary**: Dr. Thompson & Dr. Moreno discuss the missing of an open-eye ball diagnosis in a patient by Ian Thompsn and his senior resident, a diagnosis that requires emergent surgery to close and one which was picked up by an attending physician with the Respondent later point. This was when the diagnosis was recognized, with time lapses that likely caused the patient'eye damage, increased infection risk, and vision loss. In addition, this text message shows multiple other clinical errors or disobeying a senior's instruction (ex: Missing total KEDs, doing the wrong test asked by a senior) self-admitted by Ian Thompson, all of which are co-signed by the Respondent on patient's clinical chart. This resident did not have any formalized disciplinary action imposed on him for any of these events.

•••• Verizon LTE     6:26 PM     @ 39% ▇

## New Group MMS     Cancel

To: Jeanie Ling Vandy Ophtho & 3 more...

Jeanie Ling Vandy Ophtho

**JL**   Bad! Poor ▢▢▢▢ is tid now

Tomas Moreno Vandy Ophtho

What!?

**TM**   This is ridiculous

Jeanie Ling Vandy Ophtho

**JL**   She got worse today cuz icu d/c'ed vanc yesterday accidentally

Tomas Moreno Vandy Ophtho

Vanc drops?

**TM**   But tid is so useless... Bid was pretty useless

Jeanie Ling Vandy Ophtho

For removing her pseudomembrane

REDACTED -- HIPAA Protected PHI (photograph)

    

• **Summary**: A very serious incident involving residents Dr. Moreno and Dr. Ling regarding a patient eventually diagnosed with bilateral necrotizing fasciitis, which initially was missed by resident physicians, which was known by the respondent not only for this case, but for another patient for which a morbidity and mortality conference was presented.

As shown in the left, after the diagnosis was made, there was an accidental discontinuing of a vital medication, vancomycin, which caused serious life-threatening harm to the patient and required prolonged hospital stay and surgical intervention. No formalized disciplinary action was placed on any resident.

●●●●● Verizon 🔗     8:50 PM     🌙 ⓐ 89% ▰▰▰

## New Group MMS    Cancel

To: Jeanie Ling Vandy Ophtho & 3 more...

Nightfloat is cool in its current state , and while there r some problems, i hope they arent fizzed

Chompskey called some Immediate phone call with Chris and Wayman this AM about night float, anyone heard what's going on?

Oct 15, 2014, 4:40 PM

Ian Thompson 7th Day Aventis Ophthalmology vandy

I think they r trying to ctack down on lates. I have two official lates. If I get two more punishment ensues. Let me serve as warning

You have been warned

Punishment equals extra grand rounds or extra call

But you're not at VA?

Ian Thompson 7th Day Aventis Ophthalmology vandy

Draconian in effect, but understandable. Ophthalmologists hate tardiness

     Text Message   

**Summary**: This text message conversation between residents identifies program concerns for resident's professional behavior being late or otherwise. Additionally, it identifies "punishment" equating to presenting "extra grand rounds or extra call." This type of punishment was placed on residents Ian and Viraj. However, this sort of "punishment" was bypassed when professionalism concerns were claimed about Gobind Singh by the Respondent.

CONFIDENTIAL

• **Summary**: This text message identifies that resident Zhang was instructed by Dr. Kohanim of the Respondent to talk to attending physician also of the Respondent, Dr. Mawn, about a patient and their care, followed by writing of a note in the patient's chart about the patient's plan of care afterwards. Resident Jeanie Ling clearly identifies that Zhang refused to follow instruction and did not inform Dr. Mawn. This lapse in communication can be considered unprofessional and put the patient at risk by not receiving care from the specialist that was needed for his care, as requested by Dr. Kohanim of the Respondent. No formalized disciplinary actions were placed on resident Matthew Zhang.

---

●●●●● Verizon 🔋      7:54 PM      🌙 ⊕ 91% ▭ ⚡

## New Group MMS    Cancel

To: Jeanie Ling Vandy Ophtho & 3 more…

> Yea there was some miscommunication of who would tell Dr Mawn… Apparently no one did, until late last night when Kohanim asked why dr Mawn didn't write a note

 VM   No worries all taken Care of now

Jeanie Ling Vandy Ophtho

 JL   Kohanim told zhang that she needs to talk to mawn. So zhang didn't. I signed out to Gobind thats it.

> what's the MRN again?

