# Exhibit J


**VANDERBILT UNIVERSITY MEDICAL CENTER**

## Human Resources

## Medical Reasonable Accommodation Request Intake Form

Vanderbilt University Medical Center (VUMC) provides reasonable accommodation(s) to qualified employees with disabilities. VUMC complies with the Americans with Disabilities Act (ADA) and the Americans with Disabilities Act Amended (ADAAA). In order for us to consider your request, you will be required to complete the Request for Accommodation Intake form; provide a release to VUMC to discuss your situation with your Healthcare Provider and have your Healthcare Provider complete the Healthcare Provider Reasonable Accommodation Form. A reasonable accommodation is any adjustment to the work and/or work environment that will allow the individual to perform the essential functions of their job without placing undue hardship on VUMC. By completing and submitting this form you are requesting an accommodation to be able to perform the essential functions of your job due to your disability. Once you have completed the form, please submit by mail, fax or email to:

VUMC Human Resources - Employee Relations
2525 West End Ave
Suite 500
Nashville, TN 37203
Fax: (615) 343-2176
employeerelations.vumc@vumc.org

The following collaborative process will occur once the completed form has been received:

- Employee Relations will consult with you and your supervisor.
- Identification of potential accommodations that may allow you to perform the essential functions of your job will occur.
- Your Healthcare Provider will be required to complete the Healthcare Provider Reasonable Accommodation Form
- You will be informed on what accommodations (if any) have been decided.

When seeking an accommodation, employees should keep in mind:

- Accommodations can only be implemented from the time of the request forward and are not retroactive.
- An accommodation cannot undo previous consequences of poor work performance.
- All employees must still be able to perform the essential functions of their job with the accommodation.
- Determination of reasonable accommodations is developed based on the employee's individual disability and the specific function of the job.
- Information regarding an individual's disability is considered confidential.

Please note: in order to determine eligibility, the Healthcare Provider must also complete and submit the Reasonable Accommodation Healthcare Provider Form. Employees must work closely with their provider to return the completed form so the accommodation discussion can occur. Delays in returning the Healthcare Provider Form will cause delays in moving through the accommodation process and the timeliness VUMC's response to the request.

If you have any questions about this form or the process, please reach out to Employee Relations at:
(615) 343-4759.



# VANDERBILT UNIVERSITY
MEDICAL CENTER

## Human Resources
## Medical Reasonable Accommodation Request Intake Form

**Completed by the Employee requesting a Medical Accommodation**

Employee Name: _____   Department: _____

Title/Position: _____   EE ID #: _____   Date of Birth: _____

Contact Phone Number: _____   Email: _____

Supervisor Contact Details (Name/Phone #/Email): _____

Medical Accommodation Request Information:

Describe the nature of the physical or mental impairment, illness, condition, disease or disability that is impacting you in a way that is affecting your work and is the reason for you to request an accommodation:

Is your condition temporary or permanent and are you requesting a permanent or temporary accommodation? If temporary, please indicate the duration of your condition/accommodation request.

Do you have a copy of your job description? If so please attach to the form. If not, provide a brief description of your job:

Please describe how your condition limits your ability to perform the essential functions of your job:



# Human Resources
# Medical Reasonable Accommodation Request Intake Form

Does your condition impair a major life activity? If yes what life activity? *A major life activity is defined as but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. A major life activity also includes the operation of a major bodily function, including but not limited to; functions of the immune system, normal cell growth, digestive, bowel, bladder, neurological, brain, respiratory, circulatory, endocrine and reproductive functions.*

List the suggested reasonable accommodation(s) or options that you are requesting:

Explain how you feel the requested accommodation will enable you to better perform the essential functions of your job. Describe any special methods, skills, or procedures you feel would enhance your abilities to better perform one of more essential functions of your job:

Please check:

Are you currently participating in the Return to Work Program for your Workers Compensation injury?

Yes: ☐   No: ☐

Have you applied for and been approved for FMLA?

