Gmail

G S <gobind.singh@gmail.com>

# Exhibit AB

## FW: Dr. Singh

Richard Braun <rbraun@braunlawassociates.com>  Fri, Jul 1, 2016 at 12:04 PM
Reply-To: rbraun@braunlawassociates.com
To: Gobind Singh <gobind.singh@gmail.com>

fyi

Richard J. Braun

Braun & Associates, PLLC

501 Union Street, Suite 500

Nashville, Tennessee 37219

Telephone: (615) 259-1550

Facsimile: (615) 259-2524

Email: rbraun@braunlawassociates.com

Website: www.braunlawassociates.com

---

**From:** Richard Braun [mailto:rbraun@braunlawassociates.com]
**Sent:** Friday, July 01, 2016 11:04 AM
**To:** 'Sergio, Alfredo M'
**Subject:** RE: Dr. Singh

Alfredo,

The medical issues are such that they impact focus, attention and energy levels.

Richard

Richard J. Braun

Braun & Associates, PLLC

501 Union Street, Suite 500

Nashville, Tennessee 37219

Telephone: (615) 259-1550

Facsimile: (615) 259-2524

Email: rbraun@braunlawassociates.com

Website: www.braunlawassociates.com

---

**From:** Sergio, Alfredo [mailto:alfredo.m.sergio@vanderbilt.edu]
**Sent:** Friday, July 01, 2016 7:57 AM

**Subject:** RE: Dr. Singh

Richard,

What is the basis for your thinking Dr. Singh's medical issues should be mentioned?

Alfredo



**Alfredo M. Sergio**

Associate General Counsel

Vanderbilt University Medical Center, Office of Legal Affairs, 2525 West End Avenue, Suite 700, Nashville, TN 37203

*phone* 615.936.3375 | *fax* 615.936.0329 | *email* alfredo.m.sergio@vanderbilt.edu

Legal Assistant |Amanda J. Lowe | *phone* 615.936.0380| *email* amanda.j.lowe@vanderbilt.edu

This e-mail and any attachment thereto is intended only for use by the addressee named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachment thereto, is strictly prohibited. Your receipt is not intended to waive any applicable privilege. If you have received this e-mail in error, please immediately notify me by telephone and permanently delete the original and any copy of any e-mail and any printout thereof.

**From:** Richard Braun [mailto:rbraun@braunlawassociates.com]
**Sent:** Friday, July 01, 2016 7:43 AM
**To:** Sergio, Alfredo M
**Subject:** RE: Dr. Singh

Alfredo,

Any reason for not referencing Dr. Singh's medical issues?

Richard

Richard J. Braun

Braun & Associates, PLLC

501 Union Street, Suite 500

Nashville, Tennessee 37219

Telephone: (615) 259-1550

Facsimile: (615) 259-2524

Website: www.braunlawassociates.com

---

**From:** Sergio, Alfredo M [mailto:alfredo.m.sergio@vanderbilt.edu]
**Sent:** Thursday, June 30, 2016 6:25 PM
**To:** rbraun@braunlawassociates.com
**Subject:** RE: Dr. Singh

Richard,

Thank you again for your response. Just to let you know, VUMC has not yet received the release form for Nassau.

In response to your further statement, Dr. Brady does not anticipate mentioning Dr. Singh's medical issues.

Thank you,

Alfredo



**Alfredo M. Sergio**

Associate General Counsel

Vanderbilt University Medical Center, Office of Legal Affairs, 2525 West End Avenue, Suite 700, Nashville, TN 37203

*phone* 615.936.3375 | *fax* 615.936.0329 | *email* alfredo.m.sergio@vanderbilt.edu

Legal Assistant |Amanda J. Lowe | *phone* 615.936.0380| *email* amanda.j.lowe@vanderbilt.edu

This e-mail and any attachment thereto is intended only for use by the addressee named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachment thereto, is strictly prohibited. Your receipt is not intended to waive any applicable privilege. If you have received this e-mail in error, please immediately notify me by telephone and permanently delete the original and any copy of any e-mail and any printout thereof.