Viraj Mehta Vandy Ophtho

> Yea apparently Kohanim didn't… So Zhang got in trouble and since I was present, I had a long Mawn lecture too

> I don't know MRN, but she's listed in the peds list panel

CONFIDENTIAL

# Exhibits C-D

| | |
|---|---|
| **From:** | Jenious, Anita J |
| **Sent:** | Tuesday, September 08, 2015 1:58 PM |
| **To:** | Marshall, Damian P |
| **Subject:** | FW: Dr. Gobind Singh |

**From:** Brady, Donald Wayne
**Sent:** Tuesday, September 08, 2015 11:48 AM
**To:** Wright, Sheree C; Jenious, Anita J; Yarbrough, Mary
**Subject:** RE: Dr. Gobind Singh

He is not on medical leave.

**From:** Wright, Sheree C
**Sent:** Tuesday, September 08, 2015 11:46 AM
**To:** Brady, Donald Wayne; Jenious, Anita J; Yarbrough, Mary
**Subject:** FW: Dr. Gobind Singh

Please see below.  When is his medical leave schedule to end?
Sheree

 **VANDERBILT** UNIVERSITY

Sheree C. Wright
Senior Associate General Counsel
Office of the General Counsel
Vanderbilt University
2100 West End Avenue, Suite 750
Nashville, TN  37203
Phone:  (615) 322-5158
Fax:      (615) 343-0488

sheree.c.wright@vanderbilt.edu

This e-mail and any attachment thereto is intended only for use by the addressee named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachment thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by telephone and permanently delete the original and any copy of any e-mail and any printout thereof.

**From:** Callison, John C
**Sent:** Tuesday, September 08, 2015 11:05 AM
**To:** Wright, Sheree C
**Subject:** FW: Dr. Gobind Singh

FYI

John C. Callison
Senior Deputy General Counsel
Vanderbilt University
(615) 322-8613
John.callison@vanderbilt.edu

1

CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient and may contain information that is subject to the attorney/client privilege or attorney work-product privilege. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error, please notify us immediately by return email and promptly delete this message and its attachments from your computer system. Transmission and receipt of this email in error does not constitute a waiver attorney-client or work product privilege.

**From:** Richard Braun [mailto:rbraun@braunlawassociates.com]
**Sent:** Friday, September 04, 2015 1:36 PM
**To:** Callison, John C
**Subject:** Dr. Gobind Singh

Dear John,

I have been retained to represent Dr. Singh, a resident in Ophthalmology who has experienced some medical issues which have impacted his performance and concentration and which have now created the potential for serious discipline. I will try to attach the letter from his treating physician or will fax it to Nancy soon.

Pursuant to the Americans with Disabilities Act, we are requesting a reasonable accommodation that at such time as his physician certifies Dr. Singh is fit for duty that his shifts be limited to 12 hours in duration with 12 subsequent hours off duty until such time as he is fully recovered.

We also request that any reference to potential discipline or performance issues be expunged from his record.

Let me know if you have any questions.

Richard


Richard J. Braun
Braun & Associates, PLLC
501 Union Street, Suite 500
Nashville, Tennessee 37219
Telephone:  (615) 259-1550
Facsimile:    (615) 259-2524
Email:  rbraun@braunlawassociates.com
Website:  www.braunlawassociates.com



# Exhibit E



Gobind Singh <gobind.singh@gmail.com>

---

## Fw: Accommodation Request Forms

**GB Singh** <gb7495@hotmail.com>                              Mon, Jun 10, 2019 at 11:09 PM
To: Gobind Singh <gobind.singh@gmail.com>

---

**From:** Singh, Gobind <gobind.singh@vanderbilt.edu>
**Sent:** Friday, September 11, 2015 8:07 PM
**To:** GB Singh
**Subject:** Fwd: Accommodaon R  equest Forms

Sent from my iPhone

Begin forwarded message:

> **From:** "Marshall, Damian P" <damian.p.marshall@Vanderbilt.Edu>
> **Date:** September 11, 2015 at 4:31:17 PM CDT
> **To:** "Singh, Gobind" <gobind.singh@vanderbilt.edu>
> **Cc:** "Beach, Shauna" <shauna.beach@Vanderbilt.Edu>
> **Subject: Accommodation Request Forms**
>
> Gobind –
>
> If you would like to request a workplace accommodaon on acc  ount of a disability, please complete the Reasonable Accommodaon R  equest Form (a  ached).  Also, your physician or care provider should fill out Secon II of the Medic  al Informaon R  equest Form (a  ached).  Once EAD receives both completed forms, we can then evaluate to determine if an accommodaon c  an be made.
>
> If you have any quesons, do not hesit  ate to contact me.
>
> Thank you,
> Damian
>
> **Damian Marshall**
> Title IX Compliance Manager
> Equal Opportunity, Affirmav  e Acon, and Disability Ser  vices Department
> Vanderbilt University
> GPS Address:  110 21st Ave. S., Nashville, TN 37203
> Office Locaon: Bak  er Building, Ste. 808
> Internal Mail:    PMB 401809
> Office Number: 615-322-4705
> Fax Number:    615-343-4969

---

**4 attachments** — Download all attachments

📄 **Medical Information Request Form.pdf**
31K View as HTML Download

📄 **ATT00001.htm**
1K View Download

📄 **Reasonable Accommodation Request Form.pdf**
82K View as HTML Download

📄 **ATT00002.htm**
1K View Download

**Subject:** Fwd: ENT Surgery Request
**Date:** Sunday, November 16, 2014 at 11:29:02 AM Eastern Standard Time
**From:** Estopinal, Chris
**To:** Singh, Gobind

Here is what you need to do. Please request sick leave on your form, get it signed by your ags,  and then I will sign.

Thanks
Chris

Sent from a mobile device; please excuse brevity and typos.

Begin forwarded message:

> **From:** "Wayman, Laura L" <laura.l.wayman@Vanderbilt.Edu>
> **Date:** November 16, 2014 at 7:53:14 AM CST
> **To:** "Estopinal, Chris" <chris.estopinal@Vanderbilt.Edu>
> **Cc:** "Gilgallon-Keele, Nora M" <nora.m.gilgallon-keele@vanderbilt.edu>
> **Subject: Re: ENT Surgery Request**
>
> Sick leave and yes he needs a form. Have him aNach the nite stang ther  e is no other opon.
> Thanks
>
> Sent from my iPhone
>
> On Nov 15, 2014, at 11:16 PM, Estopinal, Chris <chris.estopinal@Vanderbilt.Edu> wrote:
>
>> Gobind needs dec 3, 4, and maybe 5 off for an operaon. Wha  t does he need to do to arrange this?
>>
>> I imagine he needs to get a form signed but will this come from vacaon?
>>
>> Thanks
>> Chris
>>
>> Sent from a mobile device; please excuse brevity and typos.
>>
>> On Nov 15, 2014, at 7:38 AM, Wayman, Laura L <laura.l.wayman@Vanderbilt.Edu> wrote:
>>
>>> Sorry, but can you please outline as simply as possible what is needed.
>>>
>>> I am juggling 5 things right now and need minimal clu  er.
>>>
>>> Thank you
>>>
>>> Sent from my iPhone
>>>
>>> On Nov 14, 2014, at 10:44 PM, Estopinal, Chris

<chris.estopinal@Vanderbilt.Edu> wrote:

Dr. Wayman, what is the typical procedure here? Gobind starts night float Dec 14 and has one call day Dec 6 that I imagine he could swap with somebody. The VA should be covered unless I am also out for paternity leave, and we have people we can pull. I imagine he'd have to use vacation, so with his day he missed 2/2 flight issues earlier in the year would be days 2 and 3 I think

**From:** Singh, Gobind
**Sent:** Friday, November 14, 2014 1:04 AM
**To:** Estopinal, Chris
**Cc:** Wayman, Laura L
**Subject:** RE: ENT Surgery Request

Hi Dr. Wayman,

Thank you Chris for your email and for helping me make this happen so I can get back to breathing through my nose.

I'm sorry Dr. Wayman, I know you have been busy since you got back but I was hoping I could follow up to my earlier email about my surgery request (please see below). Unfortunately there are no other dates available when I checked this week either. Please let me know how you would like me to proceed.

Sincerely,
Gobind

_____

Gobind Singh, MD, PhD
Vanderbilt Ophthalmology - PGY2
gobind.singh@vanderbilt.edu | pg 835-0450

**From:** Estopinal, Chris
**Sent:** Friday, October 31, 2014 11:30 PM
**To:** Singh, Gobind
**Cc:** Wayman, Laura L
**Subject:** Re: ENT Surgery Request

Hey man,

So sorry that you are having this trouble. You are on the VA block December 3 and not slated to be on night float until dec 15. I will defer to dr Wayman but think you taking off the 3, 4, and 5 to get to the weekend of the 6 and 7 should be workable.