Yes: ☐   No: ☐

Have you requested a reasonable accommodation at VU or VUMC previously?

Yes: ☐   No: ☐   Date Requested: _____

If yes, are you requesting accommodations for the same condition?

Yes: ☐   No: ☐



# Human Resources

# Medical Reasonable Accommodation Request Intake Form

Attach any relevant documentation that employee feels would be helpful for VUMC when making decision on reasonable accommodation.

I have read and understood VUMC's Anti-Harassment, Anti-Discrimination and Non-Retaliation Policy. I understand that by completing this form that I am requesting VUMC to go through an interactive dialogue with my manager and I to determine what reasonable accommodations may be provided to perform the essential functions of the job and that I am willing to engage in that collaborative process. I understand that I am required to provide medical documentation to support my accommodation request and if so am authorizing the release of Medical documentation from my Healthcare Provider to VUMC for the sole purpose of determining the availability of a workplace accommodation(s).

By completing and submitting this form, I acknowledge that the specific accommodation requested may not be granted but VUMC will attempt to provide a reasonable accommodation that does not create an undue hardship on VUMC. I verify that the above information is complete and accurate to the best of my knowledge.

Signature:_____   Date:_____

Name:_____

# Exhibit K



## Human Resources

## Reasonable Accommodation Healthcare Provider Form

Vanderbilt University Medical Center (VUMC) provides reasonable accommodation(s) to qualified employees with disabilities. VUMC complies with the Americans with Disabilities Act (ADA) and the Americans with Disabilities Act Amended (ADAAA). As part of the accommodation request process; our employee is to have their Healthcare Provider complete this Healthcare Provider Form. The following steps must occur:

- Step 1 – Employee completes Section I of this form and signs authorizing the Healthcare Provider to release information to VUMC.
- Step 2 – Employee provides this form plus their Job Description to their Health care Provider to complete
- Step 3 – Healthcare Provider completes Section II of the Reasonable Accommodation Healthcare Provider Form and returns to:

VUMC Human Resources - Employee Relations
2525 West End Ave, Suite 500
Nashville, TN 37203
Fax: (615) 343-2176
employeerelations.vumc@vumc.org

If you have any questions about this form or the process, please reach out to Employee Relations at:
(615) 343-4759.

### Section I – To be Completed by the Employee:

Employee Name: _____  Job Title: _____

Department: _____  Supervisor: _____

Date of Birth: _____

**Release of Information:**

I hereby authorize the release of the following information to VUMC for the purpose of determining the availability of reasonable workplace accommodations. I further authorize VUMC to seek clarification of this documentation if necessary by contacting my physician or care provider.

Employee Signature: _____  Date: _____

### Section II – To be Completed by the Healthcare Provider:

To Healthcare Provider:

To initiate a request for reasonable accommodations, employees must provide current documentation of a disability. As the employee's physician or Health Care provider, you are asked to fully complete all sections of this form. Additional information can be attached if necessary. Note: Federal and state law define a disability as a physical or mental impairment that substantially limits one or more major life activities, an individual having a record of such impairment, or an individual being regarded as having such impairment.

10/25/19  Version-1  P a g e | 1



# Human Resources
# Reasonable Accommodation Healthcare Provider Form

To complete this form, you should review the employee's job functions and other information relevant to the employee's job at VUMC. If those materials have not been provided, please contact the employee and let him or her know you cannot complete this form without those materials.

The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you not provide any genetic information when responding to this request for medical information. 'Genetic information' as defined by GINA, includes an individual's family medical history, the results of an individual's or family member's genetic tests, the fact that an individual or an individual's family member sought or received genetic services, and genetic information of a fetus carried by an individual or an individual's family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

Thank you for your assistance.

**Medical Information Required**:

1. Does the employee have a health condition that impacts his or her ability to perform the essential functions of the job as described in the attached job description?

    Please describe the health condition:

    _____

    _____

    _____

2. How does the employee's health condition interfere with the employee's ability to perform the job function(s) as described in the attached job description?