---

**From:** Richard Braun [mailto:rbraun@braunlawassociates.com]
**Sent:** Wednesday, June 29, 2016 11:46 AM
**To:** Sergio, Alfredo M
**Subject:** RE: Dr. Singh

Dr. Singh will be signing the agreed form for Nassau and sending it to you. We understand that Dr. Brady made no mention of any medical problems Dr. Singh encountered. We believe that these issues should be referenced to create a more balanced evaluation

Richard J. Braun

Braun & Associates, PLLC

501 Union Street, Suite 500

Nashville, Tennessee 37219

Telephone: (615) 259-1550

Facsimile: (615) 259-2524

Email: rbraun@braunlawassociates.com

Website: www.braunlawassociates.com

---

**From:** Sergio, Alfredo M [mailto:alfredo.m.sergio@vanderbilt.edu]
**Sent:** Wednesday, June 29, 2016 8:48 AM
**To:** rbraun@braunlawassociates.com
**Subject:** Re: Dr. Singh

Thank you.

Alfredo M. Sergio

Associate General Counsel

Office of Legal Affairs

Vanderbilt University Medical Center


1.615.936.3375 office

1.267.934.2415 mobile


Sent from my mobile device, please excuse typos.


PRIVILEGED AND CONFIDENTIAL

On Jun 29, 2016, at 8:47 AM, Richard Braun <rbraun@braunlawassociates.com> wrote:

> Alfredo,
>
> I took a couple days off. I will get back to you later today. Have a good week.
>
> Richard
>
>
> Richard J. Braun
>
> Braun & Associates, PLLC
>
> 501 Union Street, Suite 500

Telephone: (615) 259-1550

Facsimile: (615) 259-2524

Email: rbraun@braunlawassociates.com

Website: www.braunlawassociates.com

---

**From:** Sergio, Alfredo M [mailto:alfredo.m.sergio@vanderbilt.edu]
**Sent:** Tuesday, June 28, 2016 6:14 PM
**To:** rbraun@braunlawassociates.com
**Subject:** RE: Dr. Singh

Richard,

Good evening. I have not heard back from you as to the below. Please let us know if Dr. Singh will be providing VUMC with a new signed release (the Vanderbilt/VUMC release form) relative to Nassau UMC in order for VUMC to be able to provide requested information to this different program.

Thank you,

Alfredo

---

**From:** Sergio, Alfredo M
**Sent:** Friday, June 24, 2016 9:08 AM
**To:** 'rbraun@braunlawassociates.com'
**Subject:** Dr. Singh

Richard,

One of our physicians in the Ophthalmology Program received a call from Nassau UMC seeking information about Dr. Singh. Since the consent/release he recently provided was limited to New York Medical/West Chester, we will need a new release signed (the Vanderbilt release form) in order for VUMC to be able to provide information to this different program.

Please advise if your client/Dr. Singh will be forwarding the signed release.

Sincerely,

Alfredo

&lt;image001.jpg&gt;

Associate General Counsel

Vanderbilt University Medical Center, Office of Legal Affairs, 2525 West End Avenue, Suite 700, Nashville, TN 37203

*phone* 615.936.3375 | *fax* 615.936.0329 | *email* alfredo.m.sergio@vanderbilt.edu

Legal Assistant |Amanda J. Lowe | *phone* 615.936.0380| *email* amanda.j.lowe@vanderbilt.edu

This e-mail and any attachment thereto is intended only for use by the addressee named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachment thereto, is strictly prohibited. Your receipt is not intended to waive any applicable privilege. If you have received this e-mail in error, please immediately notify me by telephone and permanently delete the original and any copy of any e-mail and any printout thereof.



# Exhibit AD

G S <gobind.singh@gmail.com>

## Singh

**Edward Moor** <erm@moorlaw.net>  Wed, Sep 1, 2021 at 6:38 PM
To: "Wright, Jr. Luther" <luther.wright@ogletree.com>

My client asks if you have a copy of the order.

---

Edward R. Moor

Moor Law Office, P.C.