Once again sorry you are having this issue and thanks for being proactive about communication.

Chris

SINGH000300

Sent from a mobile device; please excuse brevity and typos.

On Oct 31, 2014, at 8:42 PM, Singh, Gobind <gobind.singh@vanderbilt.edu> wrote:

Hi Dr. Wayman and Chris,

I unfortunately have developed two large masses in my nares on both sides that are causing progressively worsening obstructive symptoms for the past few months that are really making it difficult for me even at baseline. ENT recs to fix this needs two surgeons; one for removing the masses/path and the other for realigning the bony structures.

I have been in contact with their surgery scheduler regularly hoping to acquire a few dates that may work for operation to propose to you , but the only date that allows both of their surgeons to be present that's currently available is Dec 3rd (please see next email)

I am hoping for a few other dates to open up that I have requested which I believe may work better for scheduling purposes while missing the least amount of work and minimizing changes in the overall schedule. I am not sure what to do at this point. I wish this was not the case and I am so sorry for this inconvenience many times over. With your permission, if I coordinate this with an off weekend, this should only require 1-2 days off maximum before I should be able to return back to work.

Look forward to hearing from you.

Sincerely,
Gobind

_____
Gobind Singh, MD, PhD
Vanderbilt Ophthalmology - PGY2
gobind.singh@vanderbilt.edu | pg 835-0450

SINGH000507    Page 3 of 3



Equal Opportunity, Affirmative Action, and Disability Services Department (EAD) – Disability Services Program

# Medical Information Request Form – Medical Provider
*for Vanderbilt Employees*

**To Vanderbilt Employee:**

To initiate a request for a reasonable accommodation, an employee must:

- Submit the completed Reasonable Accommodation Request form <u>and</u> the Medical Information Request form to the EAD's Disability Services Program Director.
- The Medical Information Request form is to be completed by the employee's physician or care provider. Employees are to complete Section I below, provide a copy of their job description to their medical provider and have the medical provider complete Section II.
- Completed forms are to be returned to: Disability Services Program Director, PMB 401809, 2301 Vanderbilt Place, Nashville, TN 37240-1809 or faxed to: (615) 343-0671. For questions, please call (615) 322-4705.

---

**Section I:  To be completed by employee:**

_____   _____
Employee name                          Job Title

_____   _____
Department                             Supervisor

**Release of Information**

I hereby authorize the release of the following information to Vanderbilt for the purpose of determining the availability of reasonable workplace accommodations. I further authorize Vanderbilt to seek clarification of this documentation if necessary by contacting my physician or care provider.

_____   _____
Employee signature                     Date

**Section II:      To be completed by the physician or care provider:**

**To Physician or Care Provider:**

To initiate a request for reasonable accommodations, employees must provide current documentation of a disability. As the employee's physician or care provider, you are asked to fully complete all sections of this form. Additional information can be attached if necessary.  Note: Federal and state law define a disability as a physical or mental impairment that substantially limits one or more major life activities, an individual having a record of such an impairment, or an individual being regarded as having such an impairment.

To complete this form (see attached, page 2, section 2), you should review the employee's job functions and other information relevant to the employee's job at Vanderbilt. If those materials have not been provided, please contact the employee and let him or her know you cannot complete this form without those materials. Thank you for your assistance.

1

1.   Please identify the employee's physical or mental impairment:

_____
_____
_____

•    Please describe the effects or limitations (e.g., long-term, permanent, recent, short-term).

_____

2.   Please describe the effects or limitations this impairment has on the employee's activities, if any:

_____
_____
_____

3.   By reviewing the attached information concerning the employee's job duties, please describe the effect or limitations the impairment has on the employee's ability to perform the job duties, if any:

_____
_____

•    Are there any activities or situations that should be avoided or that would present a health or safety risk to the employee or others due to the impairment?

_____
_____

4.   Please offer any suggested accommodations that might enable the employee to  perform his or her job duties:
•    _____
_____ Duration? _____
•    _____
_____ Duration?_____
•    _____
_____ Duration? _____

Thank you for your assistance in providing this information so that we may assess the employee's request.  Please sign below.