    _____

    _____

    _____

3. Please review the employee's attached job description. Please identify any job duties the employee is precluded from performing.

    _____

    _____

    _____



**Human Resources**

# Reasonable Accommodation Healthcare Provider Form

_____

_____

4. Does the health condition prevent the employee from attending work on a regular, full-time basis? If yes, can the employee work a reduced schedule? If so, please state the number of hours per day/per week that he or she may work. Please also indicate when the employee will be able to return to work and resume performing the essential functions of the job as described in the attached job description with or without reasonable accommodation.

_____

_____

_____

5. Is the employee able to perform the essential functions of his or her job as described in the attached job description with or without a reasonable accommodation?

    ___ YES, without accommodation    ___ YES, with accommodation    ___ NO

6. If "YES, with accommodation," please describe your recommendations for restrictions, modifications or adjustments to the employee's job duties or work environment that may be considered by VUMC in connection with the request for reasonable accommodation, be specific:

_____

_____

_____

_____

7. Are these restrictions, modifications or adjustments to the employee's job duties or work environment expected to be permanent?        Yes: _____ No: _____

    a. If you answered "No" to the above, please provide the estimated end-date for the above restrictions, modifications or adjustments: _____.

    b. If the estimated end-date to the restrictions, modifications or adjustments is unknown, indefinite or cannot be stated with particularity, please explain why this information cannot be provided with greater specificity and when you anticipate having a more definite estimate of when the restrictions, modifications or adjustments will be removed.

10/25/19                                    Version-1                                    P a g e | 3

Case 3:17-cv-00400    Document 208-2    Filed 01/13/22    Page 7 of 20 PageID #: 2520



# Human Resources
# Reasonable Accommodation Healthcare Provider Form

_____

_____

**Additional Comments:**

_____

_____

_____

_____

_____

**Health Care Provider Name (please print):**

| Name: | Specialty: |
|---|---|
| Signature: | Date: |
| Address: | |
| Telephone: | Fax: |

**If VUMC has any questions, please contact** _____

**Please note:** Failure to provide detailed information and to answer all questions may result in a delay or denial of request for reasonable accommodation.

# Exhibit L-1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VANDERBILT UNIVERSITY MEDICAL )<br>CENTER AND VANDERBILT )<br>UNIVERSITY, )<br>)<br>Defendants. ) | Civil Action No. 3:17-cv-00400<br>Judge Waverly D. Crenshaw<br>Magistrate Barbara D. Holmes |

**DEFENDANTS' INITIAL DISCLOSURES**
**PURSUANT TO FED. R. CIV. P. 26(A)(1)**

Defendants, Vanderbilt University Medical Center (hereinafter "VUMC") and Vanderbilt University (hereinafter "VU"), by and through Counsel, hereby submit their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1).

I. **IDENTITIES OF INDIVIDUALS LIKELY TO HAVE DISCOVERABLE INFORMATION**

Other than Plaintiff, Defendants believe the following individuals (who may be contacted through Defendants' Counsel unless otherwise indicated) are likely to have information that Defendant may use to support its defenses:

1. **Donald Brady, M.D.** Dr. Brady, at all times relevant hereto, was the Senior Associate Dean for Graduate Medical Education and has knowledge regarding the circumstances related to Plaintiff's dismissal from the VUMC Residency Program and Plaintiff's allegations in this matter.

2. **Chris Estopinal, M.D.** Dr. Estopinal, at all times relevant hereto, was the Chief Resident, Ophthalmology and has knowledge regarding Plaintiff's performance during portions of his VUMC Residency. Dr. Estopinal's last known contact information will be provided.

3. **Karen Joos, M.D.** Dr. Joos, at all times relevant hereto, was an Associate

Professor, Ophthalmology and has knowledge regarding Plaintiff's performance during his VUMC Residency.