53 W. Jackson Blvd., Suite 1527

Chicago, Illinois 60604

(312) 726-6207

erm@moorlaw.net

www.moorlaw.net

**Confidentiality Statement.** The information contained in this electronic mail communication is intended only for the personal and confidential use of the designated recipient named above. This message may be an attorney-client communication, and as such is privileged and confidential. If the reader of this message is not the intended recipient, you are hereby notified that you have received this communication in error, and that any review, dissemination, distribution, or copying of the message is strictly prohibited. If you have received this transmission in error, please notify me immediately by telephone at 312.726.6207 and/or by reply e-mail.

# Exhibit AE

# Coronavirus (COVID-19) Information for Employees and Patients (/coronavirus/)

Search   Men

## Important: New OSHA COVID-19 Workplace Standards Take Effect on Sept. 7

📅 August 31, 2021

In July, the Occupational Safety and Health Administration (OSHA) took the position that the SARS-CoV-2 virus causing COVID-19 will be present for the foreseeable future. As a result, OSHA issued a new safety standard, COVID-19 Emergency Temporary Standard (ETS), specifically for settings where employees provide health care services, and has updated its guidance on COVID-19 mitigation measures for other businesses.

On Aug. 24, 2021, the Tennessee Occupational Safety and Health Administration (TOSHA) announced their regulations of the Emergency Temporary Standard (ETS) on COVID-19, which are set to take effect on Sept. 7.

These regulations apply to VUMC clinical buildings and clinical areas within mixed-use buildings, and importantly are in addition to the already in place and long-standing protections when caring for COVID-19 patients from the Centers for Disease Control and Prevention, the World Health Organization, the Metro Public Health Department of Nashville and Davidson County, and the Tennessee Department of Health.

What you need to know and do:

1. N95 respirators are required to be worn in the care of suspected or confirmed COVID-19 patients. The standards require the use of a gown, gloves, eye protection (e.g., face shield, goggles), and an N95 respirator for the care of such patients, regardless of whether an aerosol-generating procedure will be performed. This applies even if caring for patients with symptoms compatible with COVID-19 when the care delivered is for other medical problems.

- **Do**: Ensure adequate supplies of N95 respirators are present in your clinical areas

- **Do**: Ensure all persons who now need to wear an N95 have been fit-tested (https://www.vumc.org/safety/clinical/n-95-respirator-program). These persons should have received an email from the Learning Exchange (LMS) with instructions on how to complete the training, medical evaluation, and fit testing. Ensure that these persons are on track to have this process completed by the end of September. Individuals who have not been fit-tested should still wear a surgical mask as part of the COVID-19 PPE unless the patient is undergoing an aerosol-generating procedure.

2. On Sept. 22, all staff will be enrolled in a COVID-19 training module that is required by the regulations. Deadline for completion is Nov. 15, 2021.

- **Do**: Complete the online training module in the LMS.

There are other parts of the regulations that require no action on your part, but you should be aware they are being implemented.

1. All departments/units are conducting COVID-19 hazard assessments to determine if further protections need to be in place like additional signage, physical distancing and/or physical barriers where needed.

2. Continued and ongoing COVID-19 screening for patients, visitors, and employees upon entry into VUMC facilities.

3. Expanded Contact Tracing by Occupational Health of potential workplace exposures.

4. Continued need to wear facemasks as per VUMC guidance.

Further updates will be communicated through MyVUMC and will be posted on the Coronavirus (COVID-19) Information for Employees and Patients website. For further guidance, the SOPs and policies related to COVID-19 can be found on PolicyTech (https://vanderbilt.policytech.com/). You may also be contacted via email or directed by your leader for changes that are specific to your role.

‹ Reminder: COVID-19 Vaccination Requirement for Employees (/coronavirus/covid-19-news-employees/reminder-covid-19-vaccination-requirement-employees)   COVID-19 vaccines available for VUMC employees this weekend (/coronavirus/covid-19-news-employees/covid-19-vaccines-available-vumc-employees-weekend) ›

Case 3:17-cv-00400    Document 208-10    Filed 01/13/22    Page 8 of 20 PageID #: 3108

About VUMC (https://www.vumc.org/about/)
Find a Doctor (https://search.vanderbilthealth.com/doctors)
Parking and Transportation (https://www.vumc.org/medcenterparking/)
School of Medicine (https://medschool.vanderbilt.edu/)
School of Nursing (https://nursing.vanderbilt.edu/)
Vanderbilt University (https://vanderbilt.edu/)
Eskind Biomedical Library (https://www.library.vanderbilt.edu/biomedical/)
Financial Assistance (https://www.vanderbilthealth.com/information/financial-assistance)