_____          _____
Signature of physician or care provider             Date


_____          _____
Provider name (printed)                             Telephone #

 Equal Opportunity, Affirmative Action and Disability Services Program
## Reasonable Accommodation Request Form
*for Vanderbilt Employees*



In keeping with local, state and federal laws, Vanderbilt provides reasonable accommodations to qualified employees with disabilities. In general, it is the employee's responsibility to inform his/her supervisor that he/she needs a disability related accommodation in order to perform the essential functions of the job. A supervisor is not required to provide reasonable accommodations if he/she is not aware of the employee's need and desire for the accommodation. Reasonable accommodations are determined, identified and implemented in a collaborative process among the employee, supervisor and the Equal Opportunity, Affirmative Action and Disability Services (EAD's) Disability Services Director.

Contents of this request are confidential and will only be shared as needed with the appropriate personnel to consider the implementation of a reasonable accommodation. This form will <u>not</u> be placed in your employment record file. All medical documentation will be kept confidential. To help initiate your request, complete both forms and forward your supporting medical documentation to the EAD's Disability Services Director, PMB 401809, 2301 Vanderbilt Place, Nashville, TN 37240-1809 or fax to (615) 343-0671.

---

Today's Date: _____ Employee ID# _____ Birthdate: _____

Name: _____ Job Title/ Dept:_____

Immediate Supervisor: _____ Supervisor's phone #: _____

Employee Relations Representative: _____

(Please note that while your supervisor will be involved in the process, information about your medical condition, including medical documentation, will not be shared, unless authorized by you.)

Home Address: _____
(Number & Street)

_____

(City)                                    (State)                                    (Zip)

Email: _____ Work Phone: _____ Home Phone: _____

How would you like for our office to contact you?   E mail ☐   Work Phone ☐   Home Phone ☐

---

Please provide a brief description of your job responsibilities. If you have a current job description, please provide a copy with this request.

Please explain aspects of your employment responsibilities that are impacted by your condition and how they are impacted. *(Use the back of this form for more space.)*

## Information About Your Accommodation Request

1. What is the medical diagnosis for which you are requesting the accommodation?

2. Does your condition limit any major life activity? If so, please explain which life activity/activities is/are affected.

3. Is your condition temporary or permanent? If temporary, please indicate the duration of the condition.

4. Please list the reasonable accommodation(s) that you are requesting.

5. What other accommodations might be responsive to your request?

6. How long do you anticipate the need for an accommodation?

7. Explain how the requested accommodation will enable you to perform the essential functions of your job.

Please check appropriate box:

Are you currently participating in the Return to Work Program through Occupational Health and Risk Management?   Yes ☐   No ☐

Have you been approved for FMLA?                         Yes ☐   No ☐

Have you requested a reasonable accommodation through this office or any other office before?         Yes ☐   No ☐

    If 'Yes', is it the same condition or impairment that you are currently requesting an accommodation for?   Yes ☐   No ☐

    If 'Yes', approximately when was the request made? _____

*This is to acknowledge that I am requesting a reasonable accommodation. I agree to fully cooperate with the EAD's Disability Services Department in responding to my request, including providing the appropriate medical documentation. I understand that I may not be provided with the specific accommodation that I have requested; however, I understand that good faith efforts will be made in making a determination. I verify that the above information is complete and accurate to the best of my knowledge.*

Signature: _____        Date: _____

# Exhibit I





VANDERBILT ▼ UNIVERSITY
MEDICAL CENTER

## Human Resources

## Reasonable Accommodation Medical Request Intake Form

Vanderbilt University Medical Center (VUMC) provides reasonable accommodation(s) to qualified employees with disabilities. VUMC complies with the Americans with Disabilities Act (ADA) and the Americans with Disabilities Act Amended (ADAAA). In order for us to consider your request, you will be required to complete the Request for Medical Accommodation Intake form; provide a release to VUMC to discuss your situation with your Healthcare Provider and have your Healthcare Provider complete the Healthcare Provider Reasonable Accommodation Form. A reasonable accommodation is any adjustment to the work and/or work environment that will allow the individual to perform the essential functions of their job without placing undue hardship on VUMC. By completing and submitting this form you are requesting an accommodation to be able to perform the essential functions of your job due to your disability. Once you have completed the form, please submit by mail, fax or email to:

VUMC Human Resources - Employee Relations
2525 West End Ave
Suite 500
Nashville, TN 37067
Fax: (615) 343-2176
employeerelations.vumc@vanderbilt.edu

The following collaborative process will occur once the completed form has been received:

- Employee Relations will consult with you and your supervisor.
- Identification of potential accommodations that may allow you to perform the essential functions of your job will occur.
- Your Healthcare Provider will be required to complete the Healthcare Provider Reasonable Accommodation Form
- You will be informed on what accommodations (if any) have been decided.