4. **Jim Kendall.** Mr. Kendall, at all times relevant hereto, was Defendants' Employee Assistance Program Manager and has knowledge regarding Plaintiff's EAP referral.

5. **Janice Law, M.D.** Dr. Law, at all times relevant hereto, was the Assistant Professor and Associate Director for Residency Education, Ophthalmology and has knowledge regarding Plaintiff's performance during his residency.

6. **Paul Sternberg, M.D.** Dr. Sternberg, at all times relevant hereto, was a Professor and Chair, Ophthalmology and has knowledge regarding his meetings with Plaintiff regarding his performance in the VUMC Residency Program.

7. **Laura Wayman, M.D.** Dr. Wayman at all times relevant hereto, was an Assistant Professor and Residency Program Director, Ophthalmology and has knowledge regarding certain of Plaintiff's allegations in this matter and the issues leading to his dismissal from the VUMC Residency Program, including her communications with Plaintiff and referral to EAP.

8. Any individual identified in the documents disclosed in these initial disclosures, including any former residents or VUMC employees identified therein.

9. Any individual whose deposition is taken in this matter or who was otherwise identified in discovery responses;

10. Individuals identified in Plaintiff's Rule 26(a)(1) Disclosures and discovery responses; and

11. Other individuals as may be necessary for rebuttal or impeachment.

II. **DESCRIPTION OF DOCUMENTS AND THINGS IN POSSESSION OF COUNSEL OR DEFENDANT THAT DEFENDANT MAY USE TO SUPPORT ITS DEFENSES**

1. Defendant's relevant employment policies and procedures and documents evidencing Defendant's good faith efforts to comply with anti-discrimination laws, including but not limited to relevant portions of Defendants' applicable handbook and policies and procedures;

2. Relevant documents relating to Plaintiff's employment with Defendant, including but not limited to relevant documents contained in Plaintiff's personnel and medical files, communications with Plaintiff's counsel and communications with third parties regarding Plaintiff; and records relating to Plaintiff's compensation;

3. Relevant, non-privileged communications regarding Plaintiff's performance; complaints of discrimination and investigations regarding the same; and suspension and dismissal from the VUMC Residency Program.

4. Plaintiff's relevant medical records, employment records and other documents obtained by Defendant through subpoena of third parties (these will be provided to Plaintiff as they are received);

5. Relevant documents in the possession of Plaintiff and/or third parties relating to Plaintiff's efforts (if any) to obtain subsequent employment;

6. Any and all documents identified by Plaintiff in his initial disclosures; and

7. Any and all documents otherwise provided by the parties during the course of discovery.

### III. INSURANCE AGREEMENTS IN FORCE

Defendants have an EPLI insurance policy in force with United Educators.

### IV. STATEMENT OF THE BASIS FOR ANY DAMAGES CLAIMED

Defendant reserves the right to seek its reasonable attorneys' fees and costs incurred in defending this action.

Dated: December 11, 2017

3

Respectfully submitted,

/s/ Luther Wright, Jr.
Luther Wright, Jr., TN #17626
Casey M. Parker, TN #033081
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
SunTrust Plaza
401 Commerce Street, Suite 1200
Nashville, TN 37219-2446
Telephone: 615.254.1900
Facsimile: 615.254.1908

Attorneys for Defendants

## CERTIFICATE OF SERVICE

I hereby certify that on December 11, 2017, the foregoing was served via email and U.S. Mail, postage pre-paid, upon the following:

Bryan E. Pieper
The Law Office of Bryan E. Pieper, PLLC
P.O. Box 60507
1312 Stratton Ave.
Nashville, TN 372016
bryan@bep.legal

Tracey A. Kinslow
Kinslow Law Group
810 Dominican Drive
Nashville, TN 37228
Tracey@kinslowlawgroup.com