Office of Research (https://www.vumc.org/oor/)
Giving (https://www.vanderbilthealth.org/vanderbilt-university-medical-center-giving)
Volunteer (https://www.vanderbilthealth.com/volunteeratvanderbilt/)
Patient Privacy (https://www.vumc.org/information-privacy-security/notice-privacy-practices)
Media (http://news.vumc.org/vumc-reporter/vumc-newscomm/)
Web Policy (https://www.vanderbilthealth.com/main/23526)
Community Health Improvement (https://www.vumc.org/communityhealthimprovement)
Integrity Line (https://www.vumc.org/compliance/integrity-line-hotline)

## Popular Links

Vanderbilt Health (https://www.vanderbilthealth.com/)
My Health at Vanderbilt (https://www.myhealthatvanderbilt.com/)
Medical Record Information (https://www.vanderbilthealth.com/patientandvisitorinfo/53964)
Patient & Visitor Information (https://www.vanderbilthealth.com/patientandvisitorinfo/)
Request an Appointment (https://myhealthatvanderbilt.com/publidorms.asp?mode=showform&formname=ApptReqAdultPublic)
Careers (https://www.vumc.org/careers/)
Standard Charges (https://finance.vumc.org/standardcharges)

Vanderbilt University Medical Center
1211 Medical Center Drive, Nashville, TN 37232
(http://maps.google.com/?saddr=Current+Location&daddr=Vanderbilt%20University%20Medical%20Center%201211%20Medical%20Center%20Drive%20Nas
(615) 322-5000 (tel:+16153225000)

## Making Health Care Personal

**Our Vision:** The world leader in advancing personalized health
**Our Mission:** Personalizing the patient experience through our caring spirit and distinctive capabilities

Vanderbilt University Medical Center is committed to principles of equal opportunity and affirmative action. EOE/AA/Women/MinorityNets/Disabled

Copyright© (/coronavirus/user/login?saml_login=false)2022 by Vanderbilt University Medical Center

Vanderbilt®, Vanderbilt University Medical Center®, V Oak Leaf Design®, Monroe Carell Jr. Children's Hospital at Vanderbilt® and Vanderbilt Health® are trademarks of The Vanderbilt University.



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., ) | |
| ) | Civil Action No. 3:17-cv-00400 |
| Plaintiff, ) | |
| ) | The Honorable Eli Richardson |
| v. ) | |
| ) | Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL ) | |
| CENTER, and VANDERBILT ) | |
| UNIVERSITY, ) | |
| ) | |
| Defendants ) | |

## DECLARATION FROM PARENTS OF PLAINTIFF

We, Nitu and GB Singh, parents of the Plaintiff, hereby declare and state the following occurred with one or both, under penalty of perjury:

1. Around the last week of June 2020 when our son's trial date was still set for August 25, 2020, Mr. Moor agreed to accept payment from us directly in the amount of $20,000 in exchange for his immediate hiring to prepare for trial (less than two months away at that time). As we were aware of our son's previous lawyers doing things behind our son's back that hurt our son's case, we confirmed before we paid Mr. Moor that Mr. Moor would not repeat these behaviors.

2. We confirmed with Mr. Moor that he was in agreement with a number of items that included: (1) lead our son's case with primary focus on trial, (2) set aside time to meet with us to discuss our son's trial in advance, (3) not file any documents without our son first approving it, (4) not engage in any settlement negotiations, (5) represent our son's goals/intentions accurately with the Court and Defendants, (6) BCC/CC our son on all communications with opposing counsel or anyone else related to our son's case. Our son knew the full set of terms that Mr. Moor agreed to before we paid Mr. Moor.

3. Around the first week of July 2020, the trial date got rescheduled to January 5, 2021, and Mr. Moor said he would not lower his price because he reassured us the extra time

would help him prepare our son's case for trial. We agreed the terms Mr. Moor and us had set from before would continue.