When seeking an accommodation, employees should keep in mind:

- Accommodations can only be implemented from the time of the request forward and are not retroactive.
- An accommodation cannot undo previous consequences of poor work performance.
- All employees must still be able to perform the essential functions of their job with the accommodation.
- Determination of reasonable accommodations is developed based on the employee's individual disability and the specific function of the job.
- Information regarding an individual's disability is considered confidential.

Please note: in order to determine eligibility, the Healthcare Provider must also complete and submit the Reasonable Accommodation Healthcare Provider Form. Employees must work closely with their provider to return the completed form so the accommodation discussion can occur. Delays in returning the Healthcare Provider Form will cause delays in moving through the accommodation process and the timeliness VUMC's response to the request.

If you have any questions about this form or the process, please reach out to Employee Relations at:
(615) 343-7459.

**VANDERBILT UNIVERSITY**
MEDICAL CENTER

## Human Resources

# Reasonable Accommodation Medical Request Intake Form

**Completed by the Employee requesting a Medical Accommodation**

Employee Name: _____     Department: _____

Title/Position: _____     EE ID #: _____     Date of Birth: _____

Contact Phone Number: _____     Email: _____

Supervisor Contact Details (Name/Phone #/Email): _____

**Medical Accommodation Request Information:**

Describe the nature of the physical or mental impairment, illness, condition, disease or disability that is impacting you in a way that is affecting your work and is the reason for you to request an accommodation:

_____

_____

_____

_____

Is your condition temporary or permanent and are you requesting a permanent or temporary accommodation? If temporary, please indicate the duration of your condition/accommodation request.

_____

_____

Do you have a copy of your job description? If so please attach to the form. If not, provide a brief description of your job:

_____

_____

_____

Please describe how your condition limits your ability to perform the essential functions of your job:

_____

_____

_____

Case 3:17-cv-00400    Document 208-1    Filed 01/13/22    Page 34 of 36 PageID #: 2511



## VANDERBILT UNIVERSITY
### MEDICAL CENTER

## Human Resources

# Reasonable Accommodation Medical Request Intake Form

Does your condition impair a major life activity? If yes what life activity? *A major life activity is defined as but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. A major life activity also includes the operation of a major bodily function, including but not limited to; functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions.*

_____

_____

_____

List the suggested reasonable accommodation(s) or options that you are requesting:

_____

_____

_____

_____

_____

Explain how you feel the requested accommodation will enable you to better perform the essential functions of your job. Describe any special methods, skills, or procedures you feel would enhance your abilities to better perform one of more essential functions of your job:

_____

_____

_____

_____

Please check:

Are you currently participating in the Return to Work Program for your Workers Compensation injury?

Yes: ☐     No: ☐

Have you applied for and been approved for FMLA?

Yes: ☐     No: ☐

Have you requested a reasonable accommodation at VU or VUMC previously?

Yes: ☐     No: ☐     Date Requested: _____

Case 3:17-cv-00400     Document 208-1     Filed 01/13/22     Page 35 of 36 PageID #: 2512



If yes, are you requesting accommodations for the same condition?

Yes: ☐          No: ☐

Attach any relevant documentation that employee feels would be helpful for VUMC when making decision on reasonable accommodation.

I have read and understood VUMC's Anti-Harassment, Non-Discrimination and Anti-Retaliation Policy. I understand that by completing this form that I am requesting VUMC to go through an interactive dialogue with my manager and I to determine what reasonable accommodations may be provided to perform the essential functions of the job and that I am willing to engage in that collaborative process. I understand that I am required to provide medical documentation to support my accommodation request and if so am authorizing the release of Medical documentation from my Healthcare Provider to VUMC for the sole purpose of determining the availability of a workplace accommodation(s).

By completing and submitting this form, I acknowledge that the specific accommodation requested may not be granted but VUMC will attempt to provide a reasonable accommodation that does not create an undue hardship on VUMC. I verify that the above information is complete and accurate to the best of my knowledge.

Signature:_____          Date: _____

Name: _____