**s/Luther Wright, Jr.**
Luther Wright, Jr.

4

Exhibit L-2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D.,<br>Plaintiff,<br><br>vs.<br><br>VANDERBILT UNIVERSITY<br>MEDICAL CENTER, and<br>VANDERBILT UNIVERSITY<br>Defendants. | Civil Action, Case No. 3:17-cv-00400<br><br>JURY DEMAND<br><br>JUDGE: Waverly D. Crenshaw<br><br>MAGISTRATE: Barbara D. Holmes |

**PLAINTIFF'S RULE 26 INITIAL DISCLOSURES**

The Plaintiff, Gobind Singh ("Plaintiff" or "Mr. Singh"), by and through counsel, pursuant to Rules 26(a)(1) of the Federal Rules of Civil Procedure, makes the following initial disclosures. As discovery is at an early stage, the Plaintiff reserves the right to identify additional documents and persons with discoverable information and to supplement his calculation of damages.

A. **Identification of Persons Likely to Have Discoverable Information that the Plaintiff May Use to Support His Claims**

At this time, the Plaintiff anticipates that the following persons have discoverable information that he may use to support his claims in this matter:

1. Plaintiff Gobind Singh has knowledge regarding all issues in this lawsuit. He can be contacted through plaintiff's counsel.

1

2. Donald W. Brady, M.D. is expected to have knowledge regarding Plaintiff's employment and termination. Plaintiff understands that Dr. Brady can be contacted through counsel for the Defendants.

3. Laura L. Wayman, M.D. is expected to have knowledge regarding Plaintiff's employment and termination. Plaintiff understands that Dr. Wayman can be contacted through counsel for the Defendants.

4. Paul Sternberg, Jr., M.D. is expected to have knowledge regarding Plaintiff's employment and termination. Plaintiff understands that Dr. Sternberg can be contacted through counsel for the Defendants.

5. Any or All of Plaintiff's co-workers and patients may have knowledge regarding Plaintiff's employment and termination. This response will be seasonably supplemented.

B. **Identification of Documents in Plaintiff's Possession, Custody or Control that Plaintiff May Use to Support his Claims**

At this time, the Plaintiff anticipates that in support of his claims he may use the following documents which are in his possession, custody, or control. The Plaintiff will provide copies of these documents to the Defendant at a time and place to be mutually agreed upon by counsel.

1. Documents and information submitted to the EEOC by the Defendant in the course of the EEOC's investigation of the Plaintiff's Charge of Discrimination, Claim No. 494-2016-00883, now part of the EEOC's investigatory file.

2. Documents and information submitted to the EEOC by the Plaintiff in the course of the EEOC's investigation of the Plaintiff's Charge of Discrimination, Claim No. 494-2016-00883, now part of the EEOC's investigatory file.

2

3. Emails between the Plaintiff and the Defendant's employees, Christina Estrada, M.D.

4. Text communications between Plaintiff and co-workers employed by Defendants.

5. Payroll and financial records reflecting the Plaintiff's income prior to and/or after termination of his employment with the Defendant.

6. Personnel records and disciplinary records relating to the Plaintiff's employment and termination by the Defendants.

7. April 6, 2015 letter of promotion to Resident from Donald W. Brady, M.D.

8. Documents pertaining to Plaintiff's applications to residence programs subsequent to termination of his employment by the Defendants.

9. Documents relating to Plaintiff's medical conditions in 2015 and 2016, including but not limited to September 3, 2015 letter from Scott J. Stephen, M.D. and March 30, 2016 letter from Susan Henley, M.D.

10. Documents relating to employment performance and treatment of patients by Plaintiff and/or by similarly situated residence in the Defendants' residency program.

11. Audio recording of conversation between Plaintiff and Defendants' employee, Dr. Laura L. Wayman.

12. In addition to the foregoing, which are in the possession, custody, or control of the Plaintiff, the Plaintiff reserves the right to use any documents produced or obtained in the course of discovery in this litigation.