4. In December 2020, our son informed us that we needed to cancel our travel plans to Nashville for the trial. When we asked why, our son told us that on December 3, 2020, Mr. Moor had made an oral motion requesting to delay the January 5, 2021 trial date because Mr. Moor had told the Court out-of-state witnesses were not comfortable traveling to Nashville for trial due to COVID-19. We asked our son what Mr. Moor was talking about because at that point, we only knew about one witness that Mr. Moor had spoken with to travel to Nashville for trial, Dr. Wandel, and Dr. Wandel had stated to our son as he told us that Dr. Wandel was comfortable traveling to Nashville to testify in-person the week of January 5th, 2021. In the following months, we kept trying to get clarity from our son as to what happened, but our son was unable to get any answers from Mr. Moor.

5. In mid-2021, we recall at least two conference calls that took place between Mr. Moor, us, and our son. During those calls, we were extremely disappointed and intimidated by Mr. Moor because of how he conducted himself. Mr. Moor's voice was loud and he was harassing our son stating that if he did not settle, then our son was being selfish and wasting Mr. Moor's time and money.

6. We had paid Mr. Moor upfront for his time and money as a trial lawyer for him to take the case, so he should have never said this to our son. Despite us paying Mr. Moor $20,000 upfront to be our son's trial lawyer, now Mr. Moor was trying to avoid trial by forcing our son to settle. Mr. Moor was even belittling our son's disability claims now and making ridiculous remarks about this case at trial being worth only $10,000 to try and convince our son to settle. We recall, Mr. Moor telling our son, "*you are a fool for not settling the case*" and a "*selfish asshole*" right before Mr. Moor hung up on us and our son before we could get answers to any of our questions. We were in dismay and disbelief that our son's attorney could behave in such a manner after taking our money.

7. Also on these calls, it started to become clear to us that Mr. Moor was not genuinely interested in helping to bring Dr. Wandel to the trial. He was more focused on trying to get our son to settle without giving our son a chance to explain anything properly, including about Dr. Wandel. Even after our son finally had one opportunity to explain to Mr. Moor the true circumstances of Dr. Wandel's change in coming to Nashville, which were COVID-19-related and hospital policies that had been implemented in 2021, we do not believe Mr. Moor relayed any of these reasons to the Court.

8. On these calls, Mr. Moor's language was abrasive, abusive, and offensive against anyone with disabilities, especially parents of children with any disability. We certainly did not pay Mr. Moor to abuse our son. Regardless of whether Mr. Moor was angry or frustrated for whatever reason, he is supposed to be a professional and had a duty toward our son as his attorney.

9. In August 2021, we both visited Mr. Moor in-person a few weeks before the trial date of September 12, 2021. Even though we asked Mr. Moor in 2020 for advance notice so we could make travel arrangements to meet him in Chicago during the COVID-19 pandemic, Mr. Moor gave us and our son a few days advance notice. We showed up on Mr. Moor's timeline and schedule. During our in-person meeting that lasted approximately 5 hours, it was clear to us as non-lawyers that Mr. Moor was unprepared and unfamiliar with key evidence in our son's case. He had not read many documents that we wanted to discuss, and Mr. Moor claimed he had lost copies of other documents, so Mr. Moor took our own original documents for his file. He was not ready for trial just weeks away.

10. We know that Mr. Moor had thoroughly examined our son's case before agreeing to take it to trial but if Mr. Moor thought it was worth $10,000, then Mr. Moor should not have asked for our $20,000 and agreed to take our son's case to trial. We have tried to be patient with Mr. Moor and give him the benefit of the doubt since we are not lawyers, and he should have known what's best for our son.

11. Around the first week of September 2021, my son and I were on the call together when Mr. Moor called. Before my son or I could speak, Mr. Moor started yelling and verbally attacking my son without pause. I was speechless to hear a professional speak like this to his client. My son tried to speak up and interject multiple times, but Mr. Moor did not allow him to. He demanded my son to do things related to tax filings and was threatening my son if he did not do them. As a parent, I was scared for my son and couldn't believe any legal professional would be allowed to act and speak like this to his client. Even after my son agreed to give Mr. Moor the documents Mr. Moor demanded hoping Mr. Moor would make time to go over outstanding questions, Mr. Moor hung up on us.