C. **Computation of the Plaintiff's Damages**

As a result of the Defendants' failure to accommodate the Plaintiff's disability, their wrongful termination of his employment, and other discriminatory and retaliatory acts, the

3

Plaintiff immediately lost the wages he was earning at Vanderbilt, but the greater long-term wage loss results from the fact that the termination prevents the Plaintiff from being able to practice ophthalmology. The best case scenario, if all wrongful barriers to the Plaintiff resuming his residency were removed, he will have been set back at least three years in his career path as an Ophthalmologist. The average Ophthalmologist pay in the New York market in which the Plaintiff likely would have practices is over $318,000 per year. In this best case scenario, the Plaintiff will have lost three years of his practice, during which time he will have earned very little, despite his efforts to mitigate his damages. In 2016, for example, he earned less than $12,000. Given the fields he may be able to enter if he is precluded from practicing medicine, he conceivably could "top out" at $100,000 per year. If he is not able to resume his residency and then his medical practice, his damages could entail more than the lost three year, but continue to accumulate every year of his career. Moreover, even if he does eventually practice ophthalmology, because pay rates rise with years of experience in the field, he will always be three years behind the pay trajectory he would have been on had he not been wrongfully terminated. For this reason, lost wages cannot be calculated with certainty at this point, but it is easily forseeable that the Plaintiff's lost wages alone would exceed $950,000, at a minimum and potentially far more.

The Plaintiff's compensatory damages for emotional trauma cannot be calculated by mathematical formula and must be determined by a jury at trial.

Similarly, the punitive damages sought by the Plaintiff cannot be calculated by mathematical formula and must be determined by a jury at trial, based, in part, on information regarding the Defendant's financial status, to be obtained during discovery.

The remaining monetary recoveries sought by the Plaintiff, including attorney fees, interest, court costs, and discretionary costs, cannot be stated at this time but will continue to accrue as this litigation proceeds.

### D. Insurance Policies or Agreements Which May Provide Coverage in this Matter

Not applicable, as the Defendant has not asserted any counterclaims against the Plaintiff.

Respectfully submitted:

By: /s/ Tracey Kinslow by BEP w/ permission
Tracey A. Kinslow (#017098)
KINSLOW LAW GROUP
810 Dominican Drive
Nashville, TN 37228
Tel.: (615) 256-3353
Fax.: (615) 256-3331
Email: Tracey@kinslowlawgroup.com


Bryan E. Pieper (#016852)
THE LAW OFFICE OF BRYAN E. PIEPER, PLLC
P.O. Box 60507
1312 Stratton Ave.
Nashville, TN 37206
Tel.: (615)730-9819
Fax: (615) 514-9635
Email: bryan@bep.legal

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been served on the person(s) listed below on December 7, 2017, in the manner indicated:

|  |  |  |
|---|---|---|
| [ ] | Hand | Luther Wright, Jr. |
| [✓] | First Class Mail | Casey McCluskey Parker |
| [ ] | Fax | OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C. |
| [ ] | This Court's ECF System | SunTrust Plaza |
| [ ] | Email | 401 Commerce Street, Suite 1200 | |
|  |  | Nashville, TN 37219-2446 |
|  |  | Telephone: 615-687-2213 |
|  |  | Fax: 615-254-1908 |
|  |  | Email: luther.wright@ogletree.com |
|  |  | casey.parker@ogletreedeakins.com> |

*[signature]*

# Exhbit M

I have been retained to represent Dr. Singh, a resident in Ophthalmology who has experienced some medical issues which have impacted his performance and concentration and which have now created the potential for serious discipline…

Pursuant to the Americans with Disabilities Act, we are requesting a reasonable accommodation that at such time as his physician certifies Dr. Singh is fit for duty that his shifts be limited to 12 hours in duration with 12 subsequent hours off duty until such time as he is fully recovered.

On 9/11/15, EAD wrote Singh directly, stating that if he wanted to request a workplace accommodation he should submit a request form and a provider's certification to EAD. EAD attached the blank forms.