12. In December 2021, we received two calls from Mr. Moor, one of which is now showing up because the contact number showed "*no caller ID*" and we knew later it was Mr. Moor as he left a voice message. We were puzzled by this because he had made it clear he only wanted to settle the case. Oddly, before these two calls, Mr. Moor contacted me over email, and called me "Ben," which is not my name. We did not pick up any of his calls nor did we listen to these voicemails afraid of what was going on and unclear of Mr. Moor's intentions.

13. Our son dedicated 15 years of full-time education that cost hundreds of thousands of dollars so he could be a physician to help sick patients. He was already a physician at Vanderbilt and when Vanderbilt violated the law and hurt our son that has resulted in our son losing nearly two decades of time, investment, and education/training. We've seen our son distraught because of Vanderbilt and by the amount of inadequate information his attorneys have told this Court the past 5 years. We are humbly requesting the Court to allow our son the opportunity to have this case make it to trial so the merits of his claims can be heard at trial.

Most Sincerely,

Nitu Singh and GB Singh

Executed January 11th, 2022

EXHIBIT AG

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | |
|---|---|
| GOBIND SINGH, M.D., PH.D., | ) |
| | ) Civil Action No. 3:17-cv-00400 |
| Plaintiff, | ) |
| | ) The Honorable Eli Richardson |
| v. | ) |
| | ) Magistrate Judge Barbara D. Holmes |
| VANDERBILT UNIVERSITY MEDICAL CENTER, and VANDERBILT UNIVERSITY, | ) ) ) |
| | ) |
| Defendants | ) |

## DECLARATION FROM PARENTS OF PLAINTIFF

We, Nitu and GB Singh, parents of the Plaintiff, hereby declare and state the following occurred with one or both, under penalty of perjury:

1. Around the last week of June 2020 when our son's trial date was still set for August 25, 2020, Mr. Moor agreed to accept payment from us directly in the amount of $20,000 in exchange for his immediate hiring to prepare for trial (less than two months away at that time). As we were aware of our son's previous lawyers doing things behind our son's back that hurt our son's case, we confirmed before we paid Mr. Moor that Mr. Moor would not repeat these behaviors.

2. We confirmed with Mr. Moor that he was in agreement with a number of items that included: (1) lead our son's case with primary focus on trial, (2) set aside time to meet with us to discuss our son's trial in advance, (3) not file any documents without our son first approving it, (4) not engage in any settlement negotiations, (5) represent our son's goals/intentions accurately with the Court and Defendants, (6) BCC/CC our son on all communications with opposing counsel or anyone else related to our son's case. Our son knew the full set of terms that Mr. Moor agreed to before we paid Mr. Moor.

3. Around the first week of July 2020, the trial date got rescheduled to January 5, 2021, and Mr. Moor said he would not lower his price because he reassured us the extra time would help him prepare our son's case for trial. We agreed the terms Mr. Moor and us had set from before would continue.

4. In December 2020, our son informed us that we needed to cancel our travel plans to Nashville for the trial. When we asked why, our son told us that on December 3, 2020, Mr. Moor had made an oral motion requesting to delay the January 5, 2021 trial date because Mr. Moor had told the Court out-of-state witnesses were not comfortable traveling to Nashville for trial due to COVID-19. We asked our son what Mr. Moor was talking about because at that point, we only knew about one witness that Mr. Moor had spoken with to travel to Nashville for trial, Dr. Wandel, and Dr. Wandel had stated to our son as he told us that Dr. Wandel was comfortable traveling to Nashville to testify in-person the week of January 5th, 2021. In the following months, we kept trying to get clarity from our son as to what happened, but our son was unable to get any answers from Mr. Moor.

5. In mid-2021, we recall at least two conference calls that took place between Mr. Moor, us, and our son. During those calls, we were extremely disappointed and intimidated by Mr. Moor because of how he conducted himself. Mr. Moor's voice was loud and he was harassing our son stating that if he did not settle, then our son was being selfish and wasting Mr. Moor's time and money.