On 9/24/15, submitted the completed forms. He identified his disability as hypothyroidism and vestibular stenosis.[18] He stated that the condition impaired his energy, concentration, and cold tolerance. He wrote, "These have affected my ability to perform at the level expected of my program director and to endure long work hours." As an accommodation, he requested "limitation of work hours to 12 hour shifts with recovery/rest in between of at least 12 hours without any clinical responsibility or duties. Be re-incorporated with rotation cycles as other residents."

Singh included the Medical Information Request Form filled out by his provider. However, when asked what effect Singh's condition would have on his ability to perform his job, the provider wrote, "Going forward, no limitation. In the past before treatment, ability to tolerate long shifts may have been impaired." When asked what accommodations Singh needed, his provider wrote, "None going forward."

Batia Karabel, EAD Compliance Specialist, was assigned to Singh's accommodation request. On 9/25/15, Karabel emailed Singh, stating that EAD was unable to approve his accommodation request because his provider did not recommend any accommodations going forward. She noted that EAD is unable to approve accommodations retroactively.

On 10/26/15, Singh emailed Karabel, attaching a form filled out by a different provider. The provider stated that Singh could work without breaks for no longer than eight hours. To date, EAD has not decided on this accommodation request.

## ANALYSIS

### A. Retaliation

In order to establish a violation on the basis of retaliation, it is normally necessary for the complainant to show that the following occurred: 1) a covered individual 2) engaged in a protected activity (opposition to discrimination or participation in the statutory complaint process); 3) an adverse action resulted; and 4) that there is a causal connection between the protected activity and the adverse action.

As an initial matter, we note that Singh's allegation of retaliation does not implicate an equal employment opportunity ('EEO') protected class. Prior to this complaint, he had not opposed discrimination or filed a complaint of discrimination. Accordingly, he has not engaged

---

[18] Regarding the diagnosis of vestibular stenosis, Singh attached a letter from another provider. No accommodation was suggested. Rather, the provider simply noted that Singh had complained of significant trouble breathing at night and being tired, so as a result, Singh underwent surgery on 12/3/14.

# Exhibit N

Following his dismissal from his GME program at VUMC, Charging Party has since filed an EEOC charge in which he complains that issues he previously complained of relating to his disability are now also related to his race, religious affiliation and national origin (he has identified himself as being a Sikh and of Indian descent) and that Vanderbilt University failed to accommodate his request for shorter shifts. Following Charging Party's dismissal and his filing of the instant Charge of Discrimination, VUMC's Employee Relations Department (ER), investigated Charging Party's claims. ER, similarly tasked as EAD and with similar core objectives, found the allegations to be without support. An overview of the EAD and ER review follows below.

### (a) There is no evidence of discrimination or retaliation related to Charging Party's alleged disability.

The facts do not support Charging Party's allegations of disability discrimination or retaliation. Ultimately, EAD found insufficient evidence to conclude that Charging Party was retaliated against or discriminated against on the basis of disability. Specifically, EAD found there were significant concerns about Charging Party's ability to practice safely and professionally, and therefore, no remedial action was reasonable. EAD also noted that Charging Party's allegation of retaliation did not implicate an equal employment opportunity (EEOC) protected class, and that prior to his complaint of retaliation, Charging Party had not opposed discrimination or filed a complaint of discrimination. Charging Party also did not request an accommodation until after he initiated a retaliation complaint. Also, on a more fundamental level, EAD concluded that Charging Party failed to make a request for accommodation under the ADA/ADAA prior to making a complaint with EAD.

Also of note, Charging Party's subsequent request for an accommodation for shorter shifts made through the EAD department in September 2015 sought a retroactive accommodation, and no information from Charging Party's Medical Provider when provided requested or indicated any future accommodation needs. A second accommodation request was submitted to EAD in October 2015, but this request was received months after Charging Party had been placed on suspension effective July 29, 2015 due to performance issues. He did not return to work at VUMC between the time of his suspension on July 29, 2015 and his dismissal from the program on February 25, 2016. In March 2016, the accommodation case was closed as Charging Party was no longer an active employee.