6. We had paid Mr. Moor upfront for his time and money as a trial lawyer for him to take the case, so he should have never said this to our son. Despite us paying Mr. Moor $20,000 upfront to be our son's trial lawyer, now Mr. Moor was trying to avoid trial by forcing our son to settle. Mr. Moor was even belittling our son's disability claims now and making ridiculous remarks about this case at trial being worth only $10,000 to try and convince our son to settle. We recall, Mr. Moor telling our son, "*you are a*

*fool for not settling the case*" and a "*selfish asshole*" right before Mr. Moor hung up on us and our son before we could get answers to any of our questions. We were in dismay and disbelief that our son's attorney could behave in such a manner after taking our money.

7. Also on these calls, it started to become clear to us that Mr. Moor was not genuinely interested in helping to bring Dr. Wandel to the trial. He was more focused on trying to get our son to settle without giving our son a chance to explain anything properly, including about Dr. Wandel. Even after our son finally had one opportunity to explain to Mr. Moor the true circumstances of Dr. Wandel's change in coming to Nashville, which were COVID-19-related and hospital policies that had been implemented in 2021, we do not believe Mr. Moor relayed any of these reasons to the Court.

8. On these calls, Mr. Moor's language was abrasive, abusive, and offensive against anyone with disabilities, especially parents of children with any disability. We certainly did not pay Mr. Moor to abuse our son. Regardless of whether Mr. Moor was angry or frustrated for whatever reason, he is supposed to be a professional and had a duty toward our son as his attorney.

9. In August 2021, we both visited Mr. Moor in-person a few weeks before the trial date of September 12, 2021. Even though we asked Mr. Moor in 2020 for advance notice so we could make travel arrangements to meet him in Chicago during the COVID-19 pandemic, Mr. Moor gave us and our son a few days advance notice. We showed up on Mr. Moor's timeline and schedule. During our in-person meeting that lasted approximately 5 hours, it was clear to us as non-lawyers that Mr. Moor was unprepared and unfamiliar with key evidence in our son's case. He had not read many documents that we wanted to discuss, and Mr. Moor claimed he had lost copies of other documents, so Mr. Moor took our own original documents for his file. He was not ready for trial just weeks away.

10. We know that Mr. Moor had thoroughly examined our son's case before agreeing to take it to trial but if Mr. Moor thought it was worth $10,000, then Mr. Moor should not have asked for our $20,000 and agreed to take our son's case to trial. We have tried to be patient with Mr. Moor and give him the benefit of the doubt since we are not lawyers, and he should have known what's best for our son.

11. Around the first week of September 2021, my son and I were on the call together when Mr. Moor called. Before my son or I could speak, Mr. Moor started yelling and verbally attacking my son without pause. I was speechless to hear a professional speak like this to his client. My son tried to speak up and interject multiple times, but Mr. Moor did not allow him to. He demanded my son to do things related to tax filings and was threatening my son if he did not do them. As a parent, I was scared for my son and couldn't believe any legal professional would be allowed to act and speak like this to his client. Even after my son agreed to give Mr. Moor the documents Mr. Moor demanded hoping Mr. Moor would make time to go over outstanding questions, Mr. Moor hung up on us.

12. In December 2021, we received two calls from Mr. Moor, one of which is now showing up because the contact number showed "*no caller ID*" and we knew later it was Mr. Moor as he left a voice message. We were puzzled by this because he had made it clear he only wanted to settle the case. Oddly, before these two calls, Mr. Moor contacted me over email, and called me "Ben," which is not my name. We did not pick up any of his calls nor did we listen to these voicemails afraid of what was going on and unclear of Mr. Moor's intentions.

13. Our son dedicated 15 years of full-time education that cost hundreds of thousands of dollars so he could be a physician to help sick patients. He was already a physician at Vanderbilt and when Vanderbilt violated the law and hurt our son that has resulted in our son losing nearly two decades of time, investment, and education/training. We've

seen our son distraught because of Vanderbilt and by the amount of inadequate information his attorneys have told this Court the past 5 years. We are humbly requesting the Court to allow our son the opportunity to have this case make it to trial so the merits of his claims can be heard at trial.

Most Sincerely,

Nitu Singh and GB Singh

Executed January 11th, 